ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

OCT  5 2004

U.S. COURT OF
FEDERAL CLAIMS

by leave of the Judge

| | |
|---|---|
| SACRAMENTO GRAZING ASSOCIATION, INC., et al., | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

No. 04-786 L

Judge Susan G. Braden

**DEFENDANT'S MOTION TO PARTIALLY DISMISS THE COMPLAINT OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO PARTIALLY DISMISS THE COMPLAINT, OR ALTERNATIVELY,
FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.     Plaintiffs' Grazing Permit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.     Reductions of Plaintiffs' Permitted Livestock Numbers . . . . . . . . . . . . 5

       C.     Suspension of Plaintiffs' Term Grazing Permit . . . . . . . . . . . . . . . . . . 7

       D.     Plaintiffs' Court of Federal Claim Complaint . . . . . . . . . . . . . . . . . . . 8

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       B.     Plaintiffs' "Grazing Preference" Does Not Constitute a Legally
              Compensable Property Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              1.     The Need for a Compensable Property Interest . . . . . . . . . . . . 10

              2.     Plaintiffs' Grazing "Preference" Is Not A Legally
                     Compensable Property Right . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              3.     Grazing on the Public Lands Prior to the Creation
                     of the Lincoln National Forest Would Not Ripen
                     Plaintiffs' "Grazing Preference" Into a Compensable
                     Property Right . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

              4.     Plaintiffs' Alleged Reasonable, Investment-Backed
                     Expectations Do Not Themselves Create a
                     Compensable Property Right . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       C.     Plaintiffs Have No Compensable Property Right to Utilize
              Forage on the Sacramento Allotment . . . . . . . . . . . . . . . . . . . . . . . . 19

       D.     Plaintiffs Have No Factual or Legal Basis on Which to
              Argue Their Ranch Has Been Taken . . . . . . . . . . . . . . . . . . . . . . . . 23

i

E.   Plaintiff's Claim For Compensation Under 43 U.S.C. § 1752(g)
Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1.   Plaintiffs Section 1752(g) Claim Is Not Ripe . . . . . . . . . . . . . . 26

2.   Plaintiffs' Permit Has Not Been Cancelled and Therefore
Plaintiffs Fail to State a Claim Upon Which Relief Can
Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

3.   The Forest Service Has Not Devoted the Lands Covered
by Plaintiffs' Permit to Another Public Use Other
Than Cattle Grazing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

**CASES**

Ace Property & Cas. Ins. Co. v. United States,
    60 Fed. Cl. 175 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,
    988 F.2d 1157 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Ainslie v. United States,
    355 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Alves v. United States,
    133 F.3d 1454 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 16

American Pelagic Fishing Co. v. United States,
    379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18, 21, 24

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bradley v. Chiron Corp.,
    136 F.3d 1317 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bradshaw v. United States,
    47 Fed. Cl. 549 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

Buford v. Houtz,
    133 U.S. 320 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Chancellor Manor, Ltd. v. United States,
    331 F.3d 891 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust,
    508 U.S. 602 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conti v. United States,
    291 F.3d 1334 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 21

Cottrell v. United States,
    42 Fed. Cl. 144 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Diamond Bar Cattle Co. v. United States,
        168 F.3d 1209 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

El-Shifa Pharmaceutical Industries Co. v. United States,
        378 F.3d 1346 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gardner v. Stager,
        892 F. Supp. 1301 (D. Nev. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Light v. United States,
        220 U.S. 523 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Lucas v. South Carolina Coastal Counsel,
        505 U.S. 1003, 112 S.Ct. 2886 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

M&J Coal Co. v. United States,
        47 F.3d 1148 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Manier v. United States,
        31 Fed. Cl. 410 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McKinley v. United States,
        828 F. Supp. 888 (N.M. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Omaechevarria v. Idaho,
        246 U.S. 343 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Penn Central Transportation Co. v. City of New York,
        438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Perkins v. Bergland,
        608 F.2d 803 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Randolph-Sheppard Vendors v. Weinberger,
        795 F.2d 90 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ridge Line, Inc. v. United States,
        346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rotec Ind., Inc. v. Mitsubishi Corp.,
        215 F.3d 1246 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Skip Kirchdorfer, Inc. v. United States,
            6 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Store Safe Redlands Associates v. United States,
            35 Fed. Cl. 726 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

United States v. Fuller,
            409 U.S. 488 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 23, 25

United States v. Grimaud,
            220 U.S. 506 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20, 22

United States v. M/V Santa Clara I,
            819 F. Sup. 507 (D.S.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Westinghouse Electric Corp. v. United States,
            41 Fed. Cl. 229 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

White Sands Ranchers of New Mexico v. United States,
            14 Cl. Ct. 559 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23


**STATUTES**

7 U.S.C. § 6912(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27
16 U.S.C. § 1604(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
16 U.S.C. § 1604(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
43 U.S.C. § 1901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Land Policy and Management Act of 1976 (FLPMA),
            43 U.S.C. §§ 1701-1784 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            43 U.S.C. § 1702(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
            43 U.S.C. § 1702(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            43 U.S.C. § 1752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            43 U.S.C. § 1752(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            43 U.S.C. § 1752(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9, 25, 26, 29, 30
            43 U.S.C. § 1752(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Granger-Thye Act,
     16 U.S.C. § 580 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     16 U.S.C. § 580l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Magnuson-Stevens Fishery Conservation and Management Act,
     16 U.S.C. §§ 1801-1883(2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Multiple-Use, Sustained Yield Act of 1960,
     16 U.S.C. §§ 528-531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     16 U.S.C. § 528 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     16 U.S.C. § 531(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


Public Rangelands Improvement Act of 1978 (PRIA),
     92 Stat. 1803, 43 U.S.C. §§ 1752-53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Transfer Act of 1905,
     16 U.S.C. § 472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


## REGULATIONS

36 C.F.R. 222.1(b)(22) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
36 C.F.R. 222.1(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
36 C.F.R. 222.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
36 C.F.R. 222.3(c)(1)(ii) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
36 C.F.R. § 222.1(b)(21)(ii)(A)(2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
36 C.F.R. § 222.1(b)(21) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
36 C.F.R. § 222.1(b)(3) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19, 22
36 C.F.R. § 222.3(b) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22
36 C.F.R. § 222.4(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
36 C.F.R. § 222.4(a)(7) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22
36 C.F.R. §222.6(a) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
43 C.F.R. § 4100.0-5 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## RULES

RCFC 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 25, 30
RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**LEGISLATIVE MATERIALS**

1978 U.S. Code Cong. & Adm. News 4069 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

H.R. Rep. No. 1163, 94th Cong., 2d Sess. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**OTHER AUTHORITIES**

Wilkinson and Anderson, Land and Resource Planning in the National Forests,
      64 Ore. L. Rev. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# APPENDIX OF EXHIBITS

Tab No.                    Document Description

A          Term Grazing Permit - Parts 1 and 2 (Reference FSM 2230)
           Permit Number 08-1105 dated 02/02/98 .......................... 1

B          Term Grazing Permit - Parts 1 and 2 (Reference FSM 2230) Permit
           Number 08-1250 dated 11/23/99 ............................... 8

C          Declaration of Frank R. Martinez ............................ 21

D          Memorandum to Jimmy Goss (Sacramento Grazing Association)
           from Frank Martinez dated 04/24/04 ......................... 25

E          Forest Guardians v. U.S., No. CIV-00-490 JP/RHS
           & Sacramento Grazing Association, et al., v. U.S.,
           No. CIV-00-1240 JP/RHS - Memorandum Opinion and Order ....... 31

