IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO GRAZING ASSOCIATION, INC., et al., | ) | |
| Plaintiffs, | ) | No. 04-786 L |
| v. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KATHLEEN LENNON DOSTER
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Telephone No.: (202) 305-0481
Facsimile No.: (202) 305-0506
E-mail: kathleen.doster@usdoj.gov

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583
Facsimile No.: (603) 225-1577

OF COUNSEL:
MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586

Dated: April 29, 2008

**TABLE OF CONTENTS**


I. PROCEDURAL HISTORY . . . . . . . . . . 1

II. FACTUAL BACKGROUND . . . . . . . . . . 3

A. Plaintiffs' Term Grazing Permit . . . . . . . . . . 4

B. Plaintiffs' Alleged Water Rights . . . . . . . . . . 8

III. ARGUMENT . . . . . . . . . . 8

A. Standard of Review . . . . . . . . . . 8

B. Plaintiffs' Claim That Their Forage Rights Have Been Taken Must Be Rejected Because, Under New Mexico State Law, Water Rights Do Not Include An Implicit Right to Forage Incident to the Use of Water . . . . . . . . . . 9

C. As a Matter of Law, Because Plaintiffs Have No Property Interest in Grazing or Forage on the Sacramento Allotment, the Government's Actions Restricting Grazing Cannot Constitute a Taking of Their Alleged Water Rights . . . . . . . . . . 10

D. The United States Has Not Taken Plaintiffs' Alleged Water Rights Within the Peñasco Enclosure . . . . . . . . . . 15

E. As a Matter of Law, the Use of Water By Endangered Species And/Or Elk, Does Not Make the United States Liable for a Taking of Plaintiffs' Alleged Water Rights . . . . . . . . . . 17

F. There Has Been No Taking of Plaintiffs' Ranch . . . . . . . . . . 18

IV. CONCLUSION . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bishop v. United States
126 F. Supp. 449 (Ct. Cl. 1954), cert. denied., 349 U.S. 955 (1955) . . . . . . . . . . . . . . . 17

Bradshaw v. United States
47 Fed. Cl. 549 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Buford v. Houtz
133 U.S. 320 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Celotex Corp. v. Catrett
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Clodfelter v. Reynolds
358 P.2d 626 (N.M. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Colvin Cattle Co. v. United States
468 F.3d 803 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 19-21

Diamond Bar Cattle Co. v. United States
168 F.3d 1209 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Douglas v. Seacoast Prods Inc.
431 U.S. 265 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Knieper v. United States
38 Fed. Cl. 128 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Morris v. United States
392 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mountain States Legal Found. v. Hodel
799 F.2d 1423 (10th Cir. 1986) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rotec Indus. Inc. v. Mitsubishi Corp.
215 F.3d 1246 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sacramento Grazing Ass'n v. United States
66 Fed. Cl. 211 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 12, 19

Sweats Fashions, Inc. v. Pannill Knitting Co.
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Fuller
409 U.S. 488 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Light v. United States
220 U.S. 523 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Utah Power & Light Co. v. United States
243 U.S. 389 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Walker v. United States
162 P.3d 882 (N.M. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 12

Walker v. United States
79 Fed. Cl. 685 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12-15, 20, 21

Washoe County v. United States
319 F.3d 1320 (Fed. Cir. 2002), cert. denied, 124 S. Ct. 202 (2003) . . . . . . . . . . . . . . . 16

Williamson County Regional Planning Comm'n v. Hamilton Bank
473 U.S. 172, 186 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATUTES

### FEDERAL STATUTES

43 U.S.C. § 1752(g) . . . . . . . . . . 1, 2

### STATE STATUTES

N.M. Stat. Ann. § 72-12-7 (2008) . . . . . . . . . . 13

N.M. Stat. Ann. § 72-5-23 (2008) . . . . . . . . . . 13

N.M. Stat. Ann. § 72-5-24 (2008) . . . . . . . . . . 13

## RULES

RCFC 56(c) . . . . . . . . . . 9

## REGULATIONS

36 C.F.R. § 222.1(b)(3) (2004) . . . . . . . . . . 5

36 C.F.R. § 222.4 . . . . . . . . . . 5

43 C.F.R. § 4100.0-5 . . . . . . . . . . 12

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Rule 56 and the Court's March 14, 2008 Order (Doc. 33), Defendant United States hereby moves for summary judgment as to all of Plaintiffs' remaining claims set forth in the Court's June 30, 2005 Memorandum Opinion and Order (Doc. 14), which granted in part Defendant's September 30, 2004 motion to partially dismiss the complaint, or in the alternative, for summary judgment (Doc. 9). A brief in support of this motion follows.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. PROCEDURAL HISTORY

