# Defendant's Exhibit G

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO GRAZING ASSOCIATION, INC., JAMES GOSS, FRANCES GOSS, JUSTIN GOSS AND BRENNA GOSS<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-786 L<br><br>Judge Susan G. Braden |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND PRODUCTION OF DOCUMENTS.

Pursuant to Rule 34, Rules of the United States Court of Federal Claims, Plaintiff Sacramento Grazing Association, Inc., James Goss, Frances Goss, Justin Goss and Brenna Goss,

Grazing Allotment. As to the Goss Ranch, the actions of the Defendant have destroyed the economic value of the ranch so that it is no longer a viable economic entity.

INTERROGATORY 3

For each property right identified in Interrogatory 2, please state whether you are claiming a temporary or permanent taking, the dates(s) on which your property was allegedly taken, the period and duration of the alleged taking, and each and every relevant fact on which your taking claims are based.

RESPONSE TO INTERROGATORY 3:

Plaintiffs object to this Interrogatory on the following grounds: This Interrogatory is vague and compound. In addition, most, if not all of this information and evidence is already in the possession of Defendant. Notwithstanding the forgoing objections and without waiving such objections, Plaintiffs answer as follows:

Whether a permanent taking or a temporary taking of Plaintiffs' vested rights occurred is within the control of Defendant. If Defendant restores the cattle numbers and allows the full use of Plaintiffs' water, forage, access, and range rights, then the taking would be temporary. If the Defendant continues its physical obstruction of water, forage, access, and range rights, and continues to require reduced cattle numbers, then the taking is permanent. Actions by Defendant that led up to the taking of Plaintiffs' property began when Defendant allowed the elk herd to consume forage and water belonging to Plaintiffs in quantities that Defendant has determined require the reduction of cattle numbers, or the curtailment of periods of use for certain pastures. Moreover, Defendant began fencing off Plaintiffs' water sources to protect endangered species

and in 1998 declared that the exclosures were no longer part of the allotment. In 2000, Defendant began reducing the number of cattle that Plaintiffs could graze in the allotment. Over the years, the FS has allowed significant number of elk to graze and water on the Sacramento Grazing Allotment. Starting in 1998, the Defendant began a series of modifications that gradually eroded the Plaintiffs' ability to access and use the range and, as a result, their vested water rights. These modifications resulted in transferring plaintiffs' rights in their water and in their forage to the Defendant, and water and range rights in the Allotment for other public purposes, including but not limited to purported protection of endangered and threatened species, namely the Mexican Spotted Owl, the Sacramento Mountain Thistle, and the Sacramento Mountain Prickly Poppy, among others. Through this history the Defendant has limited the Plaintiffs' access to grazing, not through the quantity of their vested water rights, but solely through the rubric of range management.

As to the Goss Ranch, the Defendant has destroyed the economic value of said ranch by causing the reduction of the number of cattle in 2000 that can be grazed within the allotment to such a level that the ranch is no longer economically viable.

Taking of Plaintiffs' property began on June 1, 2000 when the Plaintiffs were forced to reduce cattle on the summer pastures from 553 head to 428 head. The Plaintiffs were informed prior to the amended 2000 Annual Operating Instructions (AOI) that the reduction in the number of cattle would only be for one season. This reduction was the result of the June 1, 2000 amended 2000 Annual Operating Plan for the Sacramento Allotment. This taking affected the following water rights on the summer range and associated rights described in Interrogatory 2:

Penasco Head Waters, Charles Spring, Benson Ridge Spring, Spring #1, Water Canyon Spring, Bluff Springs West, Bird Spring #2, West 25 Spring, West Mauldin, Bluff Springs, Spring 21 of 11, Delworth Spring, Section 9 Spring, Sacramento Head Waters, Spring #3, Atkinson Spring, Spring #14, Masterson Spring, Barrell Springs, Sand Springs, Birds Springs, South East 25 Springs, 3 Hubble Springs, Mauldin Springs, Lower Spring #22, Dark Springs #2, Round House Springs, #33 Spring, Karr Spring, West Line Spring, East Spring #21, Spring # 22, West Spring of 21, Benson Spring #2, Bluff North Spring, Taylor Springs, East Spring 24, Dark Springs, Two Little Springs, Trick Tank, Little Spring, Pig Canyon Spring Tank, Sacramento Lake, Wallow St Tk, Russia St Tk, Kerr St Tk, Fir St Tk, Bird St Tk, Brown Stock Tank, Wills Stock Tank, Moore Stock Tank, Seed Stock Tank, Stalk Stock Tank, Hay Stock Tank, McAffee Pipeline, Benson Spring, Dark Canyon Spring, Seep Spring, Luca Spring, Lucas Dark Ben, Dirty Drawers, Moore Upper, and Sacramento River.

