**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| Sacramento Grazing Association, Inc., et al.,<br>Plaintiff,<br>v.<br>United States,<br>Defendants. | No. 04-786<br>Judge Susan G. Braden |

**PLAINTIFFS OPPOSITION TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(2) of the rules of the Court of Federal Claims, plaintiff Sacramento Grazing Association, Inc. ("SGA") submits it's Opposition To Defendant's Proposed Findings Of Uncontroverted Fact In Support Of Motion For Summary Judgment.

**A. PLAINTIFFS' TERM GRAZING PERMIT**

1. On November 27, 1989, the Forest Service issued a term grazing permit to the Sacramento Grazing Association ("SGA") that allowed them to graze up to 553 livestock for a period of ten years, subject to the terms and conditions of the permit and all applicable laws and regulations. *See* **Def. Ex. A; Def. Ex. B**

SGA's Response

SGA disagrees with the above finding. Grazing permit number 08-1105 dated November 27, 1989 allowed grazing of 553 head of cattle, not "up to 553 livestock" as suggested by Defendant. It contained no mention of exclosures designed to exclude cattle from riparian or sensitive habitat. *See* **Def. Ex. B.**

2. Plaintiffs' term grazing permit was renewed on November 23, 1999, and authorized Plaintiffs to graze up to 553 cattle for a period of ten years, subject to the terms and conditions of the permit and all applicable laws and regulations. *See* **Def. Ex. A; Def. Ex. C.**

SGA's Response

SGA partially agrees with the above finding. However, permit 08-1105 for the first time addresses the exclosures in the USFS management practices for the allotment and the prevention of livestock use of the exclosures and excludes them for the allotments. *See* **Def. Ex. C.**

3. On July 28, 2004, the Forest Service issued a Record of Decision for the Final Environmental Impact Statement for the Sacramento, Dry Canyon and Davis Grazing Allotments. *See* **Def. Ex. A.**

SGA's Response

SGA partially agrees with the above finding. However, USFS offers no description of the document. The Final Environmental Impact Statement for Sacramento, Dry Canyon and Davis Grazing Allotments ("FEIS") was issued in July 2004 and adopted the determinations of the USFWS in the Biological Opinion. **Van Zandt Decl ¶ 5, Exhibit A.** The Record of Decision ("ROD") for the FEIS for the allotment was issued by the USFS on July 28, 2004. **Van Zandt Decl ¶ 6, Exhibit D.** The Record of Decision for the FEIS determined that reduced stocking levels on the allotments was necessary in order to protect endangered species, determined that livestock must be removed from Alamo Pasture before February 1 of each year, continued exclusion of livestock from the exclosure areas, and added several new exclosure areas. **Van Zandt Decl ¶ 6, Exhibit D, pp. 5-7.** For the three species of concern, the Mexican Spotted Owl, Sacramento Mountains thistle and Sacramento Mountains prickly poppy, the Biological Opinion determined that the proposed action to graze by SGA "is not likely to jeopardize the continued existence of the [species]," based on full implementation of the project as described in the Description of Proposed Action. **Van Zandt Decl ¶ 5, Exhibit C, pp. 65-67.** The no jeopardy opinion in the Biological Opinion for the three species is based on a finding that there will be reduced stocking levels for livestock; for the poppy, the Alamo Pasture will closed to

livestock by February 1 of each year; and for the thistle: "[t]he continued construction of exclosures will protect isolated occurrences of the thistle. Contiued maintenance of existing exclosures will continue to protect some thistle occurrences from livestock impacts." **Van Zandt Decl ¶ 5, Exhibit C, pp. 66-67.**

4. In 2005, Plaintiffs were offered a new term grazing permit in order to make it consistent with the Record of Decision. *See* **Def. Ex. A.**

SGA's Response

SGA disagrees with the above finding. SGA was not "offered" a new term grazing permit. Rather, SGA was instructed to sign the new permit or modify the existing permit. *See* **Goss Decl. ¶ 23; Exhibit 31 (Letter of June 10, 2005 to Jimmy Goss from Harv Forsgren); *see also* Goss Decl. ¶ 65, Exhibit 33.**

