# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Sacramento Grazing Association, Inc., et al.,<br><br>Plaintiff,<br><br>v.<br><br>United States,<br><br>Defendants. | No. 04-786<br><br>Judge Susan G. Braden |

## PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant or RCFC 56(h)(2) Plaintiff Sacramento Grazing Association ("SGA") files the following Proposed Findings Of Uncontroverted Fact In Support Of Cross Motion For Summary Judgment And Opposition To Defendant's Motion For Summary Judgment.

1. The predecessors-in-interest of the Goss Family entered upon and were in possession of the area now known as the Sacramento Grazing Allotment in the 1880s, before the Lincoln National Forest was reserved. ***See*** **Goss Declaration in Support of Plaintiffs' Partial Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. ¶ 4 (hereafter "Goss Decl.").**

2. In 1989 SGA began purchasing property known as the Goss Ranch, and on November 27, 1989, the United States Forest Service ("USFS") issued SGA a 10-year term Grazing Permit No. 08-1105 authorizing 553 head of cattle to graze on the Sacramento Allotment. Grazing Permit No. 08-1105 contained no mention of exclosures designed to exclude cattle from riparian or sensitive habitat where SGA's water rights are situated. ***See*** **Goss Decl. ¶ 3; Defendant's Exhibit B.**



1578135.2

3. At the time the Plaintiffs acquired the Goss Ranch, SGA also acquired vested water rights originating in or around the Sacramento Grazing Allotment. ***See* Goss Decl. ¶ 5; Ex. 25 (Declarations of Ownership of Water Rights Perfected Prior to March 19, 1907 (also attached in Appendix of Exhibits to Plaintiff's Memorandum in Opposition to Defendant's Motion To Dismiss, Doc No. 12) setting out a chain of title in this case that includes range rights and water rights now associated with the Sacramento Grazing Allotment).**

4. The Goss Ranch, located in Otero County, New Mexico, consist of approximately 80 deeded acres owned by Plaintiffs in fee simple. It is the base property for a grazing allotment on lands administered by the USFS. ***See* Goss Decl. ¶ 6.**

5. From the original permitted amount of 553 cattle allowed on the allotment, USFS has never allowed more then 370 head since 2000, and the number has been as low as 230 in 2003 and 2004-2005. These determinations were made primarily by District Ranger Frank Martinez. ***See* Goss Decl. ¶ 9.**

6. SGA at all times since 1989 until the present has had a valid grazing permit on the Sacramento Allotment. ***See* Goss Decl. ¶ 12.**

7. The United States Forest Service ("USFS") has constructed, reconstructed and modified fenced areas or exclosures designed to exclude cattle at the following water sources that are owned by SGA: Penasco Head Waters, Bluff Springs, 3 Hubble Springs, Mauldin Springs (Wills Canyon), Bluff North Springs, Kingsbury Springs, and Sacramento Lake. SGA is the owner of vested water rights within each of these exclosures. ***See* Goss Decl. ¶ 10; see also Declaration. of Frank Martinez ¶14, Exhibit B to Defendant's Motion for Summary Judgment.**

8. The *Cirsium vinaceum* (Sacramento Mountain Thistle) ("cirsium" of "thistle") was proposed for listing as a Federally Endangered Species in 1984 and was listed on June 16, 1987. **Declaration of Michael J. Van Zandt in Support of Plaintiffs' Cross Motion for Partial**

**Summary Judgment and Opposition to Defendant's Motion for Summary (hereafter "Van Zandt Decl.") ¶ 4, Exhibit B, p. 1.**

9. In 1989 and 1990 SGA was given permission by the USFS to access the exclosure on the upper Penasco. ***See* Goss Decl. ¶ 15.**

10. In 1993 the United States Fish and Wildlife Service ("USFWS") issued the Sacramento Mountain Thistle Recovery Plan. **Van Zandt Decl ¶ 4, Exhibit B.**

11. The Sacramento Mountain Thistle Recovery Plan stated as a Recovery Priority the acquisition of water rights from springs in areas with suitable habitat for the thistle. **Van Zandt Decl ¶ 4, Exhibit B, p. 9.**

