IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SACRAMENTO GRAZING ASSOCIATION, INC., et al., | ) | |
| Plaintiffs, | ) | No. 04-786 L |
| v. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KATHLEEN LENNON DOSTER
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Telephone No.: (202) 305-0481
Facsimile No.: (202) 305-0506
E-mail: kathleen.doster@usdoj.gov

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583
Facsimile No.: (603) 225-1577

<u>OF COUNSEL</u>:
MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586

Dated: September 12, 2008

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. THE SCOPE OF PLAINTIFFS' ALLEGED WATER RIGHTS DO NOT INCLUDE A RIGHT TO MOVE CATTLE ACROSS FEDERAL LAND IN CONTRAVENTION OF THEIR TERM GRAZING PERMIT . . . . . . . . . . . . . . 5

A. Plaintiffs Do Not Have a Right to Move Cattle to Water Sources Located on Federal Land Without the Permission of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. Plaintiffs' Grazing Permit does not Create a Right to Place Cattle on Federal Land . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C. Plaintiffs Do Not Have a Property Right to Unilaterally Move Water From One Part of the Allotment to Another . . . . . . . . . . . . . . . . . . . . . . 13

II. THE NATURE OF THE TAKING ALLEGED BY PLAINTIFFS IS REGULATORY, NOT PHYSICAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A. Regulatory Restrictions on the Use of Property Do Not Constitute Physical Takings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B. Plaintiffs Have Failed to State a Physical Taking of Their Alleged Water Rights Based on The Presence of Seven Exclosures on the Sacramento Allotment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1. Plaintiffs' Reliance on *Hage* is Misplaced . . . . . . . . . . . . . . . . . 23

C. Plaintiffs Have Failed to State a Physical Taking of Their Alleged Water Rights Based on the Issuance of a Biological Opinion and Other Environmental Assessment Documents . . . . . . . . . . . . . . . . . . . . . 25

D. Plaintiffs Have Failed to State a Physical Taking of Their Alleged Water Rights Based on Grazing Restrictions on the Alamo Pasture . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

### FEDERAL CASES

Air Pegasus of D.C., Inc. v. United States,
424 F.3d 1206 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alves v. United States,
133 F.3d 1454 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Pelagic Fishing Co., L.P. v. United States,
379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Beekwilder v. United States,
55 Fed. Cl. 54 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Buford v. Houtz,
133 U.S. 320 (1890) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Colvin Cattle Co., Inc. v. United States,
468 F.3d 803 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24

Delaware State College v. Ricks,
449 U.S. 250 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Diamond Bar Cattle Co. v. United States,
168 F.3d 1209 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Elko County Bd. of Supervisors v. Glickman,
909 F. Supp. 759 (D. Nev. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Estate of E. Wayne Hage v. United States,
82 Fed. Cl. 202 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Fallini v. United States,
56 F.3d 1378 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Forest Properties, Inc. v. United States,
177 F.3d 1360 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Goodrich v. United States,

63 Fed. Cl. 477 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 27, 28

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hunter v. United States,
388 F.2d 148 (9th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Jenison v. Kirk,
98 U.S. 453 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kinsey v. United States,
852 F.2d 556 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Light v. United States,
220 U.S. 523 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Loretto v. Teleprompter Manhattan CATV Corp.,
458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lucas v. S.C. Coastal Council,
505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sacramento Grazing Ass'n, Inc. v. United States,
66 Fed. Cl. 211 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

Seiber v. United States,
364 F.3d 1356 (Fed. Cir. 2004), cert. denied, 543 U.S. 873 (2004) . . . . . . . . . . . . . . . . . 16

Skip Kirchdorfer, Inc. v. United States,
6 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Stearns Co., Ltd. v. United States,
396 F.3d 1354 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency,
535 U.S. 302 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

Tuthill Ranch, Inc. v. United States,
381 F.3d 1132 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Fuller,
409 U.S. 488 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Walker v. United States,
79 Fed. Cl. 685 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 13, 15

Washoe County v. United States,
319 F.3d 1320 (Fed. Cir. 2002), cert. denied, 124 S. Ct. 202 (2003) . . . . . . . . . . . . . . . 15

**STATE CASES**

Walker v. United States,
162 P.3d 882 (N.M. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8, 10, 12, 22

**FEDERAL STATUTES**

28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

43 U.S.C. § 661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

43 U.S.C. §§ 1701-84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE STATUTES**

N.M. Const. art. XVI, § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL RULES**

RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

RCFC 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**FEDERAL REGULATIONS**

36 C.F.R. § 222.1 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

36 C.F.R. § 222.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

36 C.F.R. § 222.3(b)( (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## INTRODUCTION

On April 29, 2008, the United States moved for summary judgment in this matter, arguing that, as a matter of law, because Plaintiffs do not have any property interest in grazing or forage on the Sacramento Allotment, the Government's actions restricting grazing cannot constitute a taking of their alleged water rights. The United States also argued, among other things, that there has been no taking of Plaintiffs' Ranch. Plaintiffs responded and cross-moved for summary judgment on August 15, 2008. Defendant herein submits its Opposition to Plaintiffs' Cross-Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment.

Plaintiffs' Cross-Motion and Opposition Brief ("Pls.' Br.") concedes several important points. First, Plaintiffs admit that they do not possess a "forage right," and therefore, any allegations in the Amended Complaint which claim that their "forage rights" have been taken should be dismissed. See Pls.' Br. at 2 ("As a result of the Walker[1/] decision, the parties in this matter agreed that SGA lacks a forage right implicit in any vested water right or in any right-of-way for the maintenance and enjoyment of vested water rights based upon state law." ). Similarly, any claims in the Amended Complaint which allege a taking of water rights or the Goss Ranch as a result of the alleged taking of "forage" rights, should also be dismissed. See Doc. 15 ¶¶ 32(C), 32(E), and 33.

Second, Plaintiffs do not oppose the United States' motion for summary judgment with respect to the taking of the Goss Ranch. Instead, Plaintiffs merely state that "SGA specifically reserves the issue of whether there has been a taking of the Goss Ranch." Pls.' Br. at 1.

---

[1/] Walker v. United States, 162 P.3d 882 (N.M. 2007).

Plaintiffs cannot avoid an adverse judgment by "reserv[ing]" an issue on which Defendant has moved for summary judgment. See Doc. 35 at 18 ("There Has Been No Taking of Plaintiffs' Ranch"). Plaintiffs' failure to respond to Defendant's fully supported motion for summary judgment with respect to Plaintiffs' claim that the Goss Ranch has been taken, requires the entry of summary judgment against Plaintiffs with respect to that claim. See RCFC 56(e) ("If the adverse party does not so respond [to a properly supported motion], summary judgment, if appropriate, shall be entered against the adverse party.").