F          FSM -2200 - Range Management - Chapter 2230
           - Grazing and Livestock Use Permit System
           Amendments .............................................. 103

G          FSH 2209.13 - Grazing Permit Administration Handbook
           WO Amendment 2209.13-92-1/ Chapter 70 - Compensation
           For Permittee Interest In Range Improvements
           Compensation Provisions ................................. 107

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SACRAMENTO GRAZING          )
ASSOCIATION, INC., et al.,       )
                                 )
                Plaintiffs       )          No. 04-786 L
                                 )
        v.                       )          Judge Susan G. Braden
                                 )
UNITED STATES OF AMERICA,        )
                                 )
                Defendant.       )
_____ )

## DEFENDANT'S MOTION TO PARTIALLY DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT[1/]

Plaintiffs' first cause of action alleges a temporary or permanent taking of plaintiffs' alleged grazing rights, forage, and water rights on the Sacramento Allotment in the Lincoln National Forest, New Mexico, and a taking of plaintiffs' fee property as a result of the alleged taking of plaintiffs' access to grazing rights, forage, and water rights on the Sacramento Allotment. Plaintiffs' allegations regarding a taking of plaintiffs' access to grazing rights and forage on the Sacramento Allotment should be dismissed since plaintiffs do not have a compensable property right to graze cattle on the Sacramento Allotment. Similarly, plaintiffs' allegations regarding a taking of plaintiffs' fee property should be dismissed because any decrease in value of the fee property because of a change in grazing rights or forage is a loss in value which is not legally compensable. Finally, defendant does not move at this time to dismiss

_____

[1/]      Defendant has filed an Answer simultaneously with this motion.

1

plaintiffs' claim regarding an alleged taking of plaintiffs' water rights because plaintiffs have not identified their purported water rights in their complaint.

Plaintiffs' second cause of action seeks compensation pursuant to 43 U.S.C. § 1752(g) for permanent improvements allegedly placed or constructed by plaintiffs on the Sacramento Allotment. Plaintiffs' second cause of action should be dismissed for failure to state a claim upon which relief can be granted, or alternatively by a grant of summary judgment for the United States, because plaintiffs' 43 U.S.C. § 1752(g) claim is not ripe, plaintiffs' term grazing permit has never been cancelled, nor has the Sacramento Allotment been devoted to another public purpose; it continues to be a grazing allotment. Plaintiffs, therefore, fail to state a valid claim.

A memorandum in support of this motion follows.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

I.      BACKGROUND[2]

A.      Plaintiffs' Grazing Permit

Plaintiffs allege they are the fee simple owners of the "Goss Ranch" ("the Ranch") consisting of approximately 80 acres located in Otero County, New Mexico. Compl. ¶ 9. Plaintiffs began acquiring the Ranch from the Sacramento Cattle Company[3] and finished the

---

[2]      Unless otherwise indicated, those factual allegations of the complaint recounted in this memorandum are assumed to be true solely for purposes of this motion.

[3]      The Sacramento Cattle Company changed its name to the Sacramento Grazing Association in 1989.

purchase in 1997.  Compl. ¶8.  The Ranch is located several miles west of the Sacramento

Grazing Allotment ("Sacramento Allotment" or "Allotment"), which is located within the

Lincoln National Forest, New Mexico.

The Sacramento Allotment encompasses approximately 111,000 acres of the Lincoln

National Forest in southeastern New Mexico and is administered by the United States Forest

Service ("Forest Service" or "USFS").  Compl. ¶¶ 8, 9; see Def. Ex. C (Martinez Decl. ¶ 3).  On

November 27, 1989, the Forest Service issued a term grazing permit to the Sacramento Grazing

Association ("SGA") that allowed them to graze up to 553 livestock for a period of ten years,

subject to the terms and conditions of the permit and all applicable laws and regulations.  Def.

Ex. A.  The Ranch is identified as the "base property"[4] for purposes of the term grazing permit.

Compl. ¶ 9.  Plaintiffs' term grazing permit was renewed on November 23, 1999 and plaintiffs

continue to this day to graze cattle on the Sacramento Allotment.  Def. Ex. B; Def. Ex. C

(Martinez Decl., ¶¶ 5, 9).

When plaintiffs accepted their term grazing permit, they agreed to a number of specific

terms and conditions.  See Def. Ex. B, part 1.  For example, plaintiffs agreed that even though

their term grazing permit authorized them to graze up to 553 livestock during a grazing season

from March 1st to February 28th on the Sacramento Allotment, the Forest Service had the

discretion to adjust the number of livestock and period of use in the annual Bill of Collection that

---

[4]      "Base property" is defined as "land and improvements owned and used by the permittee
for a farm or ranch operation and specifically designated by him to qualify for a term grazing
permit."  36 C.F.R. § 222.1(b)(3) (2004).

is sent to the permittee. See Def. Ex. B, part 2, section 2 ("Each year, after validation and prior to the beginning of the grazing season, the Forest Service will send the permittee a Bill for Collection specifying for the current year the kind, number, and class of livestock allowed to graze, the period of use, the grazing allotment, and the grazing fees.  This bill, when paid, authorizes use for that year and becomes part of this permit"); see also Def. Ex. B, part 1, section 2 ("The number, kind, and class of livestock, period of use, and grazing allotment on which the livestock are permitted to graze are as follows, unless modified by the Forest Service in the Bill of Collection. . .").

Adjustments to the number of cattle and period of use of the grazing allotment are decided on an annual basis by the District Ranger after full discussions with the permittee and are described in detail in the Annual Operating Plan ("AOP"), now known as the Annual Operating Instructions ("AOI").  See Def. Ex. C (Martinez Decl. ¶¶10, 11); Def. Ex. D (Plaintiffs' Annual Operating Instructions for 2004).  Prior to the issuance of the AOI, the District Ranger consults with the permittee and reviews the permittee's annual grazing application for any requested adjustments to the previous year's AOI.  Id.  The District Ranger's decision is reflected in the Bill for Collection.  Def. Ex. B, part 3, section 1.

Section 8(c) of plaintiffs' permit provides that the Forest Service has the discretion to delay the beginning of livestock grazing or to require the removal of livestock early when necessary to protect forage resources.  Section 8(c) provides:

> When, in the judgment of the Forest Officer in charge, the forage is not ready to be grazed at the beginning of the designated grazing season, the permittee, upon request of the Forest officer, will defer placing livestock on the grazing allotment

to avoid damage to the resources.  The permittee will remove livestock from
Forest Service-administered lands before the expiration of the designated grazing
season upon request of the Forest officer when it is apparent that further grazing
will damage the resources.

Def. Ex. B, part 2, section 8(c).

The current AOI for the 2004-2005 grazing season authorizes plaintiffs to graze 230

cattle on the Allotment from March 1, 2004 to May 15, 2004 and 275 cattle from May 16, 2004

to February 28, 2005.  See Def. Ex. C (Martinez Decl. ¶ 9); Def. Ex. D.