On April 30, 2004, Plaintiffs filed a complaint alleging a taking of their ranch and appurtenant water rights, forage rights, preference grazing rights, and range improvements, as a result of their restrictions imposed on their term grazing permit for the Sacramento Allotment on the Lincoln National Forest. On September 30, 2004, the United States moved to partially dismiss the complaint, or in the alternative, for summary judgment ("Motion"). The bases for the United States' Motion were as follows: (1) Plaintiffs' "grazing preference" did not constitute a legally cognizable property interest; (2) Plaintiffs did not have a compensable property right to utilize forage on the Sacramento Allotment; (3) Plaintiffs did not have a factual or legal basis on which to argue that their Ranch had been taken; and (4) Plaintiffs' claim for compensation under 43 U.S.C. § 1752(g) should be dismissed since, among other reasons, Plaintiffs' claim was not ripe.

Plaintiffs opposed the United States' Motion on November 22, 2004 (Doc. 12), and the

United States filed a reply in support of its Motion on December 9, 2004 (Doc. 13). On June 30, 2004, the Court granted in part Defendant's Motion (Doc. 14). Sacramento Grazing Ass'n v. United States, 66 Fed. Cl. 211 (2005). In this decision, the Court: (1) held that Plaintiffs' claim for compensation under 43 U.S.C. § 1752(g) was not ripe for adjudication, and dismissed that claim without prejudice; (2) held that the Complaint did not provide a "concise and direct" statement as to what specific water rights were the basis for Plaintiffs' alleged takings claim, and provided Plaintiffs with an opportunity to amend their Complaint; (3) held that the Complaint alleged sufficient facts to state a regulatory takings claim with respect to the Goss Ranch; and (4) held that Grazing Permit No. 08-1250 and Plaintiffs' preference grazing rights are not compensable property interests and therefore dismissed Plaintiffs' claim that those rights had been taken, with prejudice.

On March 22, 2006, the parties requested a stay of the remaining claims pending a decision by the New Mexico Supreme Court in Walker v. United States, No. 29,544, stating that the certified questions of state law from the United States Court of Federal Claims, No. 04-155L, addressed in Walker, were "directly relevant to the issues remaining in this case." See Joint Motion for a Stay at 1 (Doc. 22). On March 27, 2006, the Court issued an Order granting the stay. See Order Granting Motion to Stay (Doc. 23).

On June 21, 2007, the New Mexico Supreme Court issued a decision in the Walker case, in which the New Mexico Supreme Court, in response to the questions of state law certified to it by the Court of Federal Claims, held that: (1) the law of the State of New Mexico does not recognize a limited forage right implicit in a vested water right; and (2) the law of the State of

New Mexico does not recognize a limited forage right implicit in a right-of-way for the maintenance and enjoyment of a vested water right. Walker v. United States, 162 P.3d 882, 885 (N.M. 2007).

On July 27, 2007, the parties filed a Joint Status Report. See Joint Status Report (Doc. 27). In the Joint Status Report, Plaintiffs conceded that they lack a forage right implicit in any vested water rights they may hold under New Mexico law or implicit in any rights-of-way for the maintenance and enjoyment of any vested water rights they may hold under New Mexico law. Id. at 2.

As a result of the Court's decision of June 30, 2005 (66 Fed. Cl. 211), the only claims remaining in this case are: (1) Plaintiffs' allegations set forth in paragraph 32 of the Amended Complaint that the United States has taken Plaintiffs' property interests in water located on the Sacramento Allotment; and (2) Plaintiffs' allegations set forth in paragraph 33 of the Amended Complaint that the United States has taken Plaintiffs' Ranch.

For the reasons set forth in this brief, summary judgment should be entered in favor of Defendant on both of these claims.

## II. FACTUAL BACKGROUND

The events leading up to this litigation were previously briefed by the parties in connection with Defendant's 2004 Motion. The United States respectfully refers the Court to Defendant's previous briefs filed in support of its Motion and the Court's June 30, 2005 Opinion and Order for a more complete discussion of the facts of this case.

A. Plaintiffs' Term Grazing Permit

Plaintiffs James Goss, Frances Goss, Justin Goss and Brenna Goss[1] contend that they are the fee simple owners of the "Goss Ranch" ("the Ranch") consisting of approximately 80 acres located in Otero County, New Mexico. Amend. Compl. ¶ 9.[2] Plaintiffs purchased the Ranch from the Sacramento Cattle Company[3] in 1997. Amend. Compl. ¶8. The Ranch is located several miles west of the Sacramento Grazing Allotment ("Sacramento Allotment" or "Allotment"), which is located within the Lincoln National Forest, New Mexico.