On August 2, 2000 the USFS demanded the removal of an additional 98 cattle, reducing the maximum allowable cattle to 330. The additional cattle were eventually removed on or before September 25, 2000, resulting in a further taking of the above described rights on the summer pasture.

The Plaintiffs were unable to economically operate their ranch with the further reduction of their herd. As a result, on September 8, 2000 the Forest Service suspended 40% of the term permit numbers for two years allowing only 330 head on the entire Sacramento Allotment through the 2002 summer grazing season. This supposedly temporary suspension affected not only the summer pasture, but was also imposed on the winter pasture. This had the effect of not

only taking the vested water rights and appurtenant rights associated with the water rights listed in the summer pasture above, but also resulted in the taking of the water rights in the winter pasture as follows: Scott Able River, Caballero Spring #2, Upper Alamo #1, Mud Springs, Dog Canyon Spring, Karr Canyon Spring, Potato Knob #1, Caballero Spring #3, San Andreas Springs, Wood Spring #1, Wood Springs #2, Frasure Spring, Pine Springs, Pine Springs Sid West, Dry Canyon Rucker Springs #1, Caballero Spring #1, Little Cherry Springs, Mineral Springs, Merrill Springs, Dry Canyon Spring #2, Wright Springs, Goat Ranch Springs, Arcente Canyon Spring, Potato Knob Spring #2, Rock House, Dirt Tank #20, Marble Canyon Tank, Dark Horse Tank, #13 Spring, Moore Tank, Dripping Springs, Spring #2, All Springs, Kingsbury Spring, Ward Squatters Rights, Upper Juniper Reservoir, Lower Juniper Reservoir, Burleson Stock Tank, Burnt Ridge St T, Turkey Roost St T, L.S. St Tk #1, L.S. St Tk #2, Gobler St Tk, Jakes St Tk, End Ridge St Tk, Bug St Tk, Pasture Ridge Pipeline, McGregor Pipeline, Moore Ridge Pipeline, NE Pipeline, Moore Spring Devel, Wright Spring Devel, Wright Spg Water, Grapevine Storage, Reservoir Drinker, Moore Storage, Cab Dry Water, Chalk Hill Water, Cab Alamo Water, Roundup Water, Alamo Water, Durleson, Lead, Holder, Culp, Cabin Water, Woods Water, Ridge Water, Culp Drinker.

Even though the 40% suspension was only to last until the 2002 summer grazing season, Plaintiffs have never been allowed by the Defendant to graze more then 330 cattle since the September 8, 2000 suspension, thus making the takings claim permanent.

Takings have occurred on an annual basis since 2000, as the Plaintiffs continually applied for their full permit numbers of 553 head only to have the number drastically reduced. In

addition, Plaintiffs were required by Defendant to leave their pastures early resulting in a taking of their vested property rights described above. For the 2000-2001 season, while under the 40% suspension, there was a further reduction of 330 head to 250 head in the number of cattle in the winter range (see Forest Service letter dated October 18, 2000). The 2001 AOI dated February 6, 2001 allowed only 250 head on the Sacramento Allotment between 03/01 and 05/01, and 330 head the remainder of the year. Additionally, on February 18, 2001, the Plaintiffs were ordered to move cattle out of the north pasture by September 24, 2001.

The 2002 AOI again only allowed 330 head of cattle on the Sacramento Allotment. Then on October 18, 2002, the date that the 40% suspension was supposed to expire, the Plaintiffs were notified that the number of cattle would remain at 330 head.