5. On or about January 9, 2006, Plaintiffs declined a new ten-year term grazing permit, and the Forest Service subsequently modified Plaintiffs' existing permit so that, among other things, Plaintiffs could graze up to 412 cattle on the summer range and 334 cattle on the winter range. **Def. Ex. A; Def. Ex. D.**

SGA's Response

SGA disagrees with the above finding, and believes it is misleading. SGA did not sign a new ten-year term grazing permit because it had an existing permit that does not expire until 2009. *See* **Goss Decl. ¶ 23.** Frank Martinez modified the permit and reduced the allowed head of cattle from 553 year long to 200 - 412 in the summer and to 200 - 335 in the winter. **Goss Decl. ¶ 65, Exhibit 33.** The reason for the reduction is the Record of Decision ("ROD") that selected Alternative B in the Final Environmental Impact Statement ("FEIS") for the Allotments. *Id*; *see also* **Van Zandt Decl. ¶ 6, Exhibit D, p. 5**. Alternative B was implemented in part to improve riparian conditions, improve watershed conditions, improve stream bank stability and water quality, and to maintain the viability of listed and rare plants and animals. *Id.*

Implementation of the protection of endangered species and their riparian habitat includes the following:

- The reduction in the amount of head allowed on the allotment.
- The prevention of all livestock from all exclosures.
- The exclusion of livestock from drainage above Sacramento Lake.
- The installation of an enclosure at Penasco trap to protect the Sacramento Mountain thistle.
- The installation at Wills Canyon to protect Sacramento Mountain thistle.
- The installation of new fence on the Upper Penasco exclosure to prevent incidental use during cattle trailing.
- The removal of livestock from the Alamo Pasture by February 1 for two years to protect the Sacramento Mountains prickly poppy.

*Id.*

6. Adjustments to the number of cattle and period of use of the grazing allotment are decided on an annual basis by the District Ranger after full discussions with the permittee and are described in detail in the Annual Operating Plan, now known as the Annual Operating Instructions ("AOI"). *See* **Def. Ex. A; Def. Ex. E**.

<u>SGA's Response</u>

SGA disagrees with the above finding. The Recovery Plan for the endangered species, the Biological Opinion, and the Record of Decision have limited the number of cattle allowed on the allotments to protect endangered species.

The exclosures on the allotment were constructed to exclude cattle for the protection of the Sacramento Mountain thistle, which requires all the water in the riparian habitat. *See* **Goss Decl. ¶ 35, Ex. 3 (Final Rule Listing *Cirsium*, 52 FR 22935, June 16, 1987)("This plant is dependent on springs or streams. Reduction or removal of this water supply would**

**reduce or eliminate the populations.").** The Biological Opinion states that there is a "direct relationship between water availability in suitable habitat and numbers and extent of plants in occurrences." *See* **Van Zandt Decl. ¶ 5, Exhibit C, p. 63 (February 4, 2004 Biological Opinion).** The United States Fish and Wildlife Recovery Plan for the Sacramento Mountains thistle, lists as an important recovery objective the acquisition of water rights in areas were the Sacramento Mountains thistle is found. *See* **Van Zandt Decl. ¶ 4, Exhibit B, pp. 9, 10, 11, 17, 22, 23 (Recovery Plan).** This caused a conflict between SGA's vested right to utilize the water for raising livestock and the requirement to protect the Sacramento Mountains thistle, reducing the head of cattle allowed on the allotment. *See* **Goss Decl. ¶ 62 Exhibit 30 (February 11, 1983 letter from James R. Abbott, Forest Supervisor to USFWS) (indicating the conflict with grazing is that "[l]ivestock and wildlife roam at will and utilize habitat for watering.").** The ROD also specifically requires the removal of "livestock from the Alamo Pasture by February 1 for two years to protect Sacramento Mountains prickly poppy." **Van Zandt Decl. ¶ 6, Exhibit D, p. 5**.