12. The Sacramento Mountain Thistle Recovery Plan states the following: "Another land use that has been identified as a threat to this thistle is grazing. The Sacramento Mountians thistle occurs on four grazing allotments in the Lincoln National forest.." **Van Zandt Decl ¶ 4, Exhibit B, p. 5.**

13. The Sacramento Mountain Thistle Recovery Plan also states the following under Recovery Objective and Criteria: "1. Acquire water rights specifically for the maintenance of travertine spring habitats at a minimum of 30 percent of the occupied spring localities, including at least 1 occupied spring locality in each of the known canyons of occurrence. . . . There are 20 main canyon systems that have suitable habitat occupied by the Sacramento Mountain thistle. The largest and best representative spring habitat in each canyon system should have the water rights acquired for habitat maintenance by the management agency. At present, there is no mechanism to acquire these rights without a developed point of diversion and stated beneficial use. Therefore, until the State of New Mexico adopts instream-flow or similar legislation, the Sacramento Mountains thistle must remain listed as threatened under the Act." **Van Zandt Decl ¶ 4, Exhibit B, p. 9.**

14. Under Recovery Tasks, the Sacramento Mountains Thistle Recovery Plan states: "12. Monitor and encourage legislation for a state instream-flow statute and acquire water rights. **Van Zandt Decl ¶ 4, Exhibit B, p. 10.**

15. Under Narrative Outline of Recovery Actions in the Sacramento Mountains Thistle Recovery Plan the following is stated: "12**. Monitor and encourage legislation for a state instream-flow statute and acquire water rights.** . . . The water right should encompass the total flow from the spring source to the point where the water leaves the travertine deposit." **Van Zandt Decl ¶ 4, Exhibit B, p. 11.**

16. Under Narrative Outline of Recovery Actions in the Sacramento Mountains Thistle Recovery Plan the following is also stated: **Livestock Grazing Management.** . . .Plants along streams should be afforded greater protection from the impact of frequent livestock grazing and trampling during the grazing years or seasons. This will require dispersing livestock from riparian areas or creating small pastures to divert cattle from these areas when necessary. No livestock facilities or holding traps should be constructed on or near occupied habitat. **Van Zandt Decl ¶ 4, Exhibit B, p. 12.**

17. Under the recovery actions addressing monitoring and study, the Sacramento Mountains Thistle Recovery Plan states: "23. **Begin experimental grazing treatments.** . . . . Grazing intensity and duration should be controlled by either herding operations or constructing a fence around manageable units or pasture." **Van Zandt Decl ¶ 4, Exhibit B, p. 13.**

18. On May 5, 1998 the Annual Operating Plan ("AOP") for the Sacramento Allotment was amended and the riparian exclosures on the Sacramento Allotment were officially excluded from livestock grazing activities, and SGA was denied use of water within the exclosures. ***See* Goss Decl. ¶¶ 13, 40 Exhibit 8.**

19. SGA through Frances Goss, Jimmy Goss or Justin Goss, during annual meetings with USFS beginning in 1998, made annual requests to access the water or transfer the water at the

Penasco head waters and were denied by USFS employees Max Goodwin, Rick Newman and Frank Martinez. ***See* Goss Decl. ¶ 14.**

20. On November 23, 1999, the USFS issued SGA Grazing Permit No. 08-1250 for an additional 10 years. This permit for the first time included the exclosures in the USFS management practices for the allotment, and states that "[e]xclosures designated on the attached Sacramento Allotment Range Improvement/Allotment Map are considered special emphasis areas and not part of the Sacramento Allotment. Livestock use is not permitted within the exclosures and will be removed in a timely manner." ***See* Goss Decl. ¶ 16; *see also* Exhibit C to Defendant's Motion for Summary Judgment.**

21. On October 12, 2000 Justin (Spike) Goss spoke with Rick Newman and requested permission to transfer water out of the Penasco exclosure. ***See* Goss Decl. ¶ 17.**