Third, Plaintiffs admit that they are only alleging a taking of eleven water sources on the Sacramento Allotment as a result of seven exclosures built by the Forest Service,[2] and seven water sources as a result of grazing restrictions imposed on the Alamo Pasture by the Forest Service, for a total of eighteen water sources.[3] Accordingly, at a minimum, the United States' Motion for Summary Judgment should be granted with respect to the other 125 water sources identified in Appendix A to the Amended Complaint. See Doc. No. 15, Appendix A.

Fourth, with respect to the eighteen water sources alleged to have been taken in Plaintiffs' Cross-Motion, Plaintiffs concede that they have not been denied all access to these water sources, but instead are unhappy with grazing restrictions imposed by the Forest Service,

---

[2] See Goss Decl. ¶ 10 (Doc. 42) (alleging that "[t]he USFS has constructed, reconstructed, modified, and expanded fenced areas or exclosures on the Sacramento Allotment designed to exclude cattle at the following sources: Penasco Head Waters, Charles Spring, Water Canyon Spring, Bluff Springs, Bluff Springs West, 3 Hubble Springs, Mauldin Springs (Wills Canyon), West Mauldin, Bluff North Springs, Kingsbury Springs, and Sacramento Lake."); see also Martinez Decl. ¶ 14 (Doc. 35, Def.'s Ex. A).

[3] See Goss Decl. ¶ 11 (Doc. 42) (alleging that "[t]he USFS has prevented use of SGA's water rights in the Alamo Pasture each year since 2004 after February 1. . . This includes, but is not limited to, the following water sources: Upper Alamo #1, Mud Springs, Caballero #1, Caballero #2, Caballero #3, Wood Spring #1, and Wood Spring #2").

which prevent Plaintiffs' cattle from grazing directly to these water sources at a time and place of their choosing. For example, Plaintiffs concede that, depending on the weather, water flows outside the seven exclosures, and that the Forest Service has "agreed not to interfere with the flow. . .". See Goss Decl. ¶ 31 (Doc. 42). Moreover, Plaintiffs admit that with respect to the Sacramento exclosure, the Forest Service has "construct[ed] a lane to allow cattle to access water at Sacramento Lake. The lane was constructed on the west end of the Lake and provides an approximate 40 foot access to the water without the cattle grazing within the exclosure." Id. at ¶ 30.

Therefore, although Plaintiffs attempt to couch their takings claim as a denial of access to water, it is clear that Plaintiffs' takings claim is instead based on their belief that their cattle should be allowed to move freely on federal land in order to drink directly from a water source. However, as set forth in more detail below, Plaintiffs' alleged water rights do not include the unfettered right to move cattle freely across federal land in order to access particular water sources located on that federal land. Consequently, reasonable regulatory restrictions imposed on Plaintiffs' use of federal lands for grazing purposes does not constitute a taking of Plaintiffs' alleged water rights.

Finally, to overcome the fact that Plaintiffs' alleged water rights do not include a right to bring their cattle directly to particular water sources located on lands that they do not own, Plaintiffs in their cross-motion allege a physical taking of their water rights based on a combination of several theories. First, Plaintiffs contend that eleven water sources were taken when the Forest Service fenced off the water sources from cattle, and "officially" excluded cattle from the exclosures in 1998, through the issuance of the 1998 Annual Operating Plan ("AOP").

See Pls.' Br. at 21. Second, Plaintiffs contend that those same water sources were physically taken when various environmental assessment documents were issued which Plaintiffs claim (wrongly) prohibit the transfer of water outside the exclosures. See Pls.' Br. at 24. Third, Plaintiffs contend that seven water sources were taken when the Forest Service issued a Record of Decision in 2004 which called for the Alamo Pasture to be rested after February 1st for two years.

Since the United States has not physically occupied Plaintiffs' alleged water rights, but instead imposed restrictions on Plaintiffs' ability to graze cattle on federal land, Plaintiffs' cross-motion must be denied because the nature of Plaintiffs' takings claim is regulatory, not physical. As this Court is aware, regulatory takings require a different liability analysis than physical takings. The 1998 Annual Operating Plan ("AOP") made clear that livestock use was prohibited within the grazing exclosures; however, there is nothing in the AOP that precludes the movement of water outside the exclosures.[4/] Moreover, the issuance of various documents such as the biological opinion and record of decision, which confirmed that grazing is prohibited within the seven grazing exclosures and that the Alamo Pasture would be rested after February 1st for two years, did not physically occupy Plaintiffs' alleged water rights. Instead, the documents cited by Plaintiffs document the implementation of certain regulatory restrictions on the use of federal lands included in the Sacramento Allotment. To the extent that the Forest Service's management of such lands affected Plaintiffs' use of their alleged water rights, any takings claim arising from such restrictions or limitations is necessarily regulatory in nature.

---

[4/] Nevertheless, if Plaintiffs' physical takings claim is based on the presence of exclosures on National Forest System lands, Plaintiffs' physical takings claim must be dismissed since it is barred by the six-year statute of limitations. See infra Point II.B.

Accordingly, Plaintiffs' cross-motion should be denied.

## ARGUMENT

### I. THE SCOPE OF PLAINTIFFS' ALLEGED WATER RIGHTS DO NOT INCLUDE A RIGHT TO MOVE CATTLE ACROSS FEDERAL LAND IN CONTRAVENTION OF THEIR TERM GRAZING PERMIT

The threshold inquiry in any Fifth Amendment takings case is whether the plaintiff possesses a protected property interest within the meaning of the Fifth Amendment. See Colvin Cattle Co., Inc. v. United States, 468 F.3d 803, 806 (Fed. Cir. 2006) ("The threshold inquiry is 'whether the claimant has established a "property interest" for purposes of the Fifth Amendment.'" (citations omitted)); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1212 (Fed. Cir. 2005) ("First, as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment."). It is well established that the plaintiff bears the burden of proving that he possesses a legally-cognizable property interest, Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed. Cir. 1993), and if a plaintiff fails to do so, its takings claim "is at an end."[5/] American Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) ("If a claimant fails to demonstrate the existence of a legally cognizable property interest, the courts task is at an end."); see also Sacramento Grazing Ass'n, Inc. v. United States, 66 Fed. Cl. 211, 217 (2005) ("Plaintiffs apparently believe that they can escape the prerequisite of having a property right and still assert a claim for compensation under the Fifth Amendment to the United States Constitution.").

Here, Plaintiffs claim a physical taking of their alleged vested water rights located on

---

[5/] The need for a compensable property interest is applicable to both physical takings claims and regulatory takings claims. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003); Skip Kirchdorfer, 6 F.3d at 1580.

National Forest System lands by the "fencing off and denial of access to these vested water rights." Pls.' Br. at 20. However, although Plaintiffs make numerous references to a so-called "denial of access," it is clear that Plaintiffs are really referring to the Forest Service's grazing restrictions which preclude Plaintiffs' cattle from grazing within the exclosures. Therefore, the key question in this case is whether the scope of Plaintiffs' alleged water rights include the right to move cattle across federal lands to drink at a particular location.