B.      Reductions of Plaintiffs' Permitted Livestock Numbers

On May 8, 2000, the Forest Service amended the 2000 AOP for the Sacramento

Allotment to reduce the permitted livestock numbers for the summer 2000 grazing season from

the previous 553 cattle to 428.  See Def. Ex. C (Martinez Decl. ¶ 12).  Then, on August 2, 2000,

the Forest Service ordered an additional reduction of 98 cattle.  Id.  These amendments of the

AOIs occurred because of excessive forage use and drought conditions.  See id.  In 2000,

plaintiffs sought judicial review of the administrative decisions reducing the numbers, as well as

other decisions by the Forest Service regarding the administration of plaintiffs' 1999 grazing

permit.  The case, Sacramento Grazing Association, et al. v. United States Department of

Agriculture, et al., No. CIV-00-1240, was consolidated with a challenge by the Forest Guardians,

a conservation organization, challenging alleged overgrazing on the Sacramento Allotment

(Forest Guardians v. United States Forest Service, et al., No. CIV-00-490).  See Def. Ex. E

(Memorandum Opinion and Order).[5]

─────────────────

[5]      The Court's Opinion is available on the United States District Court for the District of
New Mexico's website:

Plaintiffs' complaint before the District Court of New Mexico alleged, among other things, that the herd reductions described above were arbitrary and capricious. The District Court disagreed, holding that "[t]he record shows that the herd reduction orders were reasonable and supported by the best available science." Def. Ex.E, p. 64. The District Court confirmed that the Forest Service had the authority to modify the terms and conditions of plaintiffs' term grazing permit "at any time during the term to conform with needed changes brought about by law, regulation, . . . numbers permitted or seasons of use necessary because of resource conditions." Def. Ex. E, p. 64-65; 36 C.F.R. § 222.4(a)(7) (2004); Def. Ex. B, part 1, section 3. The District Court ordered plaintiffs' arbitrary and capricious challenge dismissed noting " the substantial evidence in the record supporting the Forest Service's decisions to reduce the SGA's herd by 125-head and 98-head." Def. Ex. E, p. 67.

On October 28, 2003, as a result of the continuing severe drought conditions on the Sacramento Allotment, District Ranger Martinez reduced the number of cattle authorized to graze for the winter season (November 1, 2003 to May 15, 2004) from 330 cattle to 230 cattle because of below normal forage production resulting from drought conditions. See Def. Ex. C (Martinez Decl. ¶ 13).

The current 2004-2005 AOI authorizes plaintiffs to graze up to 275 head of cattle. See id. (Martinez Decl. ¶ 9); see Def. Ex. D.

---

https://www.nmcourt.fed.us/isys/Q:/ORS/Opinions/PARKER/00cv00490.1.pdf#xml=http://10.8.216.2:8844/ISYSquery/IRL32B2.tmp/4/hilite

C.    Suspension of Plaintiffs' Term Grazing Permit

Plaintiffs' term grazing permit was partially suspended on September 8, 2000 for two years based on plaintiffs' non-compliance with permit provisions, specifically plaintiffs failed to remove livestock as directed by the Acting District Ranger, in an effort to reduce high forage utilization levels. See Def. Ex. C (Martinez Decl. ¶ 6). The suspension required plaintiffs to reduce the number of cattle plaintiffs were authorized to graze under the term grazing permit by 40%. See id. Plaintiffs appealed the suspension as part of the District Court complaint described above, arguing that the 40% reduction was arbitrary and capricious. See Def. Ex. E, p. 67. The District Court disagreed and held that the Forest Service has the right to suspend a term grazing permit "for any violation of a grazing regulation or of any term or condition of such permit." Id. at 68 (quoting 43 U.S.C. § 1752(a)). Moreover, Forest Service regulations authorize the Forest Service to cancel a term grazing permit for failure to accept term modifications. In addition, the 1999 permit specifically provides that the permit "may be suspended or cancelled, in whole or in part, after written notice, for failure to comply with any of the terms and conditions. . ." Id.; 36 C.F.R. § 222.4(a)(2); Def. Ex. B, part 1, section 3 (plaintiffs' term grazing permit may be "suspended or cancelled, in whole or in part, after written notice, for failure to comply with any of the terms and conditions specified in Parts 1, 2, and 3 hereof . . .").

Plaintiffs' term grazing permit was also suspended on December 19, 2003 due to non-compliance with its terms and conditions, but the suspension was later withdrawn when plaintiffs agreed to immediately make good faith efforts to comply with the grazing permit and AOP. See Def. Ex. C (Martinez Decl. ¶ 7).

7

Although the Forest Service has partially suspended plaintiffs' permit on two occasions, the Forest Service has never cancelled, in whole or in part, plaintiffs' term grazing permit during the almost fifteen years plaintiffs have held a permit to graze the Sacramento Allotment.  Def. Ex. C (Martinez Decl. ¶ 8).

> D.     Plaintiffs' Court of Federal Claims Complaint

Plaintiffs claim that although they have a grazing permit for 553 head of cattle, the Sacramento Allotment has a capacity for "more cattle" and the "USFS has artificially reduced the capacity of the . . . allotment." Compl. ¶ 17.  Plaintiffs further claim that the USFS has "engaged in a pattern and practice of conduct in interpreting and administering . . . the permit," which allegedly resulted in a taking of plaintiffs' grazing rights, forage, water rights, and the Ranch. See Compl. ¶¶ 24-34.  Plaintiffs also advance a number of allegations regarding alleged tortious behavior by the Forest Service, including trespassing on plaintiffs' property (Compl. ¶ 25(I)), "threaten[ing] plaintiffs to prevent plaintiffs from using their water rights and range rights," (Compl. ¶ 25(J)), and "penalizing plaintiffs for asserting their rights under applicable laws and constitutional provisions and for plaintiffs' public criticisms of defendant" (Compl.

¶24(J)).[9]  Finally, plaintiffs claim that "[t]he actions of the defendant in causing removal of cattle

and suspending and canceling use of the Allotment . . ." amount to a "*de facto* cancellation" of

plaintiffs' permit which allegedly entitle them to compensation for improvements made on the

Allotment pursuant to 43 U.S.C. § 1752(g).  Compl. ¶¶ 37-38.

## II.    ARGUMENT

### A.    Standard of Review

The Court may dismiss a complaint for failure to state a claim pursuant to RCFC 12(b)(6)

when the causes of action as asserted in the complaint are "fatally flawed in their legal premises

and destined to fail, . . . spar[ing] litigants the burdens of unnecessary pretrial and trial activity."

Manier v. United States, 31 Fed. Cl. 410, 419 (1994) (quoting Advanced Cardiovascular Sys.,

Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993).  In deciding a motion to

dismiss, the Court "must accept all well-pled factual allegations as true and draw all reasonable

inference in the plaintiffs favor."  Ainslie v. United States, 355 F.3d 1371, 1373 (Fed. Cir. 2004).

However, mere "conclusory allegations of law and unwarranted inferences of fact do not suffice

to support a claim" and will not withstand a motion to dismiss.  Bradley v. Chiron Corp., 136

---

[9]      To the extent plaintiffs are alleging tort claims, this Court does not have jurisdiction to
hear such claims.  El-Shifa Pharmaceutical Industries Co. v. United States, 378 F.3d 1346, 1353
(Fed. Cir. 2004) (citations omitted) ("As we have explained, an allegation that the government
has taken property in a legally improper manner states 'two separate wrongs [that] give rise to
two separate causes of action. . . [and] the plaintiff 'is free either to sue in district court for
asserted improprieties committed in the course of the challenged action or to sue for an
uncompensated taking in the Court of Federal Claims"); see also Cottrell v. United States, 42
Fed. Cl. 144, 149 (1998) ("It is well settled that the Court of Federal Claims lacks jurisdiction
over every kind of tort claim.").

F.3d 1317, 1322 (Fed. Cir. 1998).  Moreover, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness."  <u>Westinghouse Electric Corp. v. United States</u>, 41 Fed. Cl. 229, 233-34 (1998) (citations omitted).