The Sacramento Allotment encompasses approximately 111,000 acres of the Lincoln National Forest in southeastern New Mexico and is administered by the United States Forest Service ("Forest Service" or "USFS"). Amend. Compl. ¶¶ 8, 9; see Martinez Decl. ¶ 3 (Def. Ex. A). On November 27, 1989, the Forest Service issued a term grazing permit to Sacramento Grazing Association, Inc. ("SGA") that allowed it to graze up to 553 livestock for a period of ten years, subject to the terms and conditions of the permit and all applicable laws and regulations.

[1] The Amended Complaint identifies Plaintiff Sacramento Grazing Association, Inc. as an "incorporated association, consisting of the Goss family, formed for the purpose of holding the grazing permit on the Sacramento Grazing Allotment in the Lincoln National Forest, New Mexico. Plaintiffs James Goss, Frances Goss, Justin Goss and Brenna Goss are owners of the Goss Ranch in Otero County, New Mexico. . ." Amend. Compl. ¶ 4. For purposes of this memo we refer to the plaintiffs collectively as "Plaintiffs."

[2] Plaintiffs filed an Amended Complaint on September 2, 2005 (Doc. 15).

[3] The Sacramento Cattle Company changed its name to Sacramento Grazing Association, Inc. in 1989.

See Def. Ex. B. The Ranch is identified as the "base property"[4] for purposes of the term grazing permit. Amend. Compl. ¶ 9. Plaintiffs' term grazing permit was renewed on November 23, 1999, and authorized Plaintiffs to graze up to 553 cattle for a period of ten years, subject to the terms and conditions of the permit and all applicable laws and regulations. See Def. Ex. C.

On July 28, 2004, the Forest Service issued a Record of Decision for the Final Environmental Impact Statement for the Sacramento, Dry Canyon and Davis Grazing Allotments. See Martinez Decl. ¶ 7 (Def. Ex. A). The Record of Decision implemented management actions on the Allotment to make livestock management on the Allotment consistent with the Lincoln National Forest Land and Resource Management Plan. See id. ¶ 7 (Def. Ex. A). As a result, in order to make Plaintiffs' term grazing permit consistent with the Record of Decision, Plaintiffs had the choice to either sign a new ten-year term grazing permit or have their existing permit modified. See id. ¶ 8 (Def. Ex. A); 36 C.F.R. § 222.4. Plaintiffs declined a new ten-year term grazing permit. See Martinez Decl. ¶ 8 (Def. Ex. A). As a result of that decision, the Forest Service modified Plaintiffs' existing permit so that, among other things, Plaintiffs could graze up to 412 cattle on the summer range and 334 cattle on the winter range. See Def. Ex. D; Martinez Decl. ¶ 9 (Def. Ex. A).

When Plaintiffs signed their term grazing permits, they agreed to a number of specific terms and conditions. See Def. Ex. A, B. For example, Plaintiffs agreed that even though their term grazing permit authorized them to graze up to 553 livestock during a grazing season from

[4] "Base property" is defined as "land and improvements owned and used by the permittee for a farm or ranch operation and specifically designated by him to qualify for a term grazing permit." 36 C.F.R. § 222.1(b)(3) (2004).

March 1st to February 28th on the Sacramento Allotment, the Forest Service had the discretion to adjust the number of livestock and period of use in the annual Bill of Collection that is sent to the permittee. See Def. Ex. C, part 2, section 2 ("Each year, after validation and prior to the beginning of the grazing season, the Forest Service will send the permittee a Bill for Collection specifying for the current year the kind, number, and class of livestock allowed to graze, the period of use, the grazing allotment, and the grazing fees. This bill, when paid, authorizes use for that year and becomes part of this permit"); see also Def. Ex. C, part 1, section 2 ("The number, kind, and class of livestock, period of use, and grazing allotment on which the livestock are permitted to graze are as follows, unless modified by the Forest Service in the Bill of Collection. . .").

Adjustments to the number of cattle and period of use of the grazing allotment are decided on an annual basis by the District Ranger after full discussions with the permittee and are described in detail in the Annual Operating Plan ("AOP"), now known as the Annual Operating Instructions ("AOI"). See Martinez Decl. ¶¶ 10-11 (Def. Ex. A); Def. Ex. E (Plaintiffs' Annual Operating Instructions for 2008). The AOI is required for the proper administration of grazing under the provisions of the term grazing permit. The term grazing permit provides broad discretion in issuing instruction to permittees, as needed, for resource protection. See Martinez Decl. at ¶ 10 (Def. Ex. A). The AOI sets forth, among other things, the number of cattle, length of grazing season, and allowable utilization levels on forage species for cattle grazing on the Sacramento Allotment. Id. This discretion is needed because conditions on the Allotment vary from season to season depending on factors such as the weather. Id.

Prior to the issuance of the AOI, the District Ranger consults with the permittee and reviews the permittee's annual grazing application for any requested adjustments to the previous year's AOI. See Martinez Decl. ¶ 11 (Def. Ex. A). The District Ranger's decision is reflected in a Bill for Collection. See id. For the 2008 grazing season, the AOI authorizes Plaintiffs to graze up to 370 cattle year-round on the Allotment. See Martinez Decl. ¶ 12 (Def. Ex. A); Def. Ex. E.