In 2003 despite the Plaintiffs' application requesting the permitted amount of 553 head of cattle, the 2003 AOI allowed only 330 head on the Sacramento Allotment. Then, on April 21, 2003, the USFS ordered the removal of cattle off the Alamo Pasture. Further, on August 15, 2003 the USFS ordered the removal of all cattle from the summer range by September 8, 2003. This order was amended to require the removal of 150 head by September 12, 2003 and remaining 180 head by September 26, 2003. These dates are still prior to the permitted time to move cattle off the summer pasture and resulted in a taking of property. Finally, a reduction to 230 head was ordered for the 2003-2004 winter season (see Forest Service letter dated October 28, 2003).

The Annual Operating Instructions for 2004, dated April 23, 2004, reduced the number of cattle in both the summer and the winter, allowing for only 30 head in the Dry Allotment from

03/01 to 05/15, 230 head in the Sacramento Allotment from 03/01 to 05/15, 275 head in the Sacramento Allotment from 05/16 to 10/31, and 275 head in the Sacramento Allotment from 11/01 to 02/28. Again, the AOI was amended to further reduce the number of cattle on the Sacramento Allotment winter pasture to 230 head on October 13, 2004. The AOI for Grazing Year 2005 providing 230 head on Sacramento Allotment from 03/01 to 05/15, and 330 head the remainder of the year.

Finally, this long procession of takings was formalized when, on January 17, 2005, the Defendant unilaterally modified the Plaintiffs' grazing permit. This modification evidences the following reduction in the number of cattle from the 553 originally permitted: 200-412 cattle on the summer range, 200-335 cattle on the winter range from 11/01-05/14, up to 75 cattle on the Dry Canyon from 11/01 - 02/28, and up to 75 cattle on the Dry Canyon from 03/01 - 05/14.

Since 05/05/98 there has been a taking of water rights, grazing access, and rights-of-way due to exclosures on the Sacramento Grazing Allotment, including the following water sources: Penasco Head Waters, Bluff Springs, 3 Hubble Springs, Mauldin Springs, Bluff North Springs, Kingsbury Springs, and Sacramento Lake. Moreover, Defendant has prevented use of the Davis Allotment, and, until recently, the Dry Canyon Allotment every year from 1998 to 2005.

INTERROGATORY 4

Please describe in detail each instance where plaintiffs have requested access to water sources on the Sacramento Allotment, to which plaintiffs believe they have a water right, and have been denied, other than instances where the access involved placing livestock on public lands in violation of plaintiffs' term grazing permit. In your answer, please identify the water

source, whether the request was oral or written, the person who made the request, the person who received the request, the date of the denial, and the circumstances surrounding the request.

RESPONSE TO INTERROGATORY 4:

Plaintiffs object to this Interrogatory on the following grounds: This Interrogatory is vague and unduly burdensome. In addition, most, if not all of this information and evidence is already in the possession of Defendant. Moreover, Plaintiffs have no grazing operations on "public lands." Finally, the interrogatory has multiple parts. Notwithstanding the forgoing objections and without waiving such objections, Plaintiffs answer as follows:

Defendant is in possession of correspondence between Plaintiff and Defendant requesting access to pasturage in the LNF and associated water rights beginning in 1998 and continuing until the present. Additionally, these documents were disclosed as part of the Rule 26(a)(1) Initial Disclosure of Plaintiffs'. Specifically, beginning in 1998 Plaintiffs made annual requests in writing to use the Penasco head waters and were denied by Max Goodwin, Rick Newman and Frank Martinez. On September 13, 2001 Frank Martinez orally denied Plaintiffs' request to pipe water at the Penasco headwaters.

On October 12, 2000, Plaintiff requested the use of the Penasco Trap and were denied on October 25, 2000. In a letter dated October 16, 2000, Assistant Regional Attorney, Mary Ann Joca, informed the Plaintiffs that the Upper Penasco enclosure is no longer available for use by cattle. On June 20, 2002 in a telephone conversation with Frank Martinez, Plaintiffs explained they owned the water in the Rio Penasco enclosure and there needed to be provisions made to get the water out.