7. For the 2008 grazing season, the AOI authorizes Plaintiffs to graze up to 370 cattle year-round on the Allotment. *See* **Def. Ex. A; Def. Ex. E.**

<u>SGA's Response</u>

SGA agrees with the above finding. However, as with all AOI's, it is subject to a discretionary modification in the number of cattle by the USFS. *See* **Def. Ex. A; Def. Ex. C** (Permit No. 08-1250 p. 3, ("The number, kind, and class of livestock, period of use, and grazing allotment specified in the permit may be modified when determined by the Forest Officer in charge to be needed for resource protection.")); **Def. Ex. E**.

8. Plaintiffs' permit has never been cancelled. *See* **Def. Ex. A.**

<u>SGA's Response</u>

SGA agrees with the above finding. However, from the original 553 cattle allowed on the allotment, SGA has never been allowed more then 370 head since 2000, and the number has

been as low as 230 in 2003 and 2004-2005 for the reasons discussed above. *See* **Goss Decl. ¶ 9.**

**B. EXCLOSURES**

9. Plaintiffs' permit contains a provision for the protection of wetlands and endangered or threatened species located on the Allotment. The permit states: "Exclosures designated on the attached Sacramento Allotment Range Improvement /Allotment Map are considered special emphasis areas and not part of the Sacramento Allotment. Livestock use is not permitted within exclosures and will be removed in a timely manner." **Def. Ex. C; Def. Ex. A.**

SGA's Response

SGA disagrees with this finding. This provision does not acknowledge SGA's vested water rights inside the exclosures and cannot be read to deny Plaintiffs right to use and access their vested water rights. SGA has vested water rights provided by the Mining Act of 1866 (*See* Act of July 26, 1866, ch. 262, § 9, 14 Stat. 251, 253 (codified at R.S. § 2339, recodified at 43 U.S.C. § 661)) at water source within each exclosures. SGA has repeatedly requested access to the water in the fenced exclosures, each was denied by the USFS. *See* **Goss Decl. ¶¶ 14, 17, 19, 20, 21, 25, 27, 29, 47-51; Exhibits 15-19.** SGA made clear there was no intent to allow the cattle to graze the exclosures but USFS still denied every request. *See* **Goss Decl. ¶ 19, 47-50; Exhibits 15-18.** SGA has had many discussion with Defendant about transferring water out of the Penasco exclosure, and specifically requested such a transfer on or about October 12, 2000 (**Goss Decl ¶17**), September 13, 2001 (*See* **Goss Decl. ¶ 18, 51; Exhibit 19),** June 16, 2006 (*See* **Goss Decl. ¶ 25, 52; Exhibit 20)**, and on February 19, 2007 (*See* **Goss Decl. ¶ 29, 53; Exhibit 2**).

10. Although Plaintiffs are prohibited from grazing cattle within the exclosures, Plaintiffs may access water located within these exclosures through means other than grazing. For example, water may flow out of the exclosures naturally, or in the case of Sacramento Lake, may be accessed through a tap (faucet head) on a pipeline. *See* **Def. Ex. A.**

SGA's Response

SGA disagrees with the above finding. Plaintiffs have been denied in every year requests to access water located within these exclosures through means other than grazing. (See response above) Further, the flow out of the exclosures is dependent on the weather and not a consistent and dependable source of water. **Goss Decl. ¶ 31.** For the Penasco exclosure, the water is completely inaccessible to SGA and SGA has repeatedly requested permission to move this water. October 12, 2000 (**Goss Decl ¶17**), September 13, 2001 (**Goss Decl. ¶ 18, 51; Exhibit 19),** June 16, 2006 (**Goss Decl. ¶ 25, 52; Exhibit 20)**, and on February 19, 2007 (**Goss Decl. ¶ 29, 53; Exhibit 2**). SGA does periodically use the tap on the pipeline at the Sacramento Lake to fill a water trough about a mile below Sacramento exclosure. However, that trough is on private property and filled from the Sacramento Lake within the exclosure. Further, Sacramento Lake is a jointly owned water sources shared with six other users on the pipeline. The water that flows out of the Sacramento Lake exclosure is not reliable because there is frequently inadequate water pressure for SGA to utilize its water trough for watering cattle. **Goss Decl. ¶ 32.** SGA has requested access to the exclosures for use of the water only and not for grazing and has been denied by the USFS. **Goss Decl. ¶ 19.**