22. In the 2001 AOP, SGA was instructed by the USFS to move cattle into a pasture across the road approximately 400 feet from the Penasco headwaters. SGA requested permission from the USFS to pipe water at its own expense out of the Penasco exclosure across the allotment approximately 400 feet through a culvert beneath a road to the adjoining pasture that had no water. SGA's proposal was to pipe water into a trough with the overflow returning to the Penasco exclosure. On September 13, 2001 Frank Martinez denied Plaintiffs' request to transfer water from the Penasco headwaters. ***See* Goss Decl. ¶ 18; Exhibit 19.**

23. In 2002 SGA requested access to exclosures for the purpose of watering cattle, specifically notifying the USFS they did not intend to graze cattle in the exclosures. This request was denied. ***See* Goss Decl. ¶ 19, Exhibits 15-18.**

24. On June 20, 2002 in a telephone conversation with Frank Martinez, SGA explained they owned the water in the Rio Penasco enclosure and the USFS needed to make provisions to transfer the water to an accessible area. ***See* Goss Decl. ¶ 20.**

25. On June 21, 2002 Justin (Spike) Goss participated in an inspection of the allotment with Mark Cadwallader and Cedric Selby, employees of USFS. He explained the presence of cattle in an exclosure was because "it was the only water available" for the cows. Further, the possible option of providing water outside the exclosure was again discussed. ***See* Goss Decl. ¶ 20, Exhibit 17.**

26. In the summer of 2002 Otero County Deputy John Braziel witnessed Bobby Gomez, USFS Law Enforcement Officer, closing the gate to the Pensaco exclosure. He informed the Mr. Gomez that closing the gate and preventing the cattle access to water is cruelty to animals. The gate was left open; however, the USFS continued to threaten non-compliance if cattle were found within the exclosure. ***See* Goss Decl. ¶ 22.**

27. In February 2004, the USFWS issued a Biological Opinion for the Sacramento Allotment related to endangered species, including the Sacramento Mountain Thistle. **Van Zandt Decl ¶ 5, Exhibit C.**

28. The Biological Opinion recognizes the existence of the current exclosures within the SGA's grazing allotments, including Sacramento Lake, Hubbell, Upper Mauldin, Lower Mauldin, Western Riparian, Upper Penasco, and Bluff Springs, as part of the proposed action that must be continued to allow a no jeopardy opinion from the USFWS. **Van Zandt Decl ¶ 5, Exhibit C, p. 11.**

29. The Biological Opinion also states that the thistle has a recovery priority of 2 out of 18, with 1 being the highest priority and restates the Recovery Criteria in the Recovery plan as follows "1) acquire water rights for the purpose of maintaining travertine habitats and protecting at least 30 percent of the occupied spring localities, including a least one occupied spring in each of the 20 occupied main canyon systems, 2) ensure permanent protection for the thistle in at least 75 percent of the known occupied habitat, both spring and riparian sites, under

established management plans, and 3) establish a 10-year monitoring and research program to demonstrate effectiveness of management plans." **Van Zandt Decl ¶ 5, Exhibit C, p. 27.**

30. The Biological Opinion also states that as to the Sacramento Mountains prickly poppy: "Livestock grazing is currently authorized on the winter unit of the Sacramento Allotment from November 1 to May 14. However, the lack of consistent application of previous forage/range guidelines has likely historically, and currently continues, to adversely affected the poppy. . . .The Forest Service acknowledged that damage could occur to poppies after February 1 in Alamo pasture from grazing activity and associated trampling. (Forest Service 2002, 2003, 2003g). Subsequently, the AOI for the current winter grazing season (i.e. November 2003 through May 14, 2004) included a provision that livestock would be removed from the Alamo pasture prior to February 1, 2004 . . ." **Van Zandt Decl ¶ 5, Exhibit C, p. 35.**