More specifically, since the United States has assumed, for purposes of its motion for summary judgment, that Plaintiffs hold valid water rights on the Sacramento Allotment,[6] the threshold inquiry in this case is whether the scope of Plaintiffs' alleged New Mexico-based water rights include the rights being claimed by Plaintiffs – namely, the right to bring cattle directly to water located on National Forest System lands to drink, and the right to unilaterally move water from one part of National Forest System lands to another part. Clearly they do not.

Since the New Mexico Supreme Court and the Court of Federal Claims have already held that Plaintiffs do not have such rights, Plaintiffs have failed to state a taking of a legally compensable property interest, and, therefore, Plaintiffs' takings claim must fail. <u>See</u> <u>Walker v. United States</u>, 79 Fed. Cl. 685, 707 (2008) ("To establish ownership of a constitutionally-protected property interest, Plaintiffs are required to present a 'legitimate claim of entitlement' to

---

[6] The United States is <u>only</u> assuming that Plaintiffs have valid state water rights on the Sacramento Allotment, for purposes of the government's motion for summary judgment. However, with respect to Plaintiffs' cross-motion, the United States disputes whether Plaintiffs have any valid water rights on the Allotment, because there has been no state adjudication of Plaintiffs' purported water rights. Moreover, Plaintiffs' "evidence" consists of declarations submitted by Plaintiffs to the State Engineer's office which clearly state: "The acceptance for filing of this declaration by this office does not indicate affirmation or rejection of the statements contained herein." <u>See</u> Doc. 42-26. On this ground alone, Plaintiffs' cross-motion should be denied. <u>See</u> RCFC 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

the property at issue, that is, a 'claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law.'").

## A. Plaintiffs Do Not Have a Right to Move Cattle to Water Sources Located on Federal Land Without the Permission of the United States

The United States, prior to the issuance of Plaintiffs' term grazing permit in 1989, established seven fenced areas (exclosures) on the Lincoln National Forest in order to protect environmentally-sensitive areas from trampling by cattle. See Martinez Decl. ¶ 14 (Doc. 35, Ex. A). The seven exclosures, which are off-limits to grazing, encompass approximately 264 acres of National Forest System lands (compared to the approximately 111,000 acres that comprise the Sacramento Allotment). Id. at ¶¶ 3, 14. Plaintiffs' current term grazing permit specifically excludes the areas within the exclosures from the Sacramento Allotment, and makes clear that no livestock use is permitted there.[7/] See Doc. 35, Ex. C.

Despite this permit condition, Plaintiffs freely admit that they have opened the gates to the exclosures to water their cattle within the exclosures. See Pls.' Br. at 11. Plaintiffs defend these permit violations by claiming that they have a right to access their water rights in order to maintain their cattle on the Sacramento Allotment. Since the New Mexico Supreme Court has already rejected such an overly broad definition of New Mexico-based water rights, Plaintiffs claim too much.

The New Mexico Supreme Court in Walker, 162 P.3d 882, held that the laws of the State

---

[7/] Plaintiffs harp on the fact that their grazing permit issued in 1989 did not specifically mention the exclosures. However, Plaintiffs were aware that the exclosures were built prior to 1989 and Plaintiffs were not given permission to move livestock within the exclosures, with the exception of the Upper Penasco exclosure in 1989 and 1990. See Doc. 42-5 and Doc. 42-6; see also Martinez Decl. ¶ 4 (Def. Ex. I).

of New Mexico do not recognize a limited forage right implicit in a vested water right, and the laws of the State of New Mexico do not recognize a limited forage right implicit in a right-of-way[8] for the maintenance and enjoyment of a vested water right. See Walker, 162 P.3d at 883. The New Mexico Supreme Court came to this conclusion after defining the scope of New Mexico-based water rights in this way:

> The prior appropriation doctrine governs water law in New Mexico. . . Under prior appropriation, 'the right to use water is considered a property right which is separate and distinct from ownership of the land. . . Under the doctrine of prior appropriation, water rights are both established and exercised by beneficial use, which forms 'the basis, the measure and the limit of the right to use the water.' N.M. Const. art. XVI, § 3. A water right is separate and distinct from a right to adjacent land because it is derived not from the rights in the land but 'from appropriation for beneficial use.' . . . Water rights are . . . not tied to a particular location or even a particular source. . . . As such, water rights are not considered ownership in any particular water source, but rather a right to use a certain amount of water to which one has a claim via beneficial use. . . . Thus, under prior appropriation, as a separate protected property right, a vested water right can be 'sold, leased, or transferred.'

---

[8] In order to answer the two questions certified to them by the Court of Federal Claims, the New Mexico Supreme Court assumed that the Walker plaintiffs had established a valid "right of way for the construction of ditches and canals" to carry water under the Mining Act of 1866, 43 U.S.C. § 661. Walker, 162 P.3d at 895. The Mining Act of 1866 mentions and sanctions only two possessory rights: the right to the use of water on public lands for mining, agricultural, manufacturing, or other purposes, "acquired by priority of possession, when recognized by local customs, laws, and decisions of the courts"; and, in the second clause, a right of way for the construction of ditches and canals to carry water for those purposes. See Jenison v. Kirk, 98 U.S. 453, 460 (1878). Congress amended the 1866 Act on October 21, 1976 with the enactment of FLPMA, 43 U.S.C. §§ 1701-84, and repealed all right-of-way authorizations, including the one for ditches under Section 9. As a result, it is well established that no rights-of-way can be established under Section 9 of the 1866 Act after October 21, 1976. See Elko County Bd. of Supervisors v. Glickman, 909 F. Supp. 759, 763 (D. Nev. 1995). Here, Plaintiffs claim only one 1866 Act ditch right-of-way and concede that the United States has not interfered with the flow of water through the ditch. See Def. Ex. H. Although the United States disputes whether Plaintiffs have established a valid right-of-way under the 1866 Act, it is irrelevant for purposes of the parties' motions, since the New Mexico Supreme Court has already held that an 1866 Act right-of-way does not include the right Plaintiffs are claiming here – a right to freely move their cattle to water sources on federal land.

162 P.3d at 888-90.

The New Mexico Supreme Court stressed the "mobility" of water rights, and the fact that water rights are not tied to a particular location, but instead may be moved from one location to another. Id. at 890. Because of this severability, the court held that where water rights are located on federal land, the "ability to acquire and use [a] water right on [federal land is] conditioned on the permission of the federal government to go on the land." Id. at 892 (emphasis added). Therefore, if the United States does not give its permission, or revokes its permission, a water right "can be severed from that land and applied to another use at a different location." Id. at 891; Hunter v. United States, 388 F.2d 148, 155 (9th Cir. 1967) ("The rule is well-settled that a squatter on the public domain may acquire by appropriation the right to the use of water that is used by him to irrigate such land and that if he is evicted he may nevertheless divert the water elsewhere if he is able.").