"[I]f matters outside the complainant's pleading are presented to the court the motion shall be treated as one for summary judgment under Rule 56."  <u>Rotec Ind., Inc. v. Mitsubishi Corp.</u>, 215 F.3d 1246, 1250 (Fed. Cir. 2000) (quoting <u>Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.</u>, 988 F.2d 1157, 1164 (Fed. Cir. 1993); <u>see</u> RCFC 12(b).  Summary judgment is appropriate when there are no material facts in dispute, and the moving party is entitled to a judgment as a matter of law.  RCFC 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude entry of summary judgment."  <u>Id.</u> at 248-49.  Moreover, "[w]hen the moving party has carried its burden . . ., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Rotec</u>, 215 F.3d at 1250-51 (citations omitted).

**B.    Plaintiffs' "Grazing Preference" Does Not Constitute a Legally Compensable Property Interest**

1.    <u>The Need for a Compensable Property Interest</u>

The Federal Circuit has established a two-part test to evaluate whether governmental action amounts to a taking of private property for Fifth Amendment purposes.  <u>Conti v. United States</u>, 291 F.3d 1334, 1339 (Fed. Cir. 2002); <u>M&J Coal Co. v. United States</u>, 47 F.3d 1148, 1154 (Fed. Cir. 1995).  "First, a court must evaluate whether the claimant has established a

'property interest' for purposes of the Fifth Amendment [and] [s]econd, once a court has determined that a property interest exists, it must determine whether a taking occurred." Conti, 291 F.3d at 1339.

Therefore, the threshold inquiry in evaluating a takings claim is whether the plaintiff possesses a compensable property interest. Chancellor Manor, Ltd. v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003). If a plaintiff cannot establish a compensable property interest, plaintiffs' takings claim must fail. American Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts task is at an end"); Conti, 291 F.3d at 1339 ("However, if a claimant fails to demonstrate that the interest allegedly taken constituted a property interest under the Fifth Amendment, a court need not even consider whether the government regulation was a taking under the analysis set forth in Penn Central").[7]

Here, plaintiffs assert that defendant has taken plaintiffs' "preference grazing right in the [Sacramento] Allotment." Compl. ¶ 34. Plaintiffs base their argument on a claim that "[t]he grazing right was issued in recognition of rights which existed prior to the passage of the reservation of the lands as National Forest."[8] Compl. ¶¶ 34(A). This argument has been soundly rejected by the courts and should be summarily dismissed here.

---

[7]      The need for a compensable property interest is applicable to both physical takings claims and regulatory takings claims. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003); Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed. Cir. 1993).

[8]      The Lincoln National Forest was established by presidential proclamation on July 26, 1902, with additional lands being added in 1905, 1906, 1907 and 1917.

2.   Plaintiffs' Grazing "Preference" Is Not A Legally Compensable Property Right

Plaintiffs were issued a grazing permit by the Forest Service in 1989 and 1999. See Def. Ex. A, B. Plaintiffs, as a term permit holder, have "first priority for receipt of a new permit at the end of the term period provided [they have] fully complied with the terms and conditions of the permit." 36 C.F.R. 222.3(c)(1)(ii) (2004); see Def. Ex. B, part 2, paragraph 6 (providing that plaintiffs have "first priority for receipt of a new permit at the end of the term subject to modification deemed necessary by the Forest Service"); cf 43 C.F.R. § 4100.0-5 (2004) (defining a "grazing preference" as "a superior or priority position against others for the purpose of receiving a grazing permit or lease. This priority is attached to base property owned or controlled by the permittee or lessee").

Although plaintiffs may have a "preference" to graze on the Sacramento Allotment compared to other potential permittees, this "grazing preference" is neither a permission, a permit, nor a compensable property right. Indeed, it cannot be since any "grazing preference" is directly tied to plaintiffs' term grazing permit which courts have uniformly held is "freely revocable" and not a compensable property right for purposes of the Fifth Amendment. United States v. Fuller, 409 U.S. 488, 494 (1972); Alves v. United States, 133 F.3d 1454, 1457 (Fed. Cir. 1988); see 36 C.F.R. § 222.3(b) (2004) ("Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources").

A brief discussion of the history of grazing on federal lands provides useful background for why courts have uniformly held that grazing permits are not compensable property interests.

12

For much of the 19th century, federal lands were used as an incentive to encourage development in the western United States.  With the creation of the national forests beginning in 1891, Congress withdrew its tacit consent for members of the public to graze its lands, and gave to the Department of the Interior the authority to regulate grazing on national forest lands.  United States v. Grimaud, 220 U.S. 506, 521 (1911).  Beginning in 1897, however, the Secretary of the Interior began limiting grazing on the forest reserves and, in 1901, began a permit system.

The Transfer Act of 1905, 16 U.S.C. § 472, assigned the administration of grazing on forest reserves to the Department of Agriculture's newly created Forest Service.  Under the general authority of the Organic Act of 1897, the Forest Service since 1906 has regulated grazing in the national forests to prevent resource deterioration.  Forest Service, U.S.D.A., the Use Book (1906 ed.) at 72; see also Wilkinson and Anderson, Land and Resource Planning in the National Forests, 64 Ore. L. Rev. 1, at 52-57, 104-108 (1985).

In 1950, the Granger-Thye Act, 16 U.S.C. § 580 et seq., first authorized the Forest Service to issue permits for grazing on national forest lands.  The Act authorizes the Secretary of Agriculture:

> upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof: Provided, That nothing herein shall be construed as limiting or restricting any right, title, or interest of the United States in any land or resources.

16 U.S.C. § 580l (emphasis supplied).

The modern statutes under which grazing is regulated put conditions on the exercise of this authority but otherwise confirm and expand it.  The Federal Land Policy and Management

Act of 1976 (FLPMA), 43 U.S.C. §§ 1701-1784, provides for the regulation of grazing through

term grazing permits and the development of allotment management plans (AMPs). AMPs are

developed in consultation with the permittees, and prescribe the manner in which livestock

operations are to be conducted. 43 U.S.C. § 1702(k). All AMPs must be produced in the context

of the overall multiple use objectives of the lands as determined by the agency. Id. FLPMA

gives the Forest Service broad discretion to modify the numbers of livestock grazing and set

limits on seasonal use of grazing lands. 43 U.S.C. § 1752; see also Perkins v. Bergland, 608 F.2d

803 (9th Cir. 1979). The rule that a grazing permit confers no vested rights was not altered by

FLPMA. 43 U.S.C. § 1752(h); H.R. Rep. No. 1163, 94th Cong., 2d Sess. 12.

The Public Rangelands Improvement Act of 1978 (PRIA), 92 Stat. 1803, 43 U.S.C. §§

1752-53, 1901-08, 16 U.S.C. § 1333(b), amending FLPMA, sought to establish a long-term

program to improve the condition of the public rangelands. Congress found and declared in

Section 2(1) that:

> vast segments of the public rangelands are producing less than their
> potential for livestock, wildlife habitat, recreation, forage, and
> water and soil conservation benefits, and for that reason are in an
> unsatisfactory condition.

43 U.S.C. § 1901 (emphasis added).

The Senate noted in its report that (emphasis supplied):

> Much of the poor condition of the public rangelands is a legacy of
> the virtually unregulated grazing which occurred in the West
> beginning with the Spanish and continuing until the passage of the
> Taylor Grazing Act in 1934. That Act marked the first major effort
> to control grazing on the public domain and it came about as a
> result of the disastrous conditions of the range existing at that time.