Other terms and conditions of Plaintiffs' permit includes Section 8(c), which provides that the Forest Service has the discretion to delay the beginning of livestock grazing or to require the removal of livestock early when necessary to protect forage resources. Section 8(c) reads:

> When, in the judgment of the Forest Officer in charge, the forage is not ready to be grazed at the beginning of the designated grazing season, the permittee, upon request of the Forest officer, will defer placing livestock on the grazing allotment to avoid damage to the resources. The permittee will remove livestock from Forest Service-administered lands before the expiration of the designated grazing season upon request of the Forest officer when it is apparent that further grazing will damage the resources.

Def. Ex. C, part 2, section 8(c).

In addition, Plaintiffs' permit contains a provision for the protection of wetlands and endangered or threatened species located on the Allotment. The permit states: "Exclosures[5/] designated on the attached Sacramento Allotment Range Improvement /Allotment Map are considered special emphasis areas and not part of the Sacramento Allotment. Livestock use is not permitted within exclosures and will be removed in a timely manner." Def. Ex. C at 6; see

---

[5/] There are seven main exclosures (fenced areas) located within the Sacramento Allotment. These include: Sacramento Lake, Hubbell, Upper Mauldin, Lower Mauldin, Upper Peñasco, Bluff Springs, and Western Riparian (otherwise known as Kingsbury Springs). See Martinez Decl. ¶ 14 (Def. Ex. A).

Martinez Decl. ¶ 13 (Def. Ex. A). Although Plaintiffs are prohibited from grazing cattle within the exclosures, Plaintiffs may access water located within these exclosures through means other than grazing. For example, water may flow out of the exclosures naturally, or in the case of Sacramento Lake, may be accessed through a faucet head on a pipeline. See Martinez Decl. ¶ 15 (Def. Ex. A).

B. Plaintiffs' Alleged Water Rights

On September 2, 2005, Plaintiffs amended their complaint to include an exhibit which purports to be an "index of stock waters" Plaintiffs contend they own on the Sacramento Allotment. See Amended Compl., Ex. A. Exhibit A identifies 143 separate water sources. Although the United States is not challenging Plaintiffs' contention that they have valid state water rights for purposes of this Motion, Defendant reserves its right to challenge this contention at a later time, especially considering the fact that there has been no state adjudication of Plaintiffs' purported water rights. Indeed, the "declarations" previously submitted by Plaintiffs in support of their opposition to Defendant's earlier motion clearly state: "The acceptance for filing of this declaration by this office does not indicate affirmation or rejection of the statements contained herein." See, e.g., Def.'s Ex. F.

III. ARGUMENT

A. Standard of Review

Summary judgment is a "salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotation marks omitted). In this regard, the

summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the 'just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Summary judgment is appropriate under RCFC 56 when there are no genuine issues of material fact in dispute, and the moving party is entitled to a judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude entry of summary judgment." Anderson, 477 U.S. at 248-49; see also Knieper v. United States, 38 Fed. Cl. 128, 134 (1997) ("Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment."). Moreover, "[w]hen the moving party has carried its burden . . ., its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Rotec Indus. Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1250-51 (Fed. Cir. 2000) (citations omitted).

B. Plaintiffs' Claim That Their Forage Rights Have Been Taken Must Be Rejected Because, Under New Mexico State Law, Water Rights Do Not Include An Implicit Right to Forage Incident to the Use of Water

In their amended complaint, Plaintiffs allege that they own forage rights on the Sacramento Allotment and that such rights have been taken. Amend. Compl., ¶¶ 4, 8, 24, 27, 32. As noted above, this and other remaining claims were stayed pending a decision from the New Mexico Supreme Court in Walker. On June 21, 2007, the New Mexico Supreme Court issued a decision holding that the law of the State of New Mexico does not recognize a limited forage

right implicit in a vested water right, and does not recognize a limited forage right implicit in a right-of-way for the maintenance and enjoyment of a vested water right. Walker v. United States, 162 P.3d 882, 884 (N.M. 2007); see also Walker v. United States, 79 Fed. Cl. 685, 694-95 (2008).

The New Mexico Supreme Court's decision in Walker confirms that any state law water rights possessed by Plaintiffs, or any rights-of-way Plaintiffs possess for the maintenance and enjoyment of such water rights, do not include an implicit right to graze livestock (i.e., consume forage) on the Sacramento Allotment. Instead, any authorization to graze or use forage on the Sacramento Allotment is derived exclusively from Plaintiffs' term grazing permit. The direct applicability of the New Mexico Supreme Court's decision in Walker was acknowledged by Plaintiffs in the Joint Status Report filed by the parties on July 27, 2007 (Doc. 27). In that report, Plaintiffs now concede that they lack a forage right implicit in any vested water rights they may hold under New Mexico law or implicit in any rights-of-way for the maintenance and enjoyment of any vested water rights they may hold under New Mexico law. Id. at 2.