In 2001, Plaintiffs requested to pipe water at their expense out of the enclosure Penasco through a culvert that would prevent the Plaintiffs from having to haul water to the cattle. On September 13, 2001 Frank Martinez orally denied Plaintiffs' request to pipe water at the Penasco headwaters.

In addition, as described in interrogatory 3, the Plaintiff have repeatedly requested that the number of cattle allowed on the Allotment be returned to the full permitted number of 553. However, as described above, beginning in 2000, the Defendant has continually reduced the number of cattle, and as of January 17, 2005 modified the Plaintiffs' grazing permit to lower the number of cattle. This reduction in cattle below the permitted numbers amounts to a denial of access to Plaintiffs water rights, forage rights, range rights, and access rights.

INTERROGATORY 5

Please describe all methods employed by plaintiffs, other than placing livestock on public lands in compliance with their term grazing permit, to access water sources to which plaintiffs believe they have a claim of water right.

RESPONSE TO INTERROGATORY 5:

Plaintiffs' water rights are exclusively for stockwatering under New Mexico law. Plaintiffs may only place their water rights to beneficial use for the watering of livestock.

INTERROGATORY 6

Please describe the entire factual basis for your statement in paragraph 10 of the Amended Compliant that "[a]t the time which plaintiffs acquired the Ranch, it also acquired rights to water in New Mexico, which rights are appurtenant to said ranch." Please include in

and the value of access rights, not including any water rights. The value of the access rights is based upon both the income approach and the sales comparison approach. The value of cattle is based upon comparable sales. The methods and precise calculations will be disclosed when expert disclosures are made.

INTERROGATORY 12

Please describe in detail the entire factual basis for your statements in paragraph 24(C) that actions by defendant have "aquire[ed] and detroy[ed] the value of the Ranch."

RESPONSE TO INTERROGATORY 12:

Defendant suspended use of Plaintiffs' Allotment, resulting in a reduction from 553 head of cattle to 230 head of cattle. Defendant transferred Plaintiffs' rights in their water, as listed in Exhibit "A" to this First Amended Complaint, as well as forage rights, for the protection of endangered species and for non-indigenous elk. This transfer includes their use of water, forage, and range rights in the Allotment for other public purposes, including but not limited to purported protection of endangered and threatened species, namely the Mexican Spotted Owl, the Sacramento Mountain Thistle, and the Sacramento Mountain Prickly Poppy, among others. Defendant has also allowed non-indigenous elk to consume water and forage owned by Plaintiffs. Management practices of the USFS with regard to the Allotment did cause the inability of Plaintiffs' cattle to reach the water and forage to which Plaintiffs are entitled. Further, the USFS has artificially reduced the capacity of the Ranch and allotment.

All of these actions have destroyed the economic viability of the Goss Ranch.

See response to Interrogatory No. 2 and 3 above.

INTERROGATORY 13

Please describe in detail the entire factual basis for your statements in paragraph 24(I) that actions by defendant have "destroy[ed] plaintiffs' reasonable, investment-backed expectations."

RESPONSE TO INTERROGATORY 13:

To maintain economic viability of the Ranch Plaintiffs must be able to plan for the number of seasonal employees they must hire, the times at which such employees will be needed, capital expenditures, consumables expenditures, needs for leasing additional pasturage, acquisitions of stock, and other expenses with a reasonable degree of certainty. Any contracts, licenses, permits, or other agreements entered into between Plaintiffs and Defendant or between plaintiffs and any other parties which contemplate movement of cattle on to and off the Allotment, other cattle control measures, and repair, maintenance, or installation of facilities and improvements, must, therefore, be sufficiently definite to permit such planning in accordance with normal industry practices and professional standards.

Defendant is aware of the needs of Plaintiffs for reasonable certainty and predictability in managing its cattle operations. Actions by Defendant which are intended to or otherwise do interfere with or otherwise make it difficult or impossible to carry out such normal planning and implementation defeat the purpose of said agreements, contracts, permits or other commitments. Management practices of the USFS with regard to the Allotment did cause the inability of Plaintiffs' cattle to reach the water and forage to which Plaintiffs are entitled, forcing Plaintiffs to

remove their cattle from said allotment much earlier than they would otherwise have been required to do. Defendant has also caused a reduction in the number of cattle that can be grazed, thus forcing Plaintiffs to sell some cattle at a loss, and to lease other pasture areas at considerable expense. Plaintiffs purchased the ranch and their interest in the SGA with the expectation that the Defendant would allow Plaintiffs full access to their water rights, forage, range rights, access rights, and improvements.