11. There are seven main exclosures (fences) located within the Sacramento Allotment. These include: Sacramento Lake, Hubbell, Upper Mauldin, Lower Mauldin, Upper Peñasco , Bluff Springs, and Western Riparian (otherwise known as Kingsbury Springs). *See* **Def. Ex. A.**

SGA's Response

SGA partially agrees with the above finding. However, the statement fails to acknowledge SGA's vested water rights in these exclosures. **Goss Decl. ¶ 10.**

12. Beginning in or around 2001, Plaintiffs requested permission from the Forest Service to pipe water out of the Peñasco exclosure (a designated wetlands area), across a scenic byway, into a neighboring pasture on the Allotment. See **Def. Ex. A.**

SGA's Response

SGA disagrees with the above finding, and believes it needs clarification. SGA has had many discussion with Defendant about transferring water out of the Penasco exclosure (see discusion above), and specifically requested such a transfer on or about October 12, 2000 (*See* **Goss Decl. ¶17**), September 13, 2001 (*see* **Goss Decl. ¶ 18, 51; Exhibit 19**), June 16, 2006 (***See* Goss Decl. ¶ 25, 52; Exhibit 20)**, and on February 19, 2007 (*See* **Goss Decl. ¶ 29, 53**; **Exhibit 21**). Moreover, the statement fails to acknowledge that the USFS would not be able to allow movement of the water from the exclosure due to the restrictions in the Biological Opinion for the Sacramento Mountains thistle. **Van Zandt Decl ¶ 5, Exhibit C, p. 35.**

13. The District Ranger, Frank Martinez, denied Plaintiffs' request because congregating cattle in the meadow bottom adjacent to a scenic byway would not be consistent with best management practices. *See* **Def. Ex. A.**

SGA's Response

SGA disagrees with the above finding. Mr. Martinez denied the request to transfer water out of the Penasco exclosure; however, SGA disagrees that the scenic byway is the actual basis for such denial. SGA believes the denial is based on the United States Fish and Wildlife requirement that all water remain in the exclosure for the protection if endangered species. *See* **Goss Decl. ¶ 35, Exhibit 3 (**Final Rule Listing *Cirsium*, 52 FR 22935, June 16, 1987)("This plant is dependent on springs or streams. Reduction or removal of this water supply would reduce or eliminate the populations."); **Van Zandt Decl ¶ 5, Exhibit C, p. 35.**. The United States Fish and Wildlife Recovery Plan for the Sacramento Mountain thistle, lists as an important recovery objective the acquisition of water rights in areas were the Sacramento Mountain thistle is found. *See* **Van Zandt Decl. ¶ 4 Exhibit B, pp. 9, 10, 11, 17, 22 and 23** (Recovery Plan). The Biological Opinion recognizes the existence of the current exclosures within the SGA's grazing allotments, including Sacramento lake, Hubbell, Upper Mauldin, Lower

Mauldin, Western Riparian, Upper Penasco, and Bluff Springs, as part of the proposed action that must be continued to allow a no jeopardy opinion from the USFWS. **Van Zandt Decl ¶ 5, Exhibit C, p. 11.**

Further, Under the National Scenic Byways Program (23 U.S.C. § 162) roads are designated that have outstanding scenic, historic, cultural, natural, recreational, and archaeological qualities. Cattle ranching has been part of the history and culture of the Sacramento Mountains since the 1880's, long before the establishment of the Lincoln National Forest or the introduction of non-native elk. *See* **Goss Dec. ¶¶ 4 and 5.** It not clear how the appearance of cattle would conflict with a scenic byway designation.

14. The Forest Service discussed other options with Plaintiffs such as extending a pipeline away from the scenic byway, piping water to another pasture owned by a private landowner, and installing a trick tank in Atkinson Pasture. Plaintiffs did not pursue any of these options. *See* **Def. Ex. A.**