31. The Biological Opinion addresses the need for water by the Sacramento Mountains thistle by stating: "The thistle is an obligate riparian species that requires surface or immediately sub-surface water flows. Spring dessication at thistle sites has contracted occurrence boundaries, reduced the number of individuals, and in some cases, caused a loss of all plants at previously occupied sites (Forest Service 2003a). . . . Trampling by livestock, wildlife, or humans can cause damage to travertine formations or out-flow creek beds in ways that may alter water flow to sites." **Van Zandt Decl ¶ 5, Exhibit C, p. 35.**

32. Concerning the Sacramento Mountains thistle, the Biological Opinion states: "Monitoring of the thistle has shown a simple and direct relationship between water availability in the suitable habitat and numbers and extent of plants in occurrences (Forest Service 2003a). As water flow has been observed to decline at springs, decreases in plant numbers and the size of the sites have occurred. The situation reverses when increased water is available. **Van Zandt Decl ¶ 5, Exhibit C, p. 63.**

33. For the three species of concern, the Mexican Spotted Owl, Sacramento Mountains thistle and Sacramento Mountains prickly poppy, the Biological Opinion determined that the proposed action to graze by SGA "is not likely to jeopardize the continued existence of the [species]," based on full implementation of the project as described in the Description of Proposed Action. **Van Zandt Decl ¶ 5, Exhibit C, pp. 65-67.**

34. The no jeopardy opinion in the Biological Opinion for the three species is based on a finding that there will be reduced stocking levels for livestock; for the poppy, the Alamo Pasture will be closed to livestock by February 1 of each year; and for the thistle: "[t]he continued construction of exclosures will protect isolated occurrences of the thistle. Continued maintenance of existing exclosures will continue to protect some thistle occurrences from livestock impacts." **Van Zandt Decl ¶ 5, Exhibit C, pp. 66-67.**

35. The Biological Opinion then imposes Reasonable and Prudent Measures and Terms and Conditions that include limitations on activities by the livestock permittee near Mexican Spotted Owl protected activity centers. **Van Zandt Decl ¶ 5, Exhibit C, pp. 69.**

36. The Final Environmental Impact Statement for Sacramento, Dry Canyon and Davis Grazing Allotments ("FEIS") was issued in July 2004 and adopted the determinations of the USFWS in the Biological Opinion. **Van Zandt Decl ¶ 5, Exhibit A.**

37. The Record of Decision ("ROD") for the FEIS for the allotment was issued by the USFS on July 28, 2004. **Van Zandt Decl ¶ 6, Exhibit D.**

38. The Record of Decision for the FEIS determined that reduced stocking levels on the allotments was necessary in order to protect endangered species, determined that livestock must be removed from Alamo Pasture before February 1 of each year, continued exclusion of livestock from the exclosure areas, and added several new exclosure areas. **Van Zandt Decl. ¶ 6, Exhibit D, pp. 5-7.**

39. The 2004 AOI for the Sacramento Allotment states that the "Forest service does not recognize any 'easement' associated with water rights upon which you have recently filed declarations. As a result, no clearing of trees or excavation associated with said easements are authorized without approval by the District Ranger." ***See* Goss Decl. ¶ 17, Exhibit 23.**

40. On June 10, 2005 SGA was instructed to sign a new term grazing permit or modify the existing permit, which limit the allowed head of cattle from 553 year long to 412 maximum in the summer and 335 in the winter. ***See* Goss Decl. ¶ 23.**

41. In 2005 or 2006 in the spring when cattle were being moved into the summer pasture the east end gates on the Sacramento Lake exclosure were locked. Otero County Commissioner Doug Moore was notified. He removed the locks and informed USFS not to close the gates. The gates remained open until May of 2008 when a lane was put in the Sacramento Lake exclosure on the west end to allow cattle to access the water (see below). The USFS then closed both gates on the Sacramento exclosure. This forces the cattle to move approximately 1 1/2 miles along a highway up the Sacramento Lake to access the lane on west end of the lake. This causes undue stress on the cattle. Once there, the cattle tend to graze that area making it difficult for SGA to manage grazing impacts on the Allotment. Even when the east end gate is open, SGA faces the threat of non-compliance if cattle are found inside the exclosure. **Goss Decl. ¶ 24.**