As a result, this Court in Walker held that the cancellation of a term grazing permit by the Forest Service did not cause a taking of New Mexico-based water rights because, under New Mexico law, water rights are "not tied to a particular location or even a particular source" (Walker, 162 P.3d at 890), and owners of water rights "may transfer, lease, or sell such rights from the surrounding lands." Walker, 79 Fed. Cl. at 706. Therefore, even though the effect of the permit cancellation was to preclude the Walker plaintiffs from moving their cattle to their water sources to drink, there was no taking because plaintiffs "ability to transfer, lease, or sell any water rights ha[d] [not] been impaired." Id.

Based on the holdings of the New Mexico Supreme Court, and this Court in Walker, it is clear that the scope of a New Mexico-based water right does not include the right to move cattle

across federal land to a water source to drink. In response, Plaintiffs try to distinguish Walker by claiming that, unlike in Walker, they are not seeking a right to forage or a right to graze as part of their alleged water rights. Instead, Plaintiffs argue, they are only seeking a right to move their cattle directly to the water source in order to maintain their cattle as they graze on the Allotment. See Pls.' Br. at 22-23. Plaintiffs make a distinction without a difference.

First, by seeking a right to move their cattle to a water source located on federal land, Plaintiffs are in fact seeking a right to graze and a right to the forage within the seven exclosures on the Sacramento Allotment. That is because it is "impossible to keep a cow from eating while being herded to the water source." Walker, 162 P.3d at 895. Since the parties agree that New Mexico-based water rights do not include a right to graze or a right to forage, Plaintiffs' claim falls squarely under the holding in Walker.

Second, the New Mexico Supreme Court has already rejected this almost identical argument. In Walker, plaintiffs claimed that their water rights included a right-of-way over federal land in order to "maintain" their cattle. Walker, 162 P.3d at 895; compare Pls.' Br. at 11 (Plaintiffs admitting that they intentionally placed cattle in the exclosures in violation of their term grazing permit because "it was the only water available" for the cattle). The New Mexico Supreme Court rejected plaintiffs' argument that the scope of a water right located on federal land includes such a right. 162 P.3d at 895-96. The New Mexico Supreme Court explained that "while the [plaintiffs] might, at least in theory, have the right to move their water to their cattle, it is outside the scope of any statutory right-of-way to move cattle to the water, and incidentally

have them graze along the way."[9] Id. at 896.

Accordingly, Plaintiffs' claim that the scope of their alleged water rights includes the right to move cattle across federal land in order to maintain their cattle and access their water rights must be rejected.

### B. Plaintiffs' Grazing Permit does not Create a Right to Place Cattle on Federal Land

Plaintiffs also attempt to distinguish Walker on the ground that in Walker the Forest Service cancelled the plaintiffs' grazing permit, but here, Plaintiffs continue to hold a valid grazing permit. As a result, Plaintiffs contend, they have a "continuing ability to graze the allotments," and therefore, presumably have a property right to move cattle to their alleged water sources.[10] Pls.' Br. at 31.

Plaintiffs' argument ignores the threshold inquiry in every takings analysis – has plaintiff identified a legally compensable property interest? As this Court previously held in its June 30, 2005 opinion, Plaintiffs' grazing permit or grazing "preference," is not a legally compensable property interest. 66 Fed. Cl. at 216-17. Indeed, Plaintiffs' ability to use the Sacramento

---

[9] Plaintiffs contend that the 1866 Act confirms "three possessory rights," including a "right of way across public land." Id. at 15. As a result, Plaintiffs state that "SGA is not requesting a right-of-way across federal land, because they already possess such a right-of-way by virtue of its Mining Act of 1866 water rights." Pls.' Br. at 38. Plaintiffs are wrong. As explained supra note 8, the Mining Act of 1866 only confirms two possessory rights, neither of which is "a right of way across public land." Nevertheless, the New Mexico Supreme Court has already held that any right-of-way established under the 1866 Act in New Mexico does not include a right to move cattle along the right-of-way and "incidentally have them graze along the way." 162 P.2d at 896.

[10] If Plaintiffs' theory is accepted, it would lead to the illogical conclusion that the Forest Service may cancel a term grazing permit without takings liability, but may not place conditions on a permit without takings liability.

Allotment to access their water rights has always been a privilege, and therefore, Plaintiffs never possessed a right to graze their cattle across federal land to access their alleged water rights. See Walker, 162 P.3d at 895 ("[T]he right to use the public domain for ranching has always been characterized as a license, not a real property interest, with regard to the interest of the federal government."); United States v. Fuller, 409 U.S. 488, 494 (1972); Alves v. United States, 133 F.3d 1454, 1457 (Fed. Cir. 1988); see also 36 C.F.R. § 222.3(b)( (2004) ("Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources").

On this ground alone, Plaintiffs' claim that their grazing permit gives them a right to place cattle on federal land to access water rights must be rejected. See Sacramento Grazing, 66 Fed. Cl. at 217 ("Plaintiffs apparently believe that they can escape the prerequisite of having a property interest and still assert a claim for compensation under the Fifth Amendment."). However, setting aside the fact that Plaintiffs' grazing permit is not a legally compensable property right, it should also be noted that Plaintiffs' grazing permit, on its face, does not give Plaintiffs the "continuing ability to graze the allotments" (Pls.' Br. at 31), that it claims. Plaintiffs only have permission to graze, and a "continuing ability to graze the allotments," according to the terms and conditions of their grazing permit. See Doc. 35, Def. Ex. C (Plaintiff Jimmy Goss executing their term grazing permit and confirming that "I HAVE REVIEWED AND ACCEPT THE TERMS OF THIS PERMIT"). One of the terms and conditions of their permit specifically excludes cattle from the seven exclosures on the Sacramento Allotment: "Exclosures designated on the attached Sacramento Allotment Range Improvement / Allotment Map are considered special emphasis areas and not part of the Sacramento Allotment. Livestock

use is not permitted within exclosures and will be removed in a timely manner." Id.

Finally, the seven exclosures were built prior to the issuance of Plaintiffs' grazing permit in 1989. See Martinez Decl. ¶ 3 (Def. Ex. I). Therefore, in light of the fact that Plaintiffs' ability to graze the allotment has always been a privilege, and that the seven exclosures were present on the allotment prior to the issuance of Plaintiffs' grazing permit, it is unreasonable for Plaintiffs to now argue that they have a reasonable expectation to move their cattle to water sources on National Forest System lands. As this Court held in Walker, any "expectations that [plaintiffs] indefinitely could use water in the Allotments for grazing purposes is a 'unilateral expectation,' not a 'constitutionally protected interest.'" 79 Fed. Cl. at 707. Therefore, this Court rejected the Walker plaintiffs' claims that the government had "den[ied] plaintiffs all economically-viable use of said water, and depriv[ed] plaintiffs of their reasonable investment-backed expectations." Id. The result should be no different here.