14

> Although the Taylor Grazing Act has been relatively successful,
> after 40 years, the range is still in a deteriorating state and further
> congressional initiatives are necessary in order to restore a viable
> ecological system that benefits both range users and the wildlife
> habitat.

1978 U.S. Code Cong. & Adm. News 4069, 4070.

In the Multiple Use Sustained Yield Act of 1960, Congress sought to assure that public lands would be utilized for multiple purposes in a responsible fashion. Use of the range for grazing was only one of the purposes, along with recreation, timber, watershed, and wildlife and fish, for which the National Forests were to be administered. 16 U.S.C. §§ 528, 531(a).

The National Forest Management Act of 1976 (NFMA) repeated the multiple use theme and required that planning for the range resource was to be coordinated with planning for other resources, including recreation, timber, watershed, wildlife and fish, and wilderness. 16 U.S.C. § 1604(e). Under NFMA, the Forest Service prepares land and resource management plans (LRMP or "forest plan") for each unit of the national forest system. The plans provide a programmatic framework for managing multiple resource values within the national forest for a 10-15 year period, and all subsequent management actions are required to be consistent with the forest plan. 16 U.S.C. § 1604(l).

Plaintiffs appear to recognize the fact that their term grazing permit is not a compensable property right and therefore, do not allege a taking of the permit itself. Instead, plaintiffs allege a taking of their "grazing preference." However, this argument has likewise been soundly rejected by the Courts. For example, in Alves v. United States, 133 F.3d 1454, 1457 (Fed. Cir. 1998), the plaintiff claimed that "his grazing preference is a governmentally adjudicated right attaching to

15

his fee simple (i.e., base) property that gives him a priority position in the procurement of grazing permits on adjacent public lands." Id. at 1456. The plaintiff claimed that while the permit is "freely revocable by the government without compensation . . .", his "underlying grazing preference is a compensable property right." Id. The Government disagreed arguing that "the distinction between a grazing 'permit' and a grazing 'preference' is irrelevant because the two are inexorably linked, and therefore the grazing preference, like the grazing permit, does not constitute a compensable property interest under the Fifth Amendment." Id. The Court agreed with the Government, holding that "the distinction between [plaintiff's] grazing preference and his grazing permit is irrelevant from a Fifth Amendment perspective, and neither constitutes a compensable property interest." Id. at 1457.

In sum, plaintiffs' "grazing preference" is not a compensable property interest and therefore, cannot be a basis for plaintiffs' taking claim.

3.     <u>Grazing on the Public Lands Prior to the Creation of the Lincoln National Forest Would Not Ripen Plaintiffs' "Grazing Preference" Into a Compensable Property Right</u>

Plaintiffs appear to allege that because their predecessors grazed land within what is now the Sacramento Allotment prior to the reservation of the land into the National Forest System, this somehow ripens their grazing preference into a compensable property right. However, even assuming plaintiffs' predecessors grazed cattle on land which is now the Lincoln National Forest, an assertion of fact we do not concede, plaintiffs' predecessors did not and could not obtain a compensable property right which was then somehow transferred to plaintiffs.

Indeed, in <u>Diamond Bar Cattle Co. v. United States</u>, 168 F.3d 1209 (10th Cir. 1999),

16

plaintiffs there advanced an almost identical claim.  The <u>Diamond Bar</u> plaintiffs claimed that

they and their predecessors in title had used the lands at issue for cattle grazing since the 1880s,

prior to the reservation of the land from the public domain to form part of the National Forest

System Lands.  168 F.3d at 1210-11.  The court held that Supreme Court precedent:

> categorically refutes plaintiffs' assertions that their predecessors
> obtained . . . a right to graze public lands.  Any grazing of cattle on
> public lands by plaintiffs' predecessors was permitted by an
> implied license, which is merely a 'personal privilege to do some
> particular act or series of acts on land without possessing any estate
> or interest therein, and is ordinarily revocable at the will of the
> licensor.'

<u>Id.</u> at 1212.  As a result, the Court dismissed plaintiffs' claims and held that "[p]laintiffs do not

now hold and never held a vested private property right to graze cattle on federal public lands."

<u>Id.</u> at 1217; <u>see also</u> <u>Bradshaw v. United States</u>, 47 Fed. Cl. 549, 553-54 (2000) (granting

defendant's motion for summary judgment on the issue of the taking of plaintiffs' grazing

"rights" after rejecting plaintiffs' argument that they "have a right to graze on the public lands

because their predecessors acquired that right under Nevada common law");  <u>Gardner v. Stager</u>,

892 F. Supp. 1301, 1303 (D. Nev. 1995) (holding that "the fact that [plaintiffs'] predecessors

grazed stock on the land at issue in the 1870's does not mean that the [plaintiffs] today have a

vested grazing right . . . immune from federal regulation").

     The Court should likewise hold here that plaintiffs do not have any vested private

property right to graze cattle on the Sacramento Allotment.

4.     <u>Plaintiffs' Alleged Reasonable, Investment-Backed Expectations Do Not Themselves Create a Compensable Property Right</u>

Plaintiffs, in an attempt to circumvent the well-settled law discussed above, allege in the alternative, that "[t]o the extent that said grazing right is not property, said grazing right and the statutes, laws, and regulations applicable thereto and the plaintiffs' actions in reliance thereon have created reasonable, investment-backed expectations. . . and . . . [d]efendant's actions have each and severally deprived plaintiffs of all economically viable use of said grazing rights and of their reasonable, investment-backed expectations." Compl. ¶¶ 34(B),(C). Plaintiff's attempt to create a property right out of "expectations" must also fail.

In order for the United States to be liable for a Fifth Amendment taking, plaintiffs must <u>first</u> establish that they have a compensable property interest. <u>American Pelagic</u>, 379 F.3d at 1372; <u>Chancellor Manor</u>, 331 F.3d at 901. Whether or not plaintiffs had "reasonable investment backed expectations" is irrelevant when assessing whether a property interest exists. <u>See</u> <u>Store Safe Redlands Associates v. United States</u>, 35 Fed. Cl. 726, 734 (1996).

In <u>Store Safe</u>, the plaintiff claimed that the "regulation of its grazing permits took the reasonable investment backed expectations of its entire ranching operation." <u>Id.</u> at 734. The Court noted that plaintiffs' argument "misapplies fundamental concepts of taking law. The initial inquiry by the court - whether plaintiff has a property interest - is not determined by examining whether plaintiff has 'reasonable investment backed expectations.'" <u>Id.</u> Instead, "[b]efore plaintiff can argue whether the government has taken its property, it must first prove what it owns. The presence of 'reasonable backed expectations' does not aid in establishing the

existence of the property interest." Id.  Only if plaintiff proves that it has a compensable property

right to graze the Sacramento Allotment (which it does not), and the court finds that defendant

took that property right, "then it may be appropriate to address 'expectations'."[9] Id.

For all of the reasons discussed above, plaintiffs' allegations that Defendant appropriated

plaintiffs' grazing "rights" in the Sacramento Allotment must be dismissed for failure to state a

claim upon which relief can be granted, or alternatively, on summary judgment for the United

States.  Compl. ¶ 34.

C.    **Plaintiffs Have No Compensable Property Right to Utilize Forage on the Sacramento Allotment**

Plaintiffs allege that Defendant has "physically appropriated grazing lands [and] forage . .

." Compl. ¶ 32(E); see also Compl. ¶ 32(C).  Plaintiffs fail to define what "forage" they are

referring to and Defendant can only assume plaintiffs are asserting an ownership interest in all

the grass and plants growing on the 111,000 acres of public land which comprise the Sacramento

Allotment.