Accordingly, because Plaintiffs do not have a protected property right that allows them to graze livestock on the Allotment, summary judgment should be entered for Defendant with respect to Plaintiffs' claim that their forage rights have been taken.

### C. As a Matter of Law, Because Plaintiffs Have No Property Interest in Grazing or Forage on the Sacramento Allotment, the Government's Actions Restricting Grazing Cannot Constitute a Taking of Their Alleged Water Rights

Plaintiffs' claim that their water rights have been taken is premised in part on the reductions in the number of cattle that they are permitted to graze on the Sacramento Allotment, as well as restrictions on the locations within the Allotment where grazing is permitted. See

Amend. Compl. ¶ 25 (contending that the "management practices" of the Forest Service have taken Plaintiffs' water rights); Joint Status Report at 3 (alleging that the Forest Service has taken "administrative" actions "which have deprived Plaintiffs of their water rights without just compensation") (Doc. 27); Pls.' Response to Interrog. No. 4 (the "reduction in cattle below the permitted numbers amounts to a denial of access to Plaintiffs' water rights, forage rights, range rights and access rights.") (Def. Ex. G); Pls.' Response to Interrog. No. 3 (identifying 63 water rights that Plaintiffs allege were taken from them on the summer range within the Sacramento Allotment based on limitations imposed on grazing in that area, and 67 water rights that they allege to have been taken in the winter pasture as a result of limitations imposed on grazing in that area)[6] (Def. Ex. G) ; Pls.' Response to Interrog. No. 14 (contending that they have been denied access to various water sources through reductions in the number of cattle they are allowed to graze on the Allotment and through the installation of fencing around certain water sources) (Def. Ex. G).

Although the restrictions on grazing may take different forms – i.e., reducing the number of cattle Plaintiffs are legally allowed to graze on the Allotment, limiting where Plaintiffs may graze on the Allotment due to forage conditions, or fencing off particular areas from grazing in order to protect endangered species – none can form a basis for Plaintiffs' takings claim because Plaintiffs do not possess a legally cognizable property right to graze cattle on the Allotment. See Sacramento Grazing Ass'n, Inc., 66 Fed. Cl. at 211 (holding that Plaintiffs do not have a

---

[6] The water rights identified in Plaintiffs' discovery responses consist of springs, stock tanks, pipelines, and streams or rivers.

compensable property interest in their grazing permit or "preference"[7] grazing rights); see also Walker, 162 P.3d at 895 (holding "that neither the laws of New Mexico nor customary practice support the Walkers' claim to an implicit 'possessory' right to graze on the public domain. . ."); Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1217 (10th Cir. 1999) (finding that irrespective of whether plaintiffs held water rights under New Mexico law "[p]laintiffs do not now hold and have never held a vested private property right to graze cattle on federal public lands"); Colvin Cattle Co. v. United States, 468 F.3d 803, 806 (Fed. Cir. 2006) (noting that water rights established under Nevada law do not include an inherent right to graze on land owned by the federal government). In other words, because Plaintiffs do not possess a compensable property right to graze cattle on the Allotment, any grazing restrictions that allegedly impact Plaintiffs' ability to bring their cattle directly to a water source located on the Allotment cannot form the basis of Plaintiffs' claim that their water rights have been taken.

Indeed, this Court's recent decision in Walker is particularly instructive here. See 79 Fed. Cl. 685. In Walker, this Court held that the cancellation of a term grazing permit did not constitute a taking of plaintiffs' alleged water rights under the Fifth Amendment because the cancellation "did not place any limit on Plaintiffs' alleged right to certain water sources." Id. at 706. That is because, under New Mexico law, water rights "are not tied to a particular location or even a particular source" (Walker, 162 P.3d at 890), and owners of water rights "may transfer, lease, or sell such rights from the surrounding lands." 79 Fed. Cl. at 706; see also Clodfelter v.

[7] A "grazing preference" is a "superior or priority position against others for the purpose of receiving a grazing permit or lease. This priority is attached to base property owned or controlled by the permittee or lessee." 43 C.F.R. § 4100.0-5.