See response to Interrogatory No. 2, 3, and 12 above.

INTERROGATORY 14

Please describe in detail the entire factual basis for your statements in paragraph 24(Q) that "Defendant has prevented plaintiff from using certain water sources, as listed in Exhibit "A" to this First Amended Complaint, and from making lawful improvements necessary to transport water from a lawful point of diversion to a lawful point of use," including:

(a) For each water source, please describe the specific action allegedly taken by Defendant, the date the action occurred, and any witnesses to the alleged action.

(b) For each lawful improvement necessary to transport water that defendant allegedly prevented plaintiffs from making, please describe the lawful improvement, whether plaintiffs made an oral or written request to build the improvement, the date the oral or written request was made by plaintiffs, whether plaintiffs filed an application for a permit to build the improvement, and the action allegedly taken by defendant in response to the oral or written request.

RESPONSE TO INTERROGATORY 14 :

Plaintiffs object to this Interrogatory on the following grounds: This Interrogatory is vague, unduly burdensome and contains subparts. In addition, most, if not all of this information and evidence is already in the possession of Defendant. Notwithstanding the forgoing objections and without waiving such objections, Plaintiffs answer as follows:

(a) The Plaintiffs have been prevented by Defendant from using the following water sources: East Spring, Lower Spring, North Davis, West Spring, Middle Spring, Fleming Spring, Penasco Stream, Davis Spring, Round House Spring, Karr Spring, Dry Canyon Rucker Springs #1, Mineral Springs, Pig Canyon Spring Tank, Rock House, Dirt Tank #20, Marble Canyon Tank, Dark Horse Tank, and Burleson Stock Tank.

The following water sources have been fenced by Defendant, preventing their use by Plaintiffs and have been excluded from the Allotment: Penasco Head Waters, Bluff Springs, 3 Hubble Springs, Mauldin Springs, Bluff North Springs, Kingsbury Springs, and Sacramento Lake.

The remainder of the water sources listed in Exhibit "A" to the First Amended Complaint have been interfered with by Defendant since June 2000 by not allowing Plaintiff to fully stock the range and artificially reducing the number of cattle to 330 head and lower. On May 8, 2000, the FS amended the 2000 AOP for the Allotment to reduce livestock numbers from the previous 553 cattle to 428. Then on August 2, 2000 the FS ordered an additional reduction of 98 cattle. Plaintiffs' term permit was partially suspended on September 8, 2000 for two years, reducing the number of cattle that could graze by 40%. On October 28, 2003 cattle numbers were reduced

from 330 to 230 head. Plaintiffs ten year grazing permit was unilaterally modified by Defendant in January 2006 to permanently reflect lowered numbers of between 200 to 412 in the Summer Range and 200 to 335 in the Winter Range, with an additional 75 head in the Dry Allotment.

Taking of Plaintiffs' vested rights has been effected by allowing the non-indigenous herd of elk to consume Plaintiffs water and forage to the point where, according to the Defendant, there is insufficient forage to support cattle activity. At times this occurs before any cattle have entered the allotment. There has been a gradual erosion of the Plaintiffs ability to access and use the range and, as a result, their vested water rights, culminating in the exclosure of water sources, purportedly to protect endangered and threatened species, and the drastic reduction in the authorized number of cattle.

(b) Plaintiffs object to this Interrogatory on the following grounds: Most, if not all of this information and evidence is already in the possession of Defendant and the interrogatory is in subparts. Notwithstanding the forgoing objections and without waiving such objections, Plaintiffs answer as follows:

On September 13, 2001 Frank Martinez orally denied Plaintiffs' request to pipe water at the Penasco headwaters. See Answers to Interrogatories 2, 3, 4, 12, and 13.

INTERROGATORY 15

Have plaintiffs' attempted to sell the Goss Ranch or any alleged appurtenant water rights at any time from 1989 to the present? If so, please describe in detail whether an appraisal was