<u>SGA's Response</u>

SGA disagrees with the above finding. The discussion of these supposed "options" is merely a ruse by the USFS who has no intention, and indeed cannot, transfer water out of the exclosures under any circumstances due to protections offered by the Endangered Species Act (see discusion above). **Van Zandt Decl ¶ 5, Exhibit C, p. 35.** Further, these "options," which were not discussed until 2006 are unreasonable and would negatively impact SGA's operation. *See* **Goss Decl ¶ 28.** The first option was to extend the pipeline away from the scenic byway. The would require the use of a pump to get the water uphill, whereas SGA's request would allow water to flow by gravity. There is no electricity on Forest Service land. The use of a pump would require an electrical generator, a constant supply of fuel, maintenance, and continual observation to ensure continued operation and to ensure that it does cause a fire hazard. Further, the maintenance and operation of the generator and pump would be a considerable expense to SGA's operation. *Id.* The second option, to pipe water from adjacent private land is

unreasonable because SGA does not own the water right on the adjacent privately owned land. The third option was to install a trick tank in Atkinson pasture. *Id.* This option does not provide a reliable source of water. A trick tank depends on rainfall as a water source and would not be a reliable or permanent source of water. *Id.*

15. With the exception of the Peñasco exclosure, Plaintiffs have not sought permission from the Forest Service to move water from within an exclosure to another area on or off the Allotment. *See* **Def. Ex. A.**

SGA's Response

SGA disagrees with this statement. SGA has asked repeatedly for accommodations to access water in the Sacramento Lake exclosure. On June 16, 2006, SGA met at the Sacramento Enclosure with Frank Martinez, Lou Woltering, Forest Supervisor, Mr. Doug Moore and Mr. Mike Nivison, County Commissioners , and Dr. Redd Baker and Dr. John Fowler of the Range Improvement Task Force ("RITF"), as well as neighboring allotment owners. *See* **Goss Decl. ¶ 27.** There was agreement among all parties, including Frank Martinez, to move the west fence of the Sacramento exclosure back a few hundred feet to allow access for cattle. **Goss Decl. ¶ 27, 52; Exhibit 20.** The fence was to be constructed the following week. However, Mr. Martinez inexplicably contacted the Forest Guardian, an environmental group that had filed a 60 day citizen suit notice against the USFS. Mr. Martinez then changed his mind, not allowing the movement of the fence, and thus continuing to deny access to the water. **Goss Decl. ¶ 54, Exhibit 22.**

As discussed above SGA has been denied in every year requests to access water located within these exclosures through means other than grazing. What becomes clear is that at the time SGA could not under any reasonable circumstance gain access to the water within any of the exclosures and repeated requests would have been futile. **Van Zandt Decl. ¶ 5, Exhibit C, p. 35.** *See Estate of Hage v. United States*, 82 Fed. Cl. at 212-213 (where the court

determined that based on the history between the Forest Service and Plaintiffs, application for a special use permit would clearly have been futile.)

Moreover, the USFS cannot allow the transfer of any water from within the exclosures because the water is necessary to protect the thistle, The Biological Opinion states that the thistle has a recovery priority of 2 out of 18, with 1 being the highest priority and restates the Recovery Criteria in the Recovery plan as follows "1) acquire water rights for the purpose of maintaining travertine habitats and protecting at least 30 percent of the occupied spring localities, including a least one occupied spring in each of the 20 occupied main canyon systems, 2) ensure permanent protection for the thistle in at least 75 percent of the known occupied habitat, both spring and riparian sites, under established management plans, and 3) establish a 10-year monitoring and research program to demonstrate effectiveness of management plans." **Van Zandt Decl. ¶ 5, Exhibit C, p. 27.** The same rationale applies to the poppy and the restrictions on the use of Alamo Pasture. **Van Zandt Decl. ¶ 5, Exhibit C, p. 35.** With the restriction placed of on utilization of the water under the Endangered Species Act it would be futile to continue to ask to for access to the water or for permission to transfer water out of any exclosure.

Dated: August 14, 2008

By: ______________________

Michael J. Van Zandt
HANSON BRIDGETT
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 995-3566

Attorneys for Plaintiff
Sacramento Grazing Association

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of August, 2008, a true and accurate copy of the PLAINTIFFS OPPOSITION TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was served upon counsel by first-class mail, by placing the same in the United States mail, postage prepaid, addressed to:

Kathleen Lennon Doster
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, DC 20044-663
Tel: (202) 305-0481
Fax: (202) 305-0506
Kathleen.doster@usdoj.gov

Keith Kiley