42. On June 16, 2006, SGA met at the Sacramento Enclosure with Frank Martinez, Lou Woltering, Forest Supervisor, Mr. Doug Moore and Mr. Mike Nivison, Otero County Commissioners, and Dr. Redd Baker and Dr. John Fowler of the Range Improvement Task Force ("RITF"), as well as neighboring allotment owners. SGA again discussed with the USFS the opportunity to pipe water out of the Penasco exclosure, again requested permission from the USFS to pipe water at its own expense out of the exclosure across the allotment

approximately 400 feet through a culvert beneath a road to the adjoining pasture that had no water. This request was denied by the USFS on July 25, 2006. ***See* Goss Decl. ¶ 25.**

43. On June 16, 2006, SAG meet at the Sacramento Enclosure with Frank Martinez, Lou Woltering, Forest Supervisor, Mr. Doug Moore and Mr. Mike Nivison, County Commissioners , and Dr. Redd Baker and Dr. John Fowler of the Range Improvement Task Force ("RITF"), as well as neighboring allotment owners. There was agreement among all parties, including Frank Martinez, to move the west fence of the Sacramento exclosure back a few hundred feet to allow access for cattle. The fence was to be constructed the following week. However, Mr. Martinez contacted the Forest Guardian and changed his mind, not allowing the movement of the fence and thus continued to deny access to the water. ***See* Goss Decl. ¶ 27.**

44. At the June 16, 2006 meeting, Forest Supervisor Lou Woltering stated that the Forest service owns the water within the Sacramento Exclosure. ***See* Goss Decl. ¶ 28.**

45. On February 19, 2007, SGA again requested permission to pipe water from the Penasco exclosure, this time requesting the ability to move the water into a drinker in Atkinson Canyon. ***See* Goss Decl. ¶ 29.**

46. On May 13, 15, and 19 of 2008 there were a series of meeting held between SGA, USFS, Otero County Commissioners, and the RITF regarding cattle access to water on Sacramento Lake. SGA wanted the gates to remain open so cattle may have access to the water. At the May 13, 2008 meeting Gary Zieh agreed to leave the gate open. However, at the May 15, 2008 meeting Mr. Zieh stated that New Mexico Game and Fish would not allow the gates to remain open. Initially USFS closed the gate and decided to haul water from Sunspot Observatory to a trough near the Sacramento exclosure. This only lasted 2-3 weeks. Then, USFS decided to implement a suggestion by Forest Supervisor Jackie Buchannan and construct a lane to allow cattle to access water at Sacramento Lake. The lane was constructed

on the west end of the Lake and provides an approximate 40 foot access to the water without the cattle grazing within the exclosure. ***See* Goss Decl. ¶ 30.**

47. The United States owns no water rights within the exclosures in Lincoln National Forest. *See United States v. New Mexico*, 438 U.S. 696, 718 (1978)

48. SGA has requested that the USFS ensure adequate water flow out of all exclosures. This spring feed water flow however is not consistent, and is dependent on the weather. ***See* Goss Decl. ¶31.**

49. SGA periodically uses the tap on the pipeline at Sacramento Lake to fill a water trough about a mile below Sacramento exclosure. However, that trough is on private property and fills from the pipeline in the exclosure. Further, there are six other users on the pipeline. The water that flows out of the Sacramento Lake exclosure is not reliable because there is frequently inadequate water pressure for SGA to utilize its water trough for watering cattle due to use at this source by other water users. The USFS was refused to allow SGA to move water from Sacramento Lake. ***See* Goss Decl. ¶ 32.**

Dated:August 15, 2008

By: [signature]

Michael J. Van Zandt
HANSON BRIDGETT
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 995-3566

Attorneys for Plaintiff
Sacramento Grazing Association

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2008, a true and accurate copy of the PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT was served upon counsel by first-class mail, by placing the same in the United States mail, postage prepaid, addressed to:

Kathleen Lennon Doster
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, DC 20044-663
Tel: (202) 305-0481
Fax: (202) 305-0506
Kathleen.doster@usdoj.gov

Keith Kiley