Accordingly, Plaintiffs are incorrect that they have a legally compensable property right to graze their cattle to water located on National Forest System lands in contravention of the terms and conditions of their grazing permit. As a result, the United States' motion for summary judgment should be granted, and Plaintiffs' cross-motion should be denied.

### C. Plaintiffs Do Not Have a Property Right to Unilaterally Move Water From One Part of the Allotment to Another

Plaintiffs make countless statements in their cross-motion and opposition brief that the Forest Service has denied them access to their water rights when they "refus[ed] to either allow entry to access the water or to transfer the water outside the exclosures to a place of beneficial use." See, e.g., Pls.' Br. at 31. However, despite Plaintiffs' repeated assertions, it is clear that Plaintiffs are only seeking access to water by their cattle within the exclosures, and Plaintiffs

have only tried to "transfer the water outside" one exclosure – the Penasco exclosure.[11/] See Pls.' Br. at 35. The United States addressed the Penasco exclosure in its brief supporting its motion for summary judgment. As the United States explained, Plaintiffs made several requests to move water outside the Penasco exclosure beginning in 2001, when the area was experiencing a drought. In non-drought situations, water often flows through the exclosure naturally. See Martinez Decl. ¶ 15 (Doc. 35, Def.'s Ex. A).

However, as the Goss Declaration makes clear, there was only one specific request for a right-of-way across federal land to move water onto a neighboring pasture on the Allotment. See Goss Decl. ¶ 18 ("SGA requested permission from the USFS to pipe water at its own expense out of the Penasco exclosure across the allotment approximately 400 feet through a culvert beneath a road to the adjoining pasture that had no water.") (Doc. 42). It should be noted that Plaintiffs were not seeking to move the water off the Sacramento Allotment, but instead were seeking to move the water to another part of the Allotment, so Plaintiffs could graze their cattle there. The District Ranger, Frank Martinez, denied Plaintiffs' request because the route they suggested would cause cattle to congregate in the meadow bottom adjacent to a scenic byway, which would not be consistent with best management practices. See Martinez Decl. ¶ 18 (Def. Ex. A). Mr. Martinez discussed other options such as extending a pipeline away from the scenic byway, pumping water from adjacent private land, and placing a trick tank on the Atkinson

[11/] The only other exclosure mentioned specifically by Plaintiffs is the Sacramento Lake exclosure. See Pls.' Br. at 37. However, Plaintiffs sought to move a fence so that they could bring their cattle directly to the Sacramento Lake; they were not seeking to transfer water to another location. Moreover, Plaintiffs admit that the Forest Service did agree to an "accommodation" – the Forest Service constructed a lane to allow cattle to graze directly to Sacramento Lake, without cattle grazing within the exclosure. See Goss Decl. ¶ 30 (Doc. 42).

Pasture. Id.

Plaintiffs claim they rejected each of these options because they were either too expensive or logistically unfeasible. This Court rejected a similar argument in Walker. See 79 Fed. Cl. at 706 (finding unpersuasive plaintiffs' argument that "[t]he choices presented to [Plaintiffs with respect to water access] are logistically impossible and economically prohibitive."). Indeed, the Forest Service has every right to regulate the way grazing is conducted on the Sacramento Allotment, without causing a Fifth Amendment taking. See Washoe County v. United States, 319 F.3d 1320, 1327 (Fed. Cir. 2002), cert. denied, 124 S. Ct. 202 (2003) (finding that the government did not affect the Appellants' water rights when they "den[ied] permission to use the government's own land to exploit those rights.").

Therefore, despite the rhetoric in Plaintiffs' cross-motion, it is clear that Plaintiffs have not been denied access to their alleged water rights. Plaintiffs have consistently sought "access" to the exclosures so that their cattle could move directly to water sources located within the exclosures on National Forest System lands. The Forest Service has denied those requests because trampling by cattle will harm the environmentally sensitive areas. Plaintiffs have only sought to move water from one exclosure - the Penasco - and the request was denied based on range management concerns. Plaintiffs were given the opportunity to move water outside the Penasco exclosure but refused to do so because they objected to a different watering point for their cattle.

Accordingly, since Plaintiffs do not have a property right to unilaterally move water from one part of the Allotment to another by any means, the denial of a request to move water to a particular location does not constitute a taking of any property right possessed by the Plaintiffs,

particularly when other options for moving the water in question were discussed and remain available.

## II. THE NATURE OF THE TAKING ALLEGED BY PLAINTIFFS IS REGULATORY, NOT PHYSICAL[12/]

There can be no dispute that the United States has not physically taken Plaintiffs' alleged water rights; the government itself did not physically divert or occupy the water, nor did it appropriate the water for its own use. Indeed, Plaintiffs freely admit that they can access their alleged water rights, but complain about grazing restrictions which prevent Plaintiffs' cattle from drinking directly from water sources on National Forest System land. Instead, Plaintiffs' takings case rests on their belief that any regulatory restriction on their ability to bring their cattle directly to a water source is a physical taking – whether through the construction of exclosures,[13/] through the issuance of environmental assessment documents such as a 2004 Biological Opinion, or through the issuance of a Record of Decision which rested the Alamo Pasture after February 1st from grazing for two years.

Quite simply,"[t]he Supreme Court has long held that regulatory restrictions on the use of property do not constitute physical takings." Seiber v. United States, 364 F.3d 1356, 1366 (Fed. Cir. 2004), cert. denied, 543 U.S. 873 (2004) (citing Tahoe-Sierra Pres. Council v. Tahoe Reg'l

---

[12/] Since Plaintiffs have failed to identify the taking of a legally compensable property interest (see supra Point I), Plaintiffs' takings case is at an "end", and the Court does not need to decide whether Plaintiffs have alleged a physical or regulatory taking. However, in the event the Court concludes differently, the United States addresses Plaintiffs' cross-motion here.

[13/] Although Plaintiffs claim that it is the exclosures which preclude them from accessing their water rights, that is not the case. As explained supra, Plaintiffs only have permission to bring their cattle onto federal land according to the terms and conditions of their permit, which specifically excludes the areas within the exclosures from the Allotment and prohibits livestock use. As a result, Plaintiffs never had the right to move their cattle to those areas.

Planning Agency, 535 U.S. 302, 303 (2002)). As a result, any regulatory restrictions on Plaintiffs' use of federal lands in this case, including restrictions on their ability to bring their cattle directly to a particular water source located on those federal lands, must be analyzed under the regulatory takings framework. Consequently, Plaintiffs' attempt to frame their claims as physical takings claims, and their cross-motion for summary judgment as to such claims, should be denied.