However, as discussed above, plaintiffs' grazing permit "convey[s] no right, title, or

interest held by the United States in any lands or resources" (36 C.F.R. 222.3(b)) (emphasis

added), and there is a "well-settled body of law holding no private property right exists to graze

_____

[9]      The court went on to discuss the three factor Penn Central test which becomes relevant
only after the existence of a compensable property right is established: (1) the character of the
government action; (2) the economic impact of the regulation on the property owner; and (3) the
extent to which the regulation interferes with distinct investment-backed expectations. Store
Safe, 35 Fed. Cl. at 734, note 4 (citing Penn Central Transportation Co. v. City of New York, 438
U.S. 104, 124 (1978)).

public rangelands." <u>Diamond Bar</u>, 168 F.3d at 1215.  The uniformity of case law stems from the

fact that grazing on the public lands of the Western United States was initially at the

"suffer[ance]" of the United States; private use of the land occurred only by virtue of an "implied

license" or a "tacit consent" which the United States could withdraw at any time.  <u>Light v. United

States</u>, 220 U.S. 523, 535 (1911), citing <u>Buford v. Houtz</u>, 133 U.S. 320, 326 (1890).  "[The

government's] failure to object to the grazing, however, did not confer any vested right on the

[rancher], nor did it deprive the United States of the power of recalling any implied license under

which the land had been used for private purposes."  <u>Light</u>, 220 U.S. at 535; <u>see</u> <u>Omaechevarria

v. Idaho</u>, 246 U.S. 343, 352 (1918) (holding that Congress has never "conferred upon citizens the

right to graze stock upon the public lands [and] [t]he government has merely suffered the lands to

be so used").

       Thus, although plaintiffs' term grazing permit allows them access to the forage on the

Sacramento Allotment, that access is subject to the terms and conditions of the permit, and does

not convey a property right to all grasses and plants found on the Allotment.  Indeed, plaintiffs'

term grazing permit specifically states:

> When, in the judgement of the Forest Officer in charge, the forage
> is not ready to be grazed at the beginning of the designated grazing
> season, the permittee, upon request of the Forest Officer, will defer
> placing livestock on the grazing allotment to avoid damage to the
> resources.  The permittee will remove livestock from Forest
> Service - administered lands before the expiration of the designated
> grazing season upon request of the Forest Officer when it is
> apparent that further grazing would damage the resources.

Def. Ex. B, part 2, paragraph 8(c)).  The Forest Service has the discretion to limit cattle grazing

on the Sacramento Allotment as part of the administration of plaintiffs' permit; this is a term and

condition of plaintiffs' privilege to graze the Sacramento Allotment that was accepted by

plaintiffs when they signed the permit.

Moreover, in evaluating whether the particular property interest plaintiffs claim was taken

– i.e., forage – is one which the law recognizes as being compensable, the Court must look to

"background principles." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029, 112

S.Ct. 2886 (1992); American Pelagic, 379 F.3d at 1376. Sources for these "background

principles" can originate in state law, federal law or even common law:

> The Constitution neither creates nor defines the scope of property
> interests compensable under the Fifth Amendment. Instead,
> "existing rules and understandings" and "background principles"
> derived from an independent source, such as state, federal, or
> common law, define the dimensions of the requisite property rights
> for purposes of establishing a cognizable taking.

Conti, 291 F.3d at 1340.

For example, in American Pelagic, the plaintiff claimed that it had a property right in its

fishing vessel and that regulations that restricted plaintiff's ability to use the fishing vessel as it

wished amounted to a taking of its property right. 379 F.3d at 1374. The Federal Circuit looked

to "'existing rules or understandings' and 'background principles' derived from an independent

source such as state, federal, or common law . . . [to] define the dimensions of the requisite

property interest for purposes of establishing a takings claim." Id. at 1376 (citing Lucas, 505

U.S. at 1030). The Federal Circuit noted that when plaintiff purchased the fishing vessel, the

Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1883) (2004)

("Magnuson Act"),[10] was a "'background principle' of federal law that inhered in American

Pelagic's title to the vessel." Id. at 1379.  As a result:

> [i]t was against this framework of existing federal restrictions on fishing in the
> EEZ that American Pelagic invested in the *Atlantic Star*.  As of 1996, when the
> *Atlantic Star* was purchased, the Magnuson Act and the attendant regulatory
> scheme precluded any permitted fisherman from possessing a property right in his
> vessel to fish in the EEZ.  The revocation of American Pelagic's permits,
> therefore, did not 'go beyond what the relevant background principles would
> dictate.'

Id. at 1379 (citations omitted).

Here, plaintiffs applied for and received a ten year term grazing permit in 1989 and 1999.

The grazing permit conveyed "no right, title, or interest held by the United States in any lands or

resources."  36 C.F.R. § 222.3(b) (2004).  The grazing permit was freely revocable and could be

modified to "conform to current situations brought about by changes in law, regulation, executive

order, development or revision of an allotment management plan, or other management needs."

36 C.F.R. § 222.4(a)(7).  Plaintiffs right to use the Allotment to graze cattle and consume forage

was a privilege; plaintiffs never possessed a property right to use the Allotment to consume

unlimited forage.  Light, 220 U.S. at 535.

In sum, Plaintiffs' access to forage on the Sacramento Allotment is controlled by

plaintiffs' term grazing permit and "background principles" concerning grazing on public lands.

Since plaintiffs do not have a compensable property interest in the permit, the grazing lands, or

the forage on the Sacramento Allotment, plaintiffs' taking claim based on these allegations

---

[10]    The Magnuson Act declared that the United States had the sovereign right to fish and
exclusive fishery management authority in the Exclusive Economic Zone ("EEZ").  Id. at 1378.

22

should be dismissed for failure to state a claim upon which relief can be granted, or on summary

judgment.

> **D.     Plaintiffs Have No Factual or Legal Basis on Which to Argue Their Ranch Has Been Taken**

Plaintiffs allege that Defendant has taken plaintiffs' Ranch since plaintiffs "own the

ranch, the access to grazing lands, the forage, and the water" and "[a] taking of said water,

forage and grazing land rights deprives the ranch of all economically viable use . . .[and]

reasonable, investment-backed expectations." Compl. ¶¶ 33(A),(C),(E). As discussed above,

plaintiffs' grazing permit or "grazing preference" cannot form the basis for a compensable

property right. While plaintiffs' private fee ownership of the Ranch (Compl. ¶ 9) can certainly

form the basis for a finding of a compensable property interest, any decrease in the value of the

Ranch due to a change in plaintiffs' use of the Sacramento Allotment is not a loss in value which

is legally compensable.  United States v. Fuller, 409 U.S. 488, 492-93 (1973).[11]

In Fuller, the Supreme Court held that a jury in a condemnation case could not take into

consideration the value of the grazing permit in determining just compensation for the property

because "the Government as condemnor may not be required to compensate a condemnee for

elements of value that the Government has created, or that it might have destroyed under the

exercise of governmental authority other than the power of eminent domain." Id.; see White

Sands Ranchers of New Mexico v. United States, 14 Cl. Ct. 559, 568 (1988) ("The hard truth of

---

[11]     Moreover, the mere diminution in property value, standing alone, does not establish a
taking. Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust, 508
U.S. 602, 645 (1993).

the matter is that . . . the ranchers have no 'rights' to compensation for the loss of use of the public domain."). Since any "value" added to plaintiffs' Ranch as a result of their ability to legally graze cattle pursuant to their permit was never a property right, any loss in value as a result of any alleged loss of use of the Allotment for grazing, cannot be considered in plaintiffs' takings claim.