Reynolds, 358 P.2d 626, 629 (N.M. 1961) (quoting Lindsey v. McClure, 136 F.2d 65, 70 (10th Cir. 1943)); N.M. Stat. Ann. § 72-5-23 (2008) (setting out the process for changing a place of use of a water right or the purpose of use); N.M. Stat. Ann. § 72-5-24 (2008) ("An appropriator of water may, with the approval of the state engineer, use the same for other than the purpose for which it was appropriated or may change the place of diversion, storage or use. . . ."); N.M. Stat. Ann. § 72-12-7 (2008) ("The owner of a water right may change the location of his well or change the use of the water. . . ."). As a result, when the plaintiffs in Walker failed to comply with the terms of their grazing permit, "'they took the risk of either forfeiting their water right through non-use or being forced to transfer, lease, or sell that right.'" Walker, 79 Fed. Cl. at 706 (quoting Walker, 162 P.3d at 892).

Here, Plaintiffs' argument is even more tenuous since Plaintiffs' term grazing permit has never been cancelled, and therefore, Plaintiffs continue to this day to graze cattle and use water on the Allotment. See Martinez Decl. ¶ 6 (Def. Ex. A). Since Plaintiffs cannot claim that they are being denied all access to their alleged water sources, Plaintiffs instead complain that they are not grazing as many cattle as they would like, in the specific locations that they would like, and at the particular times that they would like. See Pls.' Response to Interr. No. 3 (Def. Ex. G); Pls.' Response to Interr. No. 4 (Def. Ex. G); Pls.' Response to Interr. No. 14 (Def. Ex. G). Such complaints are specious. If Plaintiffs are unhappy with the terms of their grazing permit, Plaintiffs are free, under state law, to sever their alleged water rights from the Allotment and try to move the water to other lands, or Plaintiffs may attempt to sell, lease or transfer those water rights. See Walker, 79 Fed. Cl. at 706.

Notwithstanding these options, it is undisputed that, with one exception, Plaintiffs have not sought permission to move water from within an exclosure to another area on or off the Allotment, with the exception involving the Peñasco exclosure.[8] See Pls.' Response to Interr. No. 14 (Def. Ex. G); Martinez Decl. at ¶ 19 (Def. Ex. A). Setting aside the Peñasco exclosure, which will be discussed in more detail infra at Section III.D, Plaintiffs' claims concerning the alleged taking of all other water rights identified in Appendix A to the Amended Complaint should be dismissed.[9] In sum, the New Mexico Supreme Court has held that water rights under New Mexico law do not include a right to graze on federal land. Accordingly, any claims concerning Plaintiffs' alleged water rights and disaffection with the terms of their grazing permit (i.e., the number of cattle Plaintiffs that are allowed to graze, the location of where the cattle are allowed to graze, or the timing of when cattle are allowed to graze), should be dismissed, and summary judgment should be entered on behalf of the United States.

---

[8] In response to an interrogatory question asking Plaintiffs to list each instance where Plaintiffs sought access to an alleged water right on the Allotment and were denied – other than instances where the access involved placing livestock on public lands – Plaintiffs were only able to identify one water source (out of 143). See Pls.' Response to Interr. No. 4 (Def. Ex. G).

[9] Plaintiffs admit that they have not tried to access their alleged water rights absent their demand to graze cattle on the Allotment, nor requested permission to divert their water from the Allotment (with the exception of one water source). As a result, Plaintiffs' claim that it has been denied access to its water rights is not ripe. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985) (finding that a claim is not ripe until there has been a "final decision regarding the application of the [challenged] regulations to the property at issue" from "the government entity charged with implementing the regulations."); Morris v. United States, 392 F.3d 1372, 1376 (Fed. Cir. 2004) ("This 'finality' requirement is compelled by the nature of the takings inquiry. Evaluating whether the regulations effect a taking requires knowing to a reasonable degree of certainty what limitations the agency will, pursuant to regulations, place on the property.").

D. The United States Has Not Taken Plaintiffs' Alleged Water Rights Within the Peñasco Exclosure

Plaintiffs contend that beginning in 2001, Plaintiffs made a request to the Forest Service to pipe water from the Peñasco exclosure (a designated wetlands area), across a scenic byway, into a neighboring pasture on the Allotment. See Martinez Decl. ¶ 17 (Def. Ex. A). Plaintiffs made this request in order to avoid having to "haul water to the cattle." Pls.' Response to Interr. No. 4 (Def. Ex. G). The District Ranger, Frank Martinez, denied Plaintiffs' request because congregating cattle in the meadow bottom adjacent to a scenic byway would not be consistent with best management practices. See Martinez Decl. ¶ 18 (Def. Ex. A). Mr. Martinez discussed other options with Plaintiffs such as extending a pipeline away from the scenic byway, piping water from an adjacent private land, and placing a trick tank on Atkinson Pasture. Id. Plaintiffs did not pursue any of these options. Id.