### A. Regulatory Restrictions on the Use of Property Do Not Constitute Physical Takings

Generally, courts recognize two types of takings – physical takings and regulatory takings. See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014-15 (1992); Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1135 (Fed. Cir. 2004). The distinction between the two is based on the nature of the government action. Physical takings occur "when the government itself occupies the property or requires the landowner to submit to physical occupation of its land." Stearns Co., Ltd. v. United States, 396 F.3d 1354, 1357 (Fed. Cir. 2005) (citations omitted) (emphasis in original). Regulatory takings, on the other hand, involve regulatory restrictions on the use of private property. See Tahoe-Sierra, 535 U.S. at 323.

This distinction between the two types of government action is critical because it dictates whether a per se rule is applied (physical takings) or the multi-factor Penn Central inquiry is applied (regulatory takings). If there has been a permanent physical occupation, a per se taking has occurred and the owner must be provided compensation. See id. at 322-23 ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner . . ."). While the Court has been careful to

recognize that not all physical invasions constitute a taking, see Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 428 (1982), it has held that when a permanent physical occupation has occurred, it constitutes a per se taking. Id. at 441.

It is black letter law that when the government has not physically occupied property or required a landowner to submit to occupation by a third-party, but instead has restricted the use of property through regulation, the takings analysis requires an ad hoc factual inquiry to determine whether the restrictions have gone "too far" and placed such an imposition on the owner's property rights that they effectuate a taking. See Lucas, 505 U.S. at 1015. Under the Penn Central test the Supreme Court has established, the factors of particular significance in evaluating whether a regulatory taking has occurred are the economic impact of the regulation on the claimant, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action. Penn Central, 438 U.S. at 124.

Recent cases from the Supreme Court and the Federal Circuit have confirmed that it is the nature of the government action which distinguishes physical from regulatory takings and that physical takings are typically self-evident because they involve physical appropriation:

> When the government condemns or physically appropriates the property, the fact of a taking is typically obvious and undisputed. When, however, the owner contends a taking has occurred because a law or regulation imposes restrictions so severe that they are tantamount to a condemnation or appropriation, the predicate of a taking is not self-evident, and the analysis is more complex.

Tahoe-Sierra, 535 U.S. at 322, n.17; see also Forest Properties, Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999); Stearns, 396 F.3d at 1357.

The Supreme Court cautioned against the use of per se rules and emphasized again that physical takings are "relatively rare" and "easily identified" cases:

> Land-use regulations are ubiquitous and most of them impact property values in some tangential way - - often in completely unanticipated ways. Treating them all as per se takings would transform government regulation into a luxury few governments could afford. By contrast, physical appropriations are relatively rare, easily identified, and usually represent a greater affront to individual property rights. 'This case does not present the 'classi[c] taking' in which the government directly appropriates private property for its own use . . . instead, the interference with property rights 'arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'"

Tahoe-Sierra, 535 U.S. at 324 (emphasis added).

Here, Plaintiffs' physical takings claim is primarily based on three theories: (1) eleven of their alleged water rights were "fenced off," and the 1998 Annual Operating Plan "officially" excluded cattle from the exclosures; (2) the issuance of various environmental assessment documents which Plaintiffs wrongly claim prohibit the transfer of water outside the exclosures; and (3) beginning in 2004, Plaintiffs were not permitted to graze on the Alamo Pasture after February 1st for two years, effecting seven of their water rights. Each of these theories should be dismissed on the grounds that the United States has not physically occupied Plaintiffs' alleged water rights, but has instead imposed restrictions on Plaintiffs' ability to graze on the Sacramento Allotment.

### B. Plaintiffs Have Failed to State a Physical Taking of Their Alleged Water Rights Based on The Presence of Seven Exclosures on the Sacramento Allotment

It is difficult to ascertain what action by the Forest Service Plaintiffs' claim caused a physical taking of their alleged water rights. On the one hand Plaintiffs appear to contend that the physical presence of the seven exclosures caused a physical taking of Plaintiffs' alleged water rights. See Pls.' Br. at 1. On the other hand, Plaintiffs appear to contend that it was the

May 5, 1998 Annual Operating Plan ("AOP")[14] that "'officially' excluded the fenced water sources from the Sacramento Allotment and thereafter prevented access or transfer of this water.[15] Pls.' Br. at 21. Both theories should be rejected.

To the extent that Plaintiffs are claiming that the actual physical presence of the exclosures resulted in a physical taking, Plaintiffs' claim should be dismissed because it is barred by the applicable six year statute of limitations. 28 U.S.C. § 2501. Here, there is no dispute that the exclosures were present on the Allotment in 1989, when Plaintiffs were issued a grazing permit and began grazing their cattle on the Sacramento Allotment. Shortly thereafter, Plaintiffs asked permission to move their cattle into the Penasco exclosure, and were denied. See Doc. 42-32 (1991 letter denying SGA's request to graze cattle within the Penasco exclosure after noting the exclosure was built in 1985 "to protect the Sacramento Mountain Thistle from livestock grazing"); Doc 42-5 (1992 letter denying request to graze cattle within the Penasco exclosure "since the original purpose of the trap or exclosure was to exclude grazing use for the protection of Circium vinaceum habitat and watershed protection").

If Plaintiffs are claiming that the exclosures caused a physical taking of their alleged water rights, Plaintiffs knew or should have known that their physical takings claim existed when they began grazing on the Allotment in 1989, or shortly thereafter. See Hopland Band of

---

[14] Adjustments to the number of cattle and period of use of the grazing allotment are decided on an annual basis by the District Ranger and are described in the AOP, now known as the Annual Operating Instructions ("AOI"). See Martinez Decl. ¶¶ 10-11 (Def. Ex. A).

[15] Plaintiffs wholly fail to explain how the 1998 Annual Operating Plan prevented the "transfer of this water." See Pls.' Br. at 21. As Plaintiffs' Exhibit 8 (Doc. 42-9), clearly shows, the 1998 AOP confirmed that grazing was prohibited in the exclosures, but does not preclude the transfer of water outside the exclosures.

Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (claim accrues when "the claimant knew or should have known that the claim existed") (quoting Kinsey v. United States, 852 F.2d 556, 557 (Fed. Cir. 1988)). Since Plaintiffs did not file their claim against the United States until May 4, 2004, which is more than six years after that date, Plaintiffs' physical takings claim is time-barred by 28 U.S.C. § 2501. See Fallini v. United States, 56 F.3d 1378, 1383 (Fed. Cir. 1995) (quoting Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)) (the statute of limitations analysis must focus "upon the time of the [defendant's] acts, not upon the time at which the consequences of the acts became most painful").

On the other hand, if Plaintiffs are instead contending that the 1998 AOP caused a physical taking of their alleged water rights because it "'officially' excluded the fenced water sources from the Sacramento Allotment," then Plaintiffs' physical takings claim must be dismissed because Plaintiffs' claim is "regulatory in nature."[16/] Goodrich v. United States, 63 Fed. Cl. 477, 480 (2005).