Moreover, even more fundamentally, plaintiffs' Ranch has not been "taken" at all. For example, in American Pelagic, the plaintiff did not contend that his fishing vessel was taken by the revocation of his fishing permits because he "was left with the ship; it was not physically taken. Instead, restrictions merely were placed on its use." 379 F.3d at 1375, n.15. Since the plaintiff could not argue that his fishing vessel was taken, he contended that his right to use the fishing vessel to fish for mackerel and herring in the EEZ was taken as a result of the revocation of his permits and authorizations. Id. at 1374-75. The Federal Circuit held that plaintiff did not acquire, as part of his title to the fishing vessel, the right to fish for Atlantic mackerel and herring in the EEZ. Id. at 1382-83. As a result, "American Pelagic thus did not possess the property right that it asserts formed the basis for its takings claim. In the absence of that property right, its claim is fatally defective." Id.

Similarly, here, plaintiffs own the Ranch but they do not own any property right to use the Sacramento Allotment in any manner they wish. As a result, any claim regarding a taking of plaintiffs' Ranch as a result of the taking of forage and grazing lands cannot form the basis for its

24

taking claims and should be dismissed pursuant to RCFC 12(b)(6), or on summary judgment.[12]

See McKinley v. United States, 828 F. Supp. 888, 893 (D.N.M. 1993) ("While the Court does not

doubt that the modification of appellant's permit [reducing his grazing allowance by 44%] has a

negative effect on the value of his base property and the economic viability of his ranching

operation, the value added to his property by his holding the permit is clearly a 'benefit and

privilege bestowed by the government'") (citations omitted)).

### E.   Plaintiff's Claim For Compensation Under 43 U.S.C. § 1752(g) Should Be Dismissed

Plaintiffs contend that in addition to, and separate from, their takings claims discussed

above, they are entitled to compensation under 43 U.S.C. § 1752(g).  See Compl. ¶¶ 36-38.

Section 1752(g) provides in pertinent part:

> Whenever a permit or lease for grazing domestic livestock is canceled in whole or in part, in order to devote the lands covered by the permit or lease to another public purpose,. . . the permittee or lessee shall receive from the United States a reasonable compensation for the adjusted value, to be determined by the Secretary concerned, of his interest in authorized permanent improvements[13] placed or

---

[12]     In Bradshaw, 47 Fed. Cl. 549, the court similarly held that "[w]ith regard to the grazing rights, plaintiffs cannot claim that the economic viability of the Ranch has been taken based on the denial of the grazing permit.  As set out above, defendant cannot be required to compensate for the loss of value caused by an alleged taking, when it created the value in question."  Id. at 556 (citing Fuller, 409 U.S. at 492).  However, the Bradshaw court reserved decision on whether the ranch was economically worthless because of the alleged taking of plaintiffs' water rights because an issue of fact existed regarding whether plaintiffs owned any water rights.  Id.  Since plaintiffs have not identified their claimed water rights, defendant is not moving to dismiss plaintiffs' claim regarding a taking of the Ranch as a result of the alleged taking of plaintiffs' water rights at this time.

[13]     "'Range Improvement' means any activity or program designed to improve production of forage and includes facilities or treatments constructed or installed for the purpose of improving the range resource or the management of livestock. . ."  36 C.F.R. § 222.1(b)(21) (2004).

constructed by the permittee or lessee on the lands covered by such permit or lease, but not to exceed the fair market value of the terminated portion of the permittee's or lessee's interest therein.

43 U.S.C. §1752(g) (2004) (emphasis added).[14]   In order for plaintiffs to succeed on their Section 1752(g) claim, they must allege and prove that: (1) defendant cancelled plaintiffs' term grazing permit and (2) defendant devoted the lands covered by the permit to another public purpose. Moreover, plaintiffs must allege and prove that they have applied to the Secretary of Agriculture for "reasonable compensation" for the improvements they assert a claim for, and exhausted their administrative remedies.  As described below, plaintiffs' Section 1752(g) claim is not ripe, defendant has not cancelled plaintiffs' term grazing permit, and the lands covered by the permit have not been devoted to another public purpose.  For all of these reasons, plaintiffs' Section 1752(g) claim must fail.

      1.     Plaintiffs Section 1752(g) Claim Is Not Ripe

Plaintiffs must establish that their Section 1752(g) claim is ripe for adjudication.  Section 1752(g) requires a permittee to first apply to the "Secretary concerned" for a "reasonable compensation for the adjusted value . . . of his interest in authorized permanent improvements. . ."  Plaintiffs have not made such an application.  With respect to improvements on Forest Service

---

"Permanent" improvements "are range improvements installed or constructed and become a part of the land such as: dams, ponds, pipelines, wells, fences, trails, seeding, etc." 36 C.F.R. § 222.1(b)(21)(ii)(A) (2004).

[14]     See also 36 C.F.R. §222.6(a) (2004) ("Whenever a term permit for grazing livestock . . . is canceled in whole or in part to devote the lands covered by the permit to another public purpose, including disposal, the permittee shall receive from the United States a reasonable compensation for the adjusted value of his interest in authorized permanent improvements placed or constructed by him on the lands covered by the cancelled permit").

land, 7 U.S.C. § 6912(e) requires that a claimant "shall exhaust all administrative appeal

procedures established by the Secretary or required by law before a person may bring an action in

a court of competent jurisdiction." See Ace Property & Cas. Ins. Co. v. United States, 60 Fed.

Cl. 175, 181 (2004) ("statutory exhaustion requirements are mandatory, and courts are not free to

dispense with them").  As a result, plaintiffs' Section 1752(g) claim must be remanded to the

agency in the first instance to make a determination regarding "reasonable compensation." See

Ace Property, 60 Fed. Cl. at 181-84 (because the "statutory provision mandating exhaustion

contained in 7 U.S.C. § 6912(e) is explicit," the Court of Federal Claims had no jurisdiction to

entertain claims against the United States based on Agriculture's actions).

      Although defendant expects that plaintiffs will argue that an application to the agency

would be futile since, as discussed below, defendant has taken the position that it has not

cancelled plaintiffs' term grazing permit, nor devoted the lands covered by the permit to another

public purpose, such an argument is without merit.  The argument that "courts may assume that

the government's litigation positions will control the outcome of administrative proceedings" has

been rejected by the courts.  United States v. M/V Santa Clara I, 819F. Supp. 507, 513 (D.S.C.

1993) (citing Randolph-Sheppard Vendors v. Weinberger, 795 F.2d 90, 107 (D.C. Cir. 1986).

Although defendant has taken the position that it has not cancelled plaintiffs' permit nor devoted

the lands to another public purpose, it does not automatically follow that an application to the

agency itself would be futile.

2.      Plaintiffs' Permit Has Not Been Cancelled and Therefore Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted

Plaintiffs admit by implication that the Forest Service has cancelled plaintiffs' permit. Plaintiffs allege that the "actions of defendant amount to a de facto cancellation of plaintiffs' permit to dedicate the land subject to plaintiff's permit to a different public use or uses." Compl. ¶ 37. The "actions" are described as "causing removal of cattle and suspending and canceling use of the Allotment. . ." Compl. ¶ 38.