Since grazing on federal land has always been at the "sufferance of the United States," (Light v. United States, 220 U.S. 523, 535 (1911); Buford v. Houtz, 133 U.S. 320, 329 (1890)), Plaintiffs could not have had a reasonable expectation that they would have unlimited access to their alleged water rights. Federal lands are retained and managed by the United States pursuant to its powers under the Constitution, primarily the Property Clause, which gives Congress the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The Property Clause gives Congress the power over the federal lands "to control their occupancy and use, to protect them from trespass and injury and to prescribe the conditions upon which others may obtain rights in them. . . ." Utah Power & Light Co. v. United States, 243 U.S. 389, 405 (1917)

(emphasis added).

So, therefore, although Plaintiffs may request permission from the Forest Service to move water from one location on the Allotment to another, Plaintiffs cannot expect to move the water across federal land in any manner they chose. As the Federal Circuit noted in an analogous case, the government did not affect the Appellants' water rights when they "den[ied] permission to use the government's own land to exploit those rights." Washoe County v. United States, 319 F.3d 1320, 1327 (Fed. Cir. 2002), cert. denied, 124 S. Ct. 202 (2003). There, the Circuit noted that there had been no physical taking "[b]ecause the government neither physically diverted or reduced the amount of water accessible by Appellants nor denied all meaningful access to their water rights . . . ." Id. (emphasis added).

Here, the Forest Service has not denied Plaintiffs all meaningful access to the water within the Peñasco exclosure. For example, when weather conditions permit, Plaintiffs are free to graze their cattle (according to the terms of their permit) up to the exclosure where water flows underneath. See Martinez Decl. ¶ 15 (Def. Ex. A). In addition, Plaintiffs could have pursued the options discussed with the District Ranger for accessing water within the exclosure, or could have proposed an alternative route for the pipeline, or could have attempted to sell or lease their alleged water rights to a third party. The mere fact that the Forest Service denied permission to use the government's own land in a particular way does not state a claim for a Fifth Amendment taking. Accordingly, summary judgment should be entered on behalf of the United States.

E. As a Matter of Law, the Use of Water By Endangered Species And/Or Elk, Does Not Make the United States Liable for a Taking of Plaintiffs' Alleged Water Rights

Plaintiffs' claim that their water rights have been taken is also based on Plaintiffs' allegations that endangered species and/or elk may have used some of Plaintiffs' alleged water rights on the Sacramento Allotment. See Amended Compl. ¶ 27(A) (alleging that defendant has taken "plaintiffs' water, as listed in Exhibit "A" to this First Amended Complaint, and forage for defendant's own use, including the watering of elk, protection of endangered and threatened species, and other USFS purposes. . ."); see also Pls.' Response to Interrog. No. 3 ("Actions by Defendant that led up to the taking of Plaintiffs' property began when Defendant allowed the elk herd to consume forage and water belonging to Plaintiffs. . .") (Def. Ex. G). Plaintiffs' claim must fail because courts have consistently held that the United States is not liable for property damage caused by wildlife. See Mountain States Legal Found. v. Hodel, 799 F.2d 1423, 1428-29 (10th Cir. 1986) (en banc) (citing nine state and federal cases).

For example, in Colvin Cattle Co. v. United States, the Federal Circuit denied an almost identical argument that the government's alleged failure to prevent wild horses from using the plaintiff's alleged water rights, finding that "because wild horses are outside the government's control, they cannot constitute an instrumentality of the government capable of giving rise to a taking." 468 F.3d at 809; see also Bradshaw v. United States, 47 Fed. Cl. 549, 554 (2000) (citing Kleppe v. New Mexico, 426 U.S. 529, 535-36 (1976), Alves v. United States, 133 F.3d 1454, 1457-58 (1998), and Mountain States Legal Found., 799 F.2d at 1428-29); Bishop v. United States, 126 F. Supp. 449, 452 (Ct. Cl. 1954), cert. denied., 349 U.S. 955 (1955). Moreover, the

Supreme Court has also noted: "[I]t is pure fantasy to talk of 'owning' wild fish, birds, or animals. Neither the States nor the Federal Government ... has title to these creatures until they are reduced to possession by skillful capture." Douglas v. Seacoast Prods,, Inc., 431 U.S. 265, 284 (1977). Such is not the case here.

Accordingly, summary judgment should be entered in favor of the United States with respect to Plaintiffs' claim that consumption of water by elk or endangered species on the Allotment rises to the level of a Fifth Amendment taking.

F. There Has Been No Taking of Plaintiffs' Ranch

The final claim alleged in Plaintiffs' Amended Complaint is that the government's actions have resulted in a taking of their Ranch, which consists of 80 acres in Otero County, New Mexico, acquired in fee simple in 1997. Amend. Compl. ¶ 9.