In Goodrich, a case analogous to this one, the plaintiff claimed that an administrative decision by the Forest Service to allow another rancher to graze cattle on the grazing allotment covered by his grazing permit caused a taking of his stockwater rights, which were located on the allotment. 63 Fed. Cl. at 478. The United States raised a statute of limitations defense, and the question of when plaintiff's takings claim accrued turned on whether the nature of the taking was regulatory or physical – i.e., did the claim accrue when the Forest Service issued the Record

---

[16/] As the United States has consistently argued, the exclosures do not prevent Plaintiffs access to their water since, for example, water flows underneath the exclosures. Instead, the purpose and effect of the exclosures is not to prevent water from moving outside the exclosures but to prevent cattle from trampling environmentally sensitive areas on National Forest System lands.

of Decision opening up the allotment to additional ranchers, or did the claim accrue when the other rancher's cattle began "using" the plaintiff's stockwater rights?

The court held:

> The taking alleged by plaintiff is regulatory in nature. Plaintiff's land was never physically occupied by the Government; rather, the Forest Service implemented regulations that determined how plaintiff's land would be used. The Chief of the Forest Service exercised this power under 36 C.F.R. § 222.1 (1996), which confers upon him the authority to 'develop, administer and protect the range resources and [to] permit and regulate the grazing use of all kinds and classes of livestock on all National Forest System lands.' 36 C.F.R. § 222.1(a).

63 Fed. Cl. at 480.

Here, too, any takings claim arising out of the government's regulation of the use of National Forest System lands is "regulatory in nature." The Forest Service made the resource management decision to exclude certain areas of the Allotment from grazing, and then built the exclosures to make sure cattle did not drift into the environmentally sensitive areas that were off-limits to grazing. This is a quintessential regulatory action– the Forest Service implemented a range management decision which affected how Plaintiffs' alleged water rights could be used. In other words, Plaintiffs' grazing permit and AOP made clear that Plaintiffs were not permitted to move their cattle through the exclosures in order to have their cattle drink at water sources located within those exclosures. However, that restriction does not prevent Plaintiffs from exercising their alleged water rights through other means, including having their cattle drink outside the exclosures, through taps on the Sacramento Lake pipeline, or by seeking to transport water within the exclosures to another permissible location either on or off of the Allotment.[17/]

[17/] Moreover, as in Walker, the value of Plaintiffs' alleged water rights "does not depend entirely on stock watering at the same location; the right can be severed from the allotments, moved to other lands, used for other purposes, or even sold." Walker, 162 P.3d at 891-92.

Such "regulatory restrictions on use," must be viewed and analyzed as a regulatory taking, and Plaintiffs' cross-motion should be denied.[18]

**1. Plaintiffs' Reliance on *Hage* is Misplaced**

Plaintiffs cite only one case to support their claim that exclosures built on federal land to manage grazing caused a physical taking. Estate of E. Wayne Hage v. United States, 82 Fed. Cl. 202 (2008).[19] Plaintiffs rely upon this case because Judge Smith determined that the construction of fences "around streams in which Plaintiffs have established a vested water right," amounted to a physical taking during the time plaintiffs held a term grazing permit. Id. at 211. The court held that "the Government did not only cancel Plaintiffs' grazing permit; it actively prevented them from accessing the water through threat of prosecution for trespassing and through the construction of the fences. Clearly these actions prevented Plaintiffs' access to the water and there was plainly a 'physical ouster' which deprived Plaintiffs of the use of their property." Id.

Although the Hage court found a physical taking, the court failed to explain the rationale behind the finding. For example, were the plaintiffs physically denied access to water sources within the fenced area, or did the fences merely preclude plaintiffs' cattle from grazing directly

---

[18] Even if the Court determines that Plaintiffs have alleged a physical taking, Plaintiffs' cross-motion should only be granted with respect to the nature of the taking alleged. The parties will then need to brief whether Plaintiffs actually own any water rights within the exclosures, whether actions by the Forest Service caused a physical taking of Plaintiffs' water rights, and what, if any, just compensation is owed.

[19] There has been no final judgment in Estate of E. Wayne Hage, and the case holds no precedential value. In addition, the Estate of E. Wayne Hage opinion involved Nevada-based water rights, not New Mexico-based water rights.

to the water? Did the plaintiffs seek permission to move their water rights and were denied?[20] Were the plaintiffs' cattle able to access water outside the fenced areas? Did the plaintiffs' grazing permit specifically exclude the fenced areas from grazing as a condition of the permit? None of those questions were answered by the court's decision, making a comparison to the specific facts in this case impossible.

Here, the United States has provided evidence (which Plaintiffs do not deny) that Plaintiffs can access their alleged water rights – water flows through the exclosures, Plaintiffs can access water through taps on the Sacramento Lake pipeline, Plaintiffs can graze cattle directly up to the Sacramento Lake because of the forty-foot lane put in by the Forest Service, and Plaintiffs can move water from inside the Penasco exclosure to outside the exclosure along the routes permitted by the Forest Service. Therefore, Plaintiffs have not been denied access to their alleged water rights; instead, Plaintiffs' cattle have been denied access to the National Forest System lands within the exclosures.

Moreover, the rationale used by the Hage court to find a physical taking is internally inconsistent with the other holdings in the opinion. For example, the court acknowledged that the cancellation of the plaintiffs' grazing permit did not result in the taking of stockwater rights on federal land. 82 Fed. Cl. at 209, n. 8. However, after acknowledging the binding precedent of Colvin Cattle Co. v. United States, 468 F.3d 803 (Fed. Cir. 2006), the court went on to find a

[20] The court did make some findings regarding futility based on the "history" between the parties, which included a previous prosecution for trespass. See Estate of E. Wayne Hage, 82 Fed. Cl. at 212-13. Here, no such "futility" claim can be made when Plaintiffs admit that they have only sought to move water from one exclosure, and the Forest Service offered several other options to help Plaintiffs access the water. See Beekwilder v. United States, 55 Fed. Cl. 54, 61-62 (2002). Accordingly, any futility argument by Plaintiffs is without merit. See Pls.' Br. at 38-39.

temporary physical taking of the stockwater rights during the time plaintiffs held a grazing permit because of the presence of the fences on the allotment.

It is axiomatic that if the government can legally deny a water holder's access to federal lands to graze their cattle directly to a water source by cancelling a grazing permit, then the government can restrict where on a grazing allotment cattle may graze without effecting a taking during the time the water holder holds a grazing permit. See Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1212 (10th Cir. 1999) (noting that courts have uniformly held that the "use of public lands for grazing is not a right but a privilege"). Indeed, the fencing off of certain areas to preclude grazing within those areas is no different than other routine grazing restrictions which limit the times or places where cattle may lawfully graze on the allotments. For example, the agencies routinely put limits on the number of cattle that may graze on the allotments, limit the length of the grazing season, and close various pastures on a seasonal basis to allow forage regrowth. Although each range management decision may limit the ability of plaintiffs to bring cattle directly to a water source at a place and time of their choosing, none of these restrictions amount to a taking because grazing on federal land has always been at the sufferance of the United States. See Light v. United States, 220 U.S. 523, 535 (1911); Buford v. Houtz, 133 U.S. 320, 329 (1890).