In 2000, the Forest Service partially suspended plaintiffs' permit for two years resulting in a reduction of the number of cattle legally permitted to graze by 40%. See Def. Ex. C (Martinez Decl. ¶ 6); see supra, p. 7-8. The Forest Service partially suspended plaintiffs' permit because plaintiffs failed to remove excess livestock as directed by the Acting District Ranger. See id.; Def. Ex. B, part 2, section 8(d) ("The permittee will allow only the numbers, kind, and class of livestock on the allotment during the period specified in Part 1 hereof or the annual Bill for Collection, including any modifications made as provided for in Section 8(c)"). Plaintiffs were warned that if they refused to remove excess cattle, plaintiffs faced "suspension or cancellation" of their permit. See Def. Ex. B, part 2, section 8(d).

Plaintiffs' permit was never cancelled by the Forest Service. Def. Ex. C (Martinez Decl. ¶ 9). The Forest Service cancels a term grazing permit only when it takes "action to permanently invalidate a term grazing permit in whole or in part." 36 C.F.R. 222.1(b)(4) (emphasis added). By contrast, plaintiffs' partial suspension was instead a "temporary withholding of a term grazing permit in whole or in part." 36 C.F.R. 222.1(b)(22) (defining "suspend").

Plaintiffs continue to graze cattle on the Allotment.  If plaintiffs' permit had been cancelled by the Forest Service, plaintiffs would not be able to legally graze cattle on the Allotment.  Since the Forest Service has never taken any action to "permanently invalidate" plaintiffs' term grazing permit, in whole or in part, the Forest Service has not cancelled plaintiffs' permit and plaintiffs have failed to allege a proper 43 U.S.C. § 1752(g) claim.

        3.      The Forest Service Has Not Devoted the Lands Covered by Plaintiffs' Permit to Another Public Use Other Than Cattle Grazing

Section 1752(g), by its own terms, only applies to full or partial cancellations of term grazing permits when done in order to devote the lands covered by the permit to another public purpose.  43 U.S.C. § 1752(g) (2004).  Thus, Section 1752(g) is not implicated here, since the Sacramento Allotment continues to remain devoted to the same public use - grazing.[15]  Indeed, grazing has not been excluded from the Allotment, as evidenced by the fact that plaintiffs themselves continue to graze cattle on the Allotment.  See Def. Ex. C (Martinez Decl. ¶ 9).

The Forest Service is only required to compensate permittees for improvements where "changes occur that preclude grazing where it was formerly permitted . . ."  See Def. Ex. F (Forest Service Manual § 2237.03(1) (emphasis added)); see Def. Ex. B, part 2, section 11(b) (plaintiffs' term grazing permit may be cancelled, in whole or in part, "whenever the area described in this permit is to be devoted to a public purpose that precludes grazing") (emphasis

---

[15]     As discussed supra, the Forest Service is required to manage the National Forest System Lands according to federally mandated principles of multiple use.  See, e.g., Multiple-Use, Sustained Yield Act of 1960, 16 U.S.C. §§ 528-531.  Grazing is merely one of several uses, along with recreation, timber, minerals, watershed, wildlife and fish.  43 U.S.C. § 1702(c).

added).[19]  Since the Sacramento Allotment is still open to grazing, the lands have not been

"devoted" to another use.  See Def. Ex. C (Martinez Decl. ¶ 9).

      Accordingly, since the Forest Service has not cancelled plaintiffs' permit to devote the

Sacramento Allotment to another public purpose to the exclusion of cattle grazing, plaintiffs have

not stated a valid claim for damages pursuant to 43 U.S.C. § 1752(g).

## III.   CONCLUSION

      For the reasons set forth above, the United States respectfully requests that the Court

grant this motion to partially dismiss plaintiffs' claims concerning an alleged taking of plaintiff's

grazing "rights," forage "rights," and Ranch for failure to state a claim upon which relief can be

granted, or on summary judgment.  Defendant also requests that plaintiffs' 43 U.S.C. § 1752(g)

claim be dismissed pursuant to RCFC 12(b)(6), or on summary judgment.

---

[19]     Moreover, the Forest Service will only provide compensation to permittees "who contributed to the cost of placing or constructing the permanent range improvement" and will "[r]esolve questions [regarding compensation] based on whether or not improvements will continue to be available for use by the permittee." See Def. Ex. F (Forest Service Manual § 2237.03(2)); Def. Ex. G (Forest Service Handbook § 2209.13, 71.1). Plaintiffs have not alleged that they have "contributed to the cost of placing or constructing" range improvements on the Allotment and have not alleged that they are prohibited from using any of their alleged range improvements.

Dated:   September  30 , 2004                    Respectfully submitted,

                                                 THOMAS L. SANSONETTI
                                                 Assistant Attorney General
                                                 Environment & Natural Resources Division


                                                 _Kathleen Lennon_
                                                 KATHLEEN LENNON
                                                 U.S. Department of Justice
                                                 Environment & Natural Resources Division
                                                 General Litigation Section
                                                 P.O. Box 663
                                                 Washington, D.C. 20044-0663
                                                 TEL: (202) 305-0481
                                                 FAX: (202) 305-0506
                                                 E-mail: Kathleen.Lennon@usdoj.gov

                                                 *Attorney for Defendant United States*

Of Counsel:

Mary Ann Joca
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 856
Albuquerque, New Mexico 87103-0586


31

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **DEFENDANT'S MOTION TO PARTIALLY DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT** has been served by first class mail on this 30th day of September, 2004, to the following counsel of record:

> Michael J. Van Zandt
> McQuaid Bedford & Van Zandt, LLP
> 221 Main Street, 16th Floor
> San Francisco, California 94105

FELECIA LESESNE

Docket No. 04-786L

## UNITED STATES COURT OF FEDERAL CLAIMS

### MEMORANDUM

TO:      JUDGE Braden

FROM:   CLERK'S OFFICE

RECEIVED

OCT 0 4 2004

CHAMBERS OF
JUDGE BRADEN

The attached was received on 9-30-04
and the following defect(s) is/are noted:

1. ✓    Untimely, due to be filed by _____ [Rule 7.2]

2. ____    Proof of service: [Rule 5.1]
        ____ is missing; ____ is not signed and/or dated;
        ____ shows service on wrong attorney or of wrong item;
        ____ is not attached to each document or copy

3. ____    Not signed by the attorney of record [Rules 11 and 83.1(c)(2)]

4. ____    Does not comply with the provisions of Rule:

| | | |
|---|---|---|
| ____ | 5.2(a)(1)(A) | Re: table of contents or index to appendix is missing (or in wrong location) |
| ____ | 5.2(a)(1)(G) | Re: index to appendix is to be located in both the front of the brief <u>and</u> in front of the appendix |
| ____ | 5.2(b) | Re: length of briefs or memorandum |
| ____ | 5.3(c) | Re: binding |
| ____ | 5.3(d) | Re: original/copies missing |
| ____ | 5.3(g) | Re: Judge's name on all filings |
| ____ | 7(b) | Re: brief, supporting memorandum, affidavits shall be attached to motion |
| | 24(c) | Re: motion to be accompanied by a pleading |
| ✓ | 56(h) | Re: proposed findings ~~and/or response to proposed findings~~ is missing ~~or not a separate document~~ |
| ____ | 56.1(b) | Re: statement of facts and/or counter-statement of facts is missing or not a separate document |
| | 77.1(a) | Re: improper use of the night box |
| ____ | 83.1(c)(1) | Re: one attorney for a party; attorney to be an individual not a firm |
| ____ | _____ | Re: _____ |

5. ____    Original affidavit(s)/declaration(s) is/are missing

6. ____    No provision in the Rules (or court order) for the filing of this item

7. ____    This case has been designated as an *ECF* case.

8. ____    _____

Deputy Clerk