In alleging a taking of the Goss Ranch, Plaintiffs do not allege a physical occupation of the Ranch by the government, nor denied them access to the Ranch, nor regulated the use of the Ranch. Instead, Plaintiffs' claim that their Ranch has been taken is derivative of their claims that their water rights on federal lands and appurtenant forage and access rights have been taken. Specifically, Plaintiffs allege that the taking of their "water, forage and grazing land rights deprives the ranch of all economically viable use" and has further deprived them of their reasonable, investment-backed expectations. Amend. Compl. ¶ 33; see also Pls.' Response to Interr. No. 12 (Def. Ex. G). Although the Court previously found that this regulatory takings claim had been plead sufficiently to withstand a motion to dismiss, the Court noted in its decision that the "Plaintiffs face a very heavy burden of proof to establish that the Government's actions

interfered with 'reasonable investment-backed expectations' and rendered the Goss Ranch to have 'no economically viable use.'" Sacramento Grazing Ass'n, 66 Fed. Cl. at 216. Plaintiffs cannot meet that burden.

Several decisions are particularly instructive with respect to Plaintiffs' claim that their Ranch has been taken. To begin with, in United States v. Fuller, 409 U.S. 488 (1973), the government condemned lands that were owned in fee by the Fullers. During the just compensation phase of the case, the Fullers sought compensation for the value accruing to their fee lands as a result of the actual or potential use of those lands in combination with a grazing permit covering public lands. The Supreme Court rejected the Fullers' argument, holding that "the Fifth Amendment does not require the Government to pay for that element of value based on the use of the [Fullers'] fee lands in combination with the Government's permit lands." Id. at 493. The Court noted further that the federal laws governing grazing on public lands

> make clear the congressional intent that no compensable property might be created in the permit lands themselves as a result of the issuance of a permit. Given that intent, it would be unusual, we think, for Congress to have turned around and authorized compensation for the value added to fee lands by their potential use in connection with permit lands.

Id. at 494. Although the Fuller decision involves the measure of just compensation, the principles articulated by the Supreme Court have been applied to regulatory takings claims such as those presented by Plaintiffs.

For example, in Colvin Cattle Co., 468 F.3d at 805-06, the plaintiff claimed a taking of its ranch and ranching operations based on the government's cancellation of its term grazing permit. The Federal Circuit rejected this claim, holding: "That the ranch may have lost value by virtue of

losing the grazing lease is of no moment because such loss in value has not occurred by virtue of governmental restrictions on a constitutionally cognizable property interest." Id. at 808 (citing Fuller, 409 U.S. at 493).

More recently, in Walker v. United States, 79 Fed. Cl. 685 (2008), the plaintiffs alleged a taking of their 40-acre ranch based on cancellation of a term grazing permit and the attendant loss of the right to graze livestock on an allotment and to utilize water rights on the allotment through such grazing. Like Plaintiffs' claim in this case, the Walkers' claim that their ranch had been taken was premised on the assertion that the taking of the water, forage and grazing rights deprived them of all economically viable use of their ranch and deprived them of their reasonable investment-backed expectations. Id. at 707. The court granted the government's motion for summary judgment with respect to this claim, noting that the Walkers' "right to graze cattle [on the allotment] was dependent on compliance with the terms of the permit that Plaintiffs mistakenly decided to ignore[,]" and holding that "the Government has not taken or placed restrictions on Plaintiffs' constitutionally-protected property interests in the Walker Ranch." Id. at 707-08.

Here, as in Colvin Cattle Co. and Walker, the bundle of sticks (or rights) associated with Plaintiffs' fee ownership of the 80-acre Goss Ranch does not include an appurtenant right to graze on the Allotment, nor does it include the right to bring their cattle to water located on the Allotment and to allow their cattle to forage on the way to and from that water. Instead, Plaintiffs may use of the Sacramento Allotment for grazing only by permission of the government. Accordingly, any limitations or restrictions on grazing do not constitute a taking of any private

property rights held by Plaintiffs, even if such restrictions or limitations incidentally impact the use or value of the Goss Ranch.[10]

In sum, because Plaintiffs' claim that its Ranch has been taken is premised on the loss of "rights" which are not constitutionally protected property interests, that takings claim fails as a matter of law. Colvin Cattle, 468 F.3d at 808; Walker, 79 Fed. Cl. at 707. Summary judgment should therefore be entered in favor of Defendant with respect to Plaintiffs' claim that the 80-acre Goss Ranch has been taken.

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its motion for summary judgment as to all of Plaintiffs' remaining claims.

---

[10] Unlike in Colvin Cattle and Walker, here Plaintiffs have not lost their term grazing permit due to permit violations. Plaintiffs can still graze cattle on the Sacramento Allotment in accordance with the terms of the permit.

DATED: April 29, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

/s Kathleen Doster
KATHLEEN DOSTER
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Telephone No.: (202) 305-0481
Facsimile No.: (202) 305-0506
E-mail: kathleen.doster@usdoj.gov

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583
Facsimile No.: (603) 225-1577

OF COUNSEL:

MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586