Here, the installation of exclosures by the Forest Service was a restriction on grazing by cattle – not a restriction on the use of water. Indeed, there is no evidence in the record that Plaintiffs tried to access their water rights through means other than grazing, with the exception of the Penasco exclosure.

### C. Plaintiffs Have Failed to State a Physical Taking of Their Alleged Water Rights Based on the Issuance of a Biological Opinion and

**Other Environmental Assessment Documents**

Plaintiffs' physical takings claim is based on the wholly conjectural statement that "[t]ransferring the water out of the exclosures will not be permitted because of the USFWS requirements for the protection of cirsium and its riparian habitat. All of the water in the exclosures is needed for the protection of cirsium." Pls.' Br. at 24. More specifically, Plaintiffs contend that the "effect of the [February 4, 2004] Biological Opinion is to preclude the use of the exclosures for cattle grazing and to prevent the movement of water outside the exclosures." Pls.' Br. at 8 (emphasis added). Contrary to Plaintiffs' assertions, there is nothing in the referenced documents that prevents or precludes the movement of water outside of the exclosures, nor has the Forest Service's management of the Sacramento Allotment prevented the flow of water outside of the exclosures.

The Biological Opinion is a document issued by the U.S. Fish and Wildlife Service ("FWS") based on its review of the Forest Service's "proposed action" of issuing a new ten-year grazing permit for the Sacramento Allotment. See Doc. 43-4. The Biological Opinion analyzes the potential impacts of the proposed action on several endangered or threatened plants and animals. Id. As a result, the Biological Opinion focuses on the effect of grazing livestock on the Sacramento Allotment, including the effect of trampling endangered plants. There is nothing in the Biological Opinion, or any of the other documents cited by Plaintiffs, which prevents the transfer of water outside any of the exclosures. Indeed, the Recovery Plan relied upon so heavily by Plaintiffs specifically states that there would be no harm to the thistle "if the point of diversion is immediately below the spring." See Doc. 43-3, p. 11 of 30 ("Water rights can be acquired without threat to Sacramento Mountain thistle spring habitats if the point of diversion is

immediately below the spring."); Doc. 43-3, p. 18 of 30 (recommending that any spring habitat development policy established "should prohibit point of diversion development without suitable habitat, but allow water collection immediately below occupied travertine substrate.").

Moreover, Plaintiffs can point to no instance where the Forest Service interfered with the flow of water outside the exclosure, and in fact, Plaintiffs concede that the Forest Service has agreed to "not interfere with the flow." See Goss Decl. ¶ 10 (Doc. 42). Further, when Plaintiffs asked permission to use the government's land to move water from within the Penasco exclosure, the Forest Supervisor offered several options which involved taking water from within the exclosure and piping it elsewhere. Therefore, Plaintiffs' claim that any request to move water would "violate the USFWS requirements for protection of the riparian areas, habitat and endangered species within the exclosures," is speculative, contrary to the factual record, and without merit. See Pls.' Br. at 34.

Regardless of the lack of merit of Plaintiffs' argument, the Court only needs to decide the nature of the taking alleged by Plaintiffs. Plaintiffs' claim that the Biological Opinion (and other environmental assessment documents) caused a physical taking should be rejected because the actions taken by the Forest Service, including its preparation of a draft Environmental Impact Statement ("EIS") regarding the impacts of authorized livestock grazing on the Sacramento Allotment and a Biological Assessment of the potential impacts of such activities on certain protected plants and animals, its consultation with the FWS regarding those potential impacts, the resulting issuance of a Biological Opinion by the FWS, and the Forest Service's subsequent issuance of its final EIS and Record of Decision, are decidedly "regulatory in nature." Goodrich, 63 Fed. Cl. at 480. This is not a case in which a plaintiffs' property has been

physically occupied by the government. Instead, the Biological Opinion reinforced the Forest Service's range management decision, documented in the EIS and the ROD, to exclude livestock use in the exclosures. This action is regulatory in nature and Plaintiffs' attempt to morph their claims based on such action into physical takings claims should be rejected.

### D. Plaintiffs Have Failed to State a Physical Taking of Their Alleged Water Rights Based on Grazing Restrictions on the Alamo Pasture

Similarly, Plaintiffs' claim that their alleged water rights located on the Alamo Pasture have been physically taken must be denied because such a claim is also "regulatory in nature." Goodrich, 63 Fed. Cl. at 480. Plaintiffs complain that "the ROD required the removal of livestock from the Alamo Pasture by February 1 for two years to protect Sacramento Mountains prickly poppy. . . . However, SGA is still prohibited from using the Alamo Pasture after February 1, 2008." Pls.' Br. at 8. Plaintiffs are correct that the Forest Service made the range management decision to rest the Alamo Pasture after February 1st for two years based on the ROD, beginning in 2004. Therefore, in 2004 and 2005 full season use of the Alamo Pasture was modified as per the 2004 so that grazing was allowed from November 1st to January 31st. See Martinez Decl. ¶ 5 (Def. Ex. I). However, the 2005 AOI states that full season use (November 1st to May 14th) was authorized for 2006, and has been every year since. See id. ¶ 5 (Def. Ex. I); see Def. Ex. J. Therefore, Plaintiffs are wrong when they state that they are prohibited from using the Alamo Pasture after February 1st.

Again, regardless of the lack of merit of Plaintiffs' argument, the Court only needs to decide the nature of the taking alleged by Plaintiffs. Plaintiffs cannot make the argument that the ROD resulted in a physical occupation of their alleged water rights on the Alamo Pasture. Instead, the ROD documents the implementation of certain regulatory restrictions on the use of

federal lands included in the Sacramento Allotment. To the extent that the Forest Service's management of such lands, including any restrictions or limitations imposed on grazing within the Alamo Pasture, affected Plaintiffs' use of their alleged water rights, any takings claims arising from such restrictions or limitations is necessarily regulatory in nature. Accordingly, Plaintiffs' physical takings claim must be rejected and Plaintiffs' cross-motion should be denied.

## CONCLUSION

For the reasons set forth in the Government's Memorandum in Support of its Motion for Summary Judgment, and for the reasons set forth above, Defendant respectfully requests that the Court grant its motion for summary judgment, and deny Plaintiffs' cross-motion.

DATED: September 12, 2008

Respectfully submitted,
RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ Kathleen Doster
KATHLEEN DOSTER
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Telephone No.: (202) 305-0481
Facsimile No.: (202) 305-0506
E-mail: kathleen.doster@usdoj.gov

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Telephone No.: (603) 230-2583

Facsimile No.: (603) 225-1577

OF COUNSEL:

MARY ANN JOCA
Assistant Regional Attorney
Office of the General Counsel
United States Dept. of Agriculture
P.O. Box 586
Albuquerque, N.M. 87103-0586