# In the United States Court of Federal Claims

No. 04-786L
Filed: November 1, 2010
**TO BE PUBLISHED**

*******************************************

|  |  |  |
|---|---|---|
|  | * | Certification Order, N.M. R. App. P. 12-607; |
|  | * | Declaration of Water Right Ownership, N.M. |
|  | * | Stat. Ann. § 72-1-3; |
|  | * | Endangered Species Act, |
|  | * | 16 U.S.C. § 1531, *et seq.*; |
| SACRAMENTO GRAZING ASS'N, INC., | * | Mining Act of 1866, 43 U.S.C. § 661; |
| et al., | * | Motion for Summary Judgment, |
|  | * | RCFC 56(c); |
| Plaintiffs, | * | NEW MEXICO CONSTITUTION, art. XVI, § 3; |
|  | * | Physical or *Per Se* Taking; |
| v. | * | Property Right; |
|  | * | Range Stock Water Rights, N.M. Stat. Ann. |
| THE UNITED STATES, | * | § 19-3-13; |
|  | * | Regulatory Taking; |
| Defendant. | * | Riparian Exclosures; |
|  | * | Standing; |
|  | * | Statute of Limitations, 28 U.S.C. § 2501; |
|  | * | UNITED STATES CONSTITUTION amend. V; |
|  | * | 43 U.S.C. § 1752(g); |
|  | * | RCFC 8(d)(1). |

*******************************************

**Michael Joseph Van Zandt**, McQuaid Bedford & Van Zandt, San Francisco, California, Counsel for Plaintiffs.

**Kristine Sears Tardiff**, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., Counsel for Defendant.

**Mary Ann Joca**, Assistant Regional Attorney, Office of General Counsel, Department of Agriculture, Albuquerque, New Mexico, of Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PENDING MOTIONS FOR SUMMARY JUDGMENT.

**BRADEN, *Judge*.**

The New Mexico Constitution provides that "[b]eneficial use shall be the basis, the measure[,] and the limit of the right to the use of water." NEW MEXICO CONSTITUTION, art. XVI, § 3. The Takings Clause of the United States Constitution guarantees that "private property

[shall not] be taken for public use without just compensation."   UNITED STATES CONSTITUTION amend. V.

The core issue in this case is whether the United States Forest Service ("USFS") has affected a taking of the beneficial use of certain water sources located on the Sacramento Grazing Allotment  owned by the Sacramento Grazing Association, Inc. and the Goss Family. Before the court are cross motions for summary judgment that seek adjudication to narrow and focus this issue.

To facilitate a review of this Memorandum Opinion and Order, the court has provided the following outline:

**I.      RELEVANT FACTS.**

**II.     PROCEDURAL HISTORY.**

**III.    JURISDICTION.**

      **A.      The First Amended Complaint Properly Invoked The Jurisdiction Of The United States Court Of Federal Claims.**

      **B.      The Statute of Limitations Does Not Bar The Court From Adjudicating The Takings Claims Alleged In The First Amended Complaint.**

            **1.      The Parties' Arguments.**

            **2.      The Court's Resolution.**

      **C.      Plaintiff Has Standing.**

**IV.    APPLICABLE STANDARDS OF REVIEW.**

**V.     DISCUSSION.**

      **A.      The Government's Motion For Summary Judgment.**

            **1.      Is Granted As To The United States Forest Services' Alleged Taking Of Plaintiffs' Alleged Right To Forage.**

            **2.      Is Granted As To The United States Forest Services' Alleged Taking Of Plaintiffs' Grazing Permit No. 08-1250 And/Or Alleged Preference Grazing Right.**

            **3.      Is Granted As To The United States Forest Services' Alleged Taking Of Plaintiffs' Alleged Right-Of-Way Over Federal Lands.**

4.      **Is Granted-In-Part And Denied-In-Part As To The United States Forest Services' Alleged Taking Of The Goss Ranch.**

5.      **Is Denied As To The United States Forest Services' Alleged Taking Of Plaintiffs' Rights To Use Water In The Peñasco Exclosure.**

6.      **Is Denied As To The United States Forest Services' Alleged Taking Of Plaintiffs' Right To Use Water Within Federal Riparian Exclosures.**

B.      **Plaintiff's Cross Motion For Summary Judgment.**

1.      **Is Granted In-Part, As Plaintiffs Have Established Ownership Of Certain Vested Range Stock Water Rights Within The Sacramento Allotment.**

2.      **Is Denied In-Part, Because Genuine Issues Of Material Fact Exist As To Whether Actions Of The United States Forest Service Have Affected A Taking Of Plaintiffs' Right To Use Their Vested Range Stock Water Rights Within The Sacramento Grazing Allotment.**

VI.     **CONCLUSION.**

\* \* \*

I.      **RELEVANT FACTS.**[1]

Plaintiff Sacramento Grazing Association ("SGA") is a New Mexico corporation, the individual and sole shareholders of which are Plaintiffs: James Goss, Frances Goss, Justin Goss, and Brenna Goss (collectively hereinafter referred to as "Plaintiffs"). Am. Compl. ¶ 4.  In 1989, Plaintiffs began to purchase parcels of land in Otero County, New Mexico from the Sacramento Cattle Company, as well as "cattle, water rights, range rights, grazing rights, forage rights, access rights, and range improvements on the base property, as well as on the appurtenant federally administered grazing allotment, known as the Sacramento Grazing Allotment[.]" *Id.* at ¶¶ 8-9. The Sacramento Grazing Allotment includes approximately 111,000 acres within the Lincoln National Forest, located in southeastern New Mexico, that is administered by the United States

---

[1] The facts herein previously were discussed in *Sacramento Grazing Ass'n* v. *United States,* 66 Fed. Cl. 211 (2005) ("*Sacramento Grazing I*") and/or derived from: the October 4, 2004 Government Appendix Exhibits ("Gov't App. Ex. A-G"); the September 6, 2005 First Amended Complaint ("Am. Compl."); the April 29, 2008 Government Exhibits A-G ("Gov't Ex. A-G"); the August 15, 2008 Declaration of Michael Van Zandt ("8/15/08 Van Zandt Dec.") and attached Exhibits A-E ("8/15/08 Van Zandt Dec. Ex. A-E"); the August 15, 2008 Declaration of Frances Goss ("8/15/08 Goss Dec.") and attached Exhibits 1-33 ("8/15/08 Goss Dec. Ex. 1-33"); the September 12, 2008 Government Exhibits H-J ("Gov't Ex. H-J"); the October 10, 2008 Declaration of Michael Van Zandt ("10/10/08 Van Zandt Dec."); and the October 10, 2008 Declaration of Frances Goss ("10/10/08 Goss Dec.").

Forest Service ("USFS").  *Id.* at ¶ 8.  The water rights acquired by Plaintiffs, known as stock range water rights,[2] originate in and around the Sacramento Grazing Allotment.  8/15/08 Goss Dec. ¶ 5.  By 1997, Plaintiffs had acquired approximately 80 acres now known as the Goss Ranch.  Am. Compl. ¶¶ 8-9.

Each year, the USFS District Ranger decides the number of cattle that Plaintiffs are allowed to graze on the Sacramento Grazing Allotment, the length of the grazing season, and allowable utilization levels of forage species.  Gov't Ex. A ¶ 10 (4/28/08 Martinez Dec.).  This information is published in Annual Operating Instructions ("AOI"), formerly known as the Annual Operating Plan ("AOP").  *Id.*  AOI are required for the proper administration of the Sacramento Grazing Allotment, because the conditions on the allotment often differ from one grazing season to another.  *Id.*  Every year, prior to the issuance of the AOI, the USFS District Ranger is required to consult with permittees to review any requested adjustments.  *Id.* at ¶11.

On November 27, 1989, the USFS District Ranger issued Grazing Permit No. 08-1105 to SGA, allowing 553 head of cattle to graze on the Sacramento Allotment for a ten year period, "unless modified by the Forest Service in the Bill for Collection."  Gov't Ex. B at 1.  On May 5, 1998, however, the USFS District Ranger issued an Amendment to the 1998 AOP for the Sacramento Allotment, that excluded seven riparian exclosures from livestock grazing activities.  8/15/08 Goss Dec. Ex. 8 at 1.

The May 5, 1998 AOP Amendment specifically provided that:

> Every effort must be made to keep livestock out of these [exclosures]. Maintenance of the exclosure fences is the responsibility of the Forest Service. We will make every effort to insure [sic] these fences are properly maintained.  It is [SGA's] responsibility to take prompt action in removing livestock from these areas when they are found inside an exclosure.  Failure to do so is a violation of the Terms and Conditions of your grazing permit which could result in a possible suspension or cancellation of your grazing permit.

8/15/08 Goss Dec. Ex. 8 at 1.

These riparian exclosures are identified in the following map ("COURT EXHIBIT A") as: the Sacramento Lake Exclosure; the Hubbell Exclosure; the Upper Mauldin Exclosure; the

---

[2] New Mexico law recognizes that:

> Any person, company or corporation that may appropriate and stock a range upon the public domain of the United States, or otherwise, with cattle shall be deemed to be in possession thereof: provided, that such person, company or corporation shall lawfully possess or occupy, or be the lawful owner or possessor of sufficient living, permanent water upon such range for the proper maintenance of such cattle.

N.M. Stat. Ann. § 19-3-13.

Lower Mauldin Exclosure; the Upper Peñasco Exclosure; the Bluff Spring Exclosure; and the Western Riparian Exclosure. [3]   Gov't Ex. A ¶ 14 (4/28/08 Martinez Dec.); 8/15/08 Goss Dec. Ex. 2 at 11; 8/15/08 Goss Dec. Ex. 8 at 1.

---

[3] The Water Canyon exclosures shown in COURT EXHIBIT A were constructed after USFS issued the AOP for the Sacramento Allotment on January 17, 2006.  8/15/08 Goss Dec. Ex. 2 at 12.



# Sacramento, Dry Canyon, and Davis Grazing Allotments

## Exclosures and Pastures

Sacramento Ranger District
Lincoln National Forest

## EXHIBIT A

### Legend

- Exclosure
- Davis
- Dry Canyon
- Sacramento Summer Pasture
- Sacramento Winter Pasture
- Private

1:48,000

0 0.5 1 2 Miles

Dry Canyon Allotment
(Winter Use Only)

Davis Allotment
(Closed to Grazing)

Nelson

Alamo

Atkinson

Upper Penasco Exclosure

Penasco Trap

Bluff Springs Exclosure

North

Water Canyon Exclosure

Water Canyon Exclosure

Water Canyon Exclosure

Wills Canyon Trap

Upper Mauldin Exclosure

Lower Mauldin Exclosure

South

Hubbell Springs Exclosure

Mule

Sacramento Lake Exclosure

Goss Ranch

Pasture Ridge

Western Riparian Exclosure

Grapevine

This product is reproduced from geospatial information prepared by the U.S. Department of Agriculture, Forest Service. GIS data and product accuracy may vary. They may be: developed from sources of differing accuracy, accurate only at certain scales, based on modeling or interpretation, incomplete while being created or revised, etc. Using GIS

Plaintiffs assert ownership of vested range water rights to eleven water sources within these exclosures.  8/15/08 Goss Dec. ¶ 10.

On November 23, 1999, the USFS District Ranger issued Grazing Permit No. 08-1250 to SGA for a ten year term, until November 23, 2009.  Gov't Ex. C.  This permit authorized Plaintiffs to graze 553 head of cattle, but specified that the permit could be:

> cancelled, in whole or in part, or otherwise modified, at any time during the term to conform with needed changes brought about by law, regulation, Executive order, allotment management plans, land management planning, numbers permitted or seasons of use necessary because of resource conditions, or the lands described otherwise being unavailable for grazing.

Gov't Ex. C at 2.  In addition, Grazing Permit No. 08-1250 provided that: "Exclosures . . . are considered special emphasis areas and not part of the Sacramento Allotment.  Livestock use is not permitted within the exclosures and will be removed in a timely manner."  Gov't Ex. C at 6.

On May 8, 2000, the USFS District Ranger amended the 2000 AOI for the Sacramento Allotment to reduce the number of livestock allowed to graze during the summer from 553 cattle to 428 cattle.  Gov't App. Ex. C ¶ 12 (8/31/04 Martinez Dec.).  On August 2, 2000, an Acting USFS District Ranger ordered an additional reduction of 98 cattle, because of the "excessive forage use that was occurring on the Allotment that was inconsistent with forage use requirements[.]"  *Id.*  On September 8, 2000, USFS partially suspended Grazing Permit No. 08-1250, because SGA failed to remove livestock as directed.  Gov't App. Ex. C ¶ 6 (8/31/04 Martinez Dec.).  This partial suspension reduced the number of authorized livestock by 40% for two years.  *Id.*

In 2001, Plaintiffs requested permission from the USFS District Ranger to pipe water out of the Upper Peñasco Exclosure through a culvert beneath a nearby road to an adjoining pasture where no water was present.  8/15/08 Goss Dec. ¶ 8; *see also* 8/15/08 Goss Dec. Ex. 19.  This request was denied, because the USFS District Ranger decided this diversion of water would cause cattle to congregate in a meadow bottom adjacent to a scenic byway and would not be a "best management practice."  Gov't Ex. A ¶ 18 (4/28/08 Martinez Dec.); *see also* 8/15/08 Goss Dec. Ex. 19.

On October 28, 2003, the USFS District Ranger further reduced the number of SGA cattle authorized to graze during the winter season from 330 to 230, because of below normal forage production resulting from drought conditions.  Gov't App. Ex. C ¶ 13 (8/31/04 Martinez Dec.).

On December 19, 2003, the USFS District Ranger again imposed a partial suspension on Grazing Permit No. 08-1250 for non-compliance, but withdrew the suspension when SGA agreed to make good faith efforts to comply with the permit's terms and conditions and applicable AOI.  Gov't App. Ex. C ¶ 7 (8/31/04 Martinez Dec.).

The 2004-05 AOI authorized SGA to graze 230 cattle on the Sacramento Allotment from March 1, 2004 to May 15, 2004 and 275 cattle from May 16, 2004 to February 28, 2005. 8/15/08 Goss Dec. Ex. 23 at 2.

On February 4, 2004, the Fish and Wildlife Service, a Bureau of the Department of Interior, issued a BIOLOGICAL OPINION ON THE EFFECTS TO THE MEXICAN SPOTTED OWL, SACRAMENTO MOUNTAINS THISTLE, AND SACRAMENTO MOUNTAINS PRICKLY POPPY FROM THE PROPOSALS TO ISSUE A PERMIT FOR THE SACRAMENTO GRAZING ALLOTMENT.   8/15/08 Van Zandt Dec. Ex. C. at 1 ("February 4, 2004 Biological Opinion").   The February 4, 2004 Biological Opinion stated that USFS proposed to issue "a 10-year term grazing permit for the Sacramento Allotment for 200 to 412 cattle. . .  on the summer range and 200 to 335 cattle. . .  on the winter [range]."  *Id*. at 7.  The February 4, 2004 Biological Opinion also recommended the exclusion of livestock from exclosures at all times.  *Id*. at 12.

On July 28, 2004, USFS issued a "Record of Decision, Final Environmental Impact Statement, Sacramento, Dry Canyon and Davis Grazing Allotments" ("July 28, 2004 Record of Decision"), implementing most of the recommendations of the February 4, 2004 Biological Opinion. 8/15/08 Van Zandt Dec. Ex. D at 6, 11-13.  In addition to reducing the overall number of livestock that could graze on the Sacramento Allotment, the July 28, 2004 Record of Decision:

> Exclude[d] livestock grazing with temporary fencing on future revegetation projects and on sites where livestock grazing is hindering natural revegetation.

> Allow[ed] no livestock forage use in grazing exclosures.

> Install[ed] proposed exclosures in the Peñasco Trap to protect *Circium*[4] and *Rumex*.[5]

> Install[ed] proposed exclosures in the Wills Canyon with the Wills Trap to protect *Circium*.

> Install[ed] 3/4 mile of new fence along the west side of Forest Road 164 in the Upper Peñasco riparian exclosure to prevent incidental use during trailing.  This is a modification of an existing riparian exclosure.

---

[4] *Cirsium vinaceum*, commonly known as the Sacramento Mountains Thistle, is listed as a threatened species and is found only in southern New Mexico.  *See* United States Department of Agriculture, Natural Resources Conversation Service, http://plants.usda.gov/java/profile ?symbol =CIVI4.

[5] *Rumex orthoneurus*, commonly known as the Chiricahua Mountain dock, is found in parts of New Mexico and Arizona.  *See* United States Department of Agriculture, Natural Resources Conversation Service, http://plants.usda.gov/java/profile?symbol=RUOR3.

> Remove[d] livestock from the Alamo Pasture by February 1 for two years to protect the Sacramento Mountain prickly poppy.

*Id*. at 6-7.

On June 10, 2005, the USFS District Ranger requested that Plaintiffs sign a new ten-year grazing permit or have their current permit modified to comply with the livestock reductions required by the July 28, 2004 Record of Decision.  Gov't Ex. A ¶ 8 (4/28/08 Martinez Dec.); 8/15/08 Goss Dec. ¶ 23.  Plaintiffs declined, because Grazing Permit No. 08-1250 did not expire until 2009.  *Id*.  On January 17, 2006, however, the USFS District Ranger unilaterally modified Grazing Permit No. 08-1250 to reduce the number of cattle authorized to graze on the summer range to 412, and on the winter range to 335.  Gov't Ex. A ¶ 9 (4/28/08 Martinez Dec.).

For the 2008 grazing season, which runs from March 1, 2008 to February 28, 2009, "the AOI authorize[d] SGA to graze up to 370 cattle on the [a]llotment."  *Id*. ¶ 12.

The following chart summarizes the number of cattle the USFS District Ranger authorized SGA to graze on the Sacramento Allotment from November 27, 1989 to February 28, 2009.

**COURT EXHIBIT B**

| Date | Source of Authority (Record Citation) | Head of Cattle Permitted to Graze on Sacramento Allotment |
|---|---|---|
| November 27, 1989 | Grazing Permit 08-1105 (Gov't Ex. B at 1) | 553 |
| November 23, 1999 | Grazing Permit 08-1250 (Gov't Ex. C) | 553 |
| May 8, 2000 | 2000 AOI (Gov't App. Ex. C ¶ 12 (8/31/04 Martinez Dec.)) | 428 |
| August 2, 2000 | USFS District Ranger Order (Gov't App. Ex. C ¶ 12 (8/31/04 Martinez Dec.)) | 330 |
| September 8, 2000 | 2-Year Partial Suspension of Grazing Permit 08-1250 (Gov't App. Ex. C ¶ 6 (8/31/04 Martinez Dec.)) | 198 |
| October 28, 2003 | USFS District Ranger Order Due to Drought Conditions (Gov't App. Ex. C ¶ 13 (8/31/04 Martinez Dec.)) | 230 |
| April 23, 2004 | 2004-05 AOI (8/15/08 Goss Dec. Ex. 23 at 2) | 230 - March-May 275 - May-Feb. |
| January 17, 2006 | Modification to comply with July 28, 2004 USFS Record of Decision (Gov't Ex. A. ¶ 9 (4/28/08 Martinez Dec.)) | 412 - Summer 335 - Winter |
| March 1, 2008 | 2008 AOI (Gov't Ex. A. ¶ 12 (4/28/08 Martinez Dec.)) | 370 |

To date, Plaintiffs' grazing permit has been suspended, but never cancelled.  8/15/08 Goss Dec. ¶ 12.

## II.   PROCEDURAL HISTORY.

On May 4, 2004, Plaintiffs filed a Complaint in the United States Court of Federal Claims with two causes of action: (1) a claim that the Government affected a taking of Plaintiffs' water rights, ranch, and preference grazing right without just compensation under the Takings Clause of the Fifth Amendment of the United States Constitution; and, (2) a claim for compensation pursuant to 43 U.S.C. § 1752(g)[6] for the *de facto* cancellation of Plaintiffs' grazing permit.

---

[6] 43 U.S.C. § 1752(g) reads in relevant part:

"Whenever a permit or lease for grazing domestic livestock is canceled in whole or in part, in order to devote the lands covered by the permit or lease to another public purpose, including disposal, the permittee or lessee shall receive from the United States a

On September 30, 2004, the Government filed an Answer.  On October 5, 2004, the Government filed a Motion To Partially Dismiss The Complaint or, Alternatively, Summary Judgment.  On November 22, 2004, Plaintiffs filed an Opposition.  On December 9, 2004, the Government filed a Reply.

On June 30, 2005, the court issued a Memorandum Opinion And Order, dismissing Plaintiffs' claim for compensation under 43 U.S.C. § 1752(g), without prejudice, on the grounds that it was "not ripe for adjudication."  *Sacramento Grazing I*, 66 Fed. Cl. at 214.  The court also determined that the water rights takings claim alleged in the May 4, 2004 Complaint did not meet the requirements of RCFC 8(d)(1).[7]  Plaintiffs were afforded leave to amend to "state with specificity the precise water rights [at issue] under the laws of the State of New Mexico[,] and how and when such rights were acquired."  *Id*. at 215.  The court, however, dismissed Plaintiffs' "Takings Clause claim regarding Grazing Permit No. 08-1250 and/or a grazing preference in the Sacramento Allotment," because the United States Court of Appeals for the Federal Circuit has held that a grazing permit is not "a property interest compensable under the Fifth Amendment." *Id*. (quoting *Alves* v. *United States,* 133 F.3d 1454, 1457 (Fed. Cir. 1998)).

On September 6, 2005, Plaintiffs filed a First Amended Complaint ("Am. Compl.").  The first cause of action alleged that the USFS affected a taking of Plaintiffs' vested range stock water rights in 135 water sources found or originating in the Sacramento Allotment (Am. Compl. ¶¶ 30-32 and Exhibit A), and a taking of the Goss Ranch (Am. Compl. ¶¶ 30, 33).  This cause of action also alleged that the USFS affected a taking of Plaintiffs' preference grazing rights in the Sacramento Allotment.  Am. Compl. ¶¶ 30, 34.  The allegations set forth in the first cause of action were asserted to violate the Takings Clause of the Fifth Amendment to the United States Constitution.  Am. Compl. ¶ 31.  The second cause of action alleged that the USFS's actions amounted to a *de facto* cancellation of Plaintiffs' grazing permit, in violation of 43 U.S.C. § 1752(g).  Am. Compl. ¶¶ 30, 35-38.

On March 22, 2006, the parties filed a Joint Motion To Stay, pending a definitive ruling by the New Mexico Supreme Court in a different case pending before the undersigned judge, wherein the court certified two questions of state law for resolution.[8]  On March 27, 2006, the court granted the requested stay.

---

reasonable compensation for the adjusted value, to be determined by the Secretary concerned, of his interest in authorized permanent improvements placed or constructed by the permittee or lessee on lands covered by such permit or lease, but not to exceed the fair market value of the terminated portion of the permittee's or lessee's interest therein."

43 U.S.C. § 1752(g).

[7]  Rule 8(d)(1) of the United States Court of Federal Claims requires that: "Each allegation must be simple, concise, and direct."  RCFC 8(d)(1).

[8]  The plaintiffs in *Walker* v. *United States*, 04-155, were owners of a cattle ranch in New Mexico that were granted a permit to graze their cattle on two separate federal allotments.  *See Walker* v. *United States*, 66 Fed. Cl. 57, 57-58 (2005) ("*Walker I*").  After the cancellation of

their grazing permit, the Walker Plaintiffs filed a claim in this court on February 5, 2004 seeking compensation pursuant to 43 U.S.C. § 1752(g), and "alleging a taking of: water rights on the allotments through physical appropriation of the water and a denial of all economic uses of the water, including a deprivation of all reasonable, investment-backed expectations; the Walker Ranch, in that the water, forage, and grazing rights are essential to ranch operations, depriving the Walkers of all economically viable use thereof and all reasonable, investment-backed expectations; and the Walkers' preference grazing rights in the allotments." *Walker I*, 66 Fed. Cl. at 61.

On October 31, 2005, the undersigned judge issued a Certification Order to the Supreme Court of New Mexico, pursuant to N.M. R. App. P. 12-607, requesting an answer to two questions of state law:

1.  Does the law of the State of New Mexico recognize a limited forage right implicit in a vested water right?

2.  Does the law of the State of New Mexico recognize a limited forage right implicit in a right-of-way for the maintenance and enjoyment of a vested water right?

*Walker* v. *United States*, 69 Fed. Cl. 222, 232-33 (2005) ("*Walker II*").

On June 21, 2007, the Supreme Court of New Mexico held that, although New Mexico law may "purport to grant 'possessory' interests in public domain lands that may be enforceable against non-federal claimants, no New Mexico statute grants (*nor could it grant*) a property interest in federal lands that may be enforced against the United States." *Walker* v. *United States*, 162 P.3d 882, 887 (N.M. 2007) ("*Walker III*") (quoting *Diamond Bar Cattle Co.* v. *United States*, 168 F.3d 1209, 1214 (10th Cir. 1999)) (emphasis in original).

The Supreme Court of New Mexico next discussed in detail the "Foundational Principals and Historical Development of New Mexico Water Law." *Walker III*, 162 P.3d at 888-90 (bold omitted).  Under the prior appropriation doctrine that "governs water law in New Mexico . . . the right to use water is considered a property right which is separate and distinct from ownership of the land." *Id.* at 888 (internal citations and quotations omitted).  Therefore, "[w]ater rights are . . . not tied to a particular location or even a particular source, [and]. . . are not considered ownership in any particular water source, but rather a *right to use* a certain amount of water to which one has a claim." *Id.* (emphasis added).  For this reason, water rights may be "severed from land and applied to another use at a different location." *Id.* at 891.

Specifically, the Supreme Court of New Mexico rejected the argument that customary practice expanded the vested stock watering right to include a right to forage. *Id.* at 894.  Any right to graze "must come from an independent source of authority related to the land." *Id.* Therefore, "neither the laws of New Mexico nor customary practice support the claim to an implicit 'possessory' right to graze on the public domain that attaches to a water right." *Id.*

As for the second certified question, the Supreme Court of New Mexico held that N.M. Stat. Ann. § 19-3-13 "does not directly implicate any form of right-of-way or easement." *Walker III*, 162 P.3d at 895.  Under New Mexico law, "a right-of-way over private property for the use of a water right is limited to 'storage or conveyance' of the water." *Id.* at 896.  Thus, "while [the Walker Plaintiffs] might, at least in theory, have the right to move their water to their cattle, it is outside the scope of any statutory right-of-way to move cattle to the water, and incidentally have them graze along the way." *Id.*  In sum, "the laws of New Mexico do not support [a] claim to a

Following the New Mexico Supreme Court's June 21, 2007 decision, the parties in this case filed a Joint Status Report on July 26, 2007 to discuss how to proceed.  On August 21, 2007, the court issued an Order lifting the March 27, 2006 stay and establishing a new schedule.

On April 29, 2008, the Government filed a Motion For Summary Judgment And Memorandum In Support Thereof ("Gov't S.J. Mot."), together with supporting exhibits.  On August 15, 2008, Plaintiffs filed a Cross-Motion For Summary Judgment, Opposition To Defendant's Motion For Summary Judgment, And Memorandum In Support Thereof ("Pl. Cross Mot. and Opp."), together with supporting exhibits.  On September 12, 2008, the Government filed an Opposition To Plaintiffs' Cross-Motion For Summary Judgment And Reply In Support Of Defendant's Motion For Summary Judgment ("Gov't Opp. and Reply"), with additional supporting exhibits.  On October 10, 2008, Plaintiff filed a Reply To Defendant's Opposition To Cross-Motion For Summary Judgment ("Pl. Reply"), with additional supporting exhibits.

On January 22, 2009 and February 6, 2009, the court convened telephone status conferences to clarify issues regarding the parties' cross-motions for summary judgment and to schedule oral argument.  On March 24, 2009, the court held an oral argument in San Francisco, California.

On May 14, 2009 and June 4, 2009, the court convened additional status conferences to ascertain whether the parties thought that settlement discussions may be productive.  The parties agreed.  Accordingly, on June 4, 2009, the court entered an Order to stay proceedings and appointed the Honorable Charles F. Lettow as Settlement Judge.  On October 1, 2009, the court convened a status conference and entered an Order continuing the stay until February 1, 2010.  On February 24, 2010, the court convened another status conference and entered an Order continuing the stay until April 21, 2010.  On April 21, 2010, the date the stay was set to expire, the court convened another status conference at which the parties advised the court that settlement discussions had concluded with only partial success, and the stay should be lifted.  As a result, the parties requested that the court proceed to adjudicate the pending cross motions filed in 2008.

On June 10, 2010, the court directed the parties to file any additional arguments and supplemental authority they wished the court to consider.  On June 18, 2010, Plaintiffs filed a Supplemental Brief ("Pl. Supp. Br."), as did the Government ("Gov't Supp. Br.").

## III.    JURISDICTION.

### A.    The First Amended Complaint Properly Invoked The Jurisdiction Of The United States Court Of Federal Claims.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  *See* 28 U.S.C. § 1491.  The Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any

---

forage right on federal lands implicit in [a] right-of-way for the maintenance and enjoyment of a vested water right."  *Id.*

regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).   The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976).   Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").   The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

The United States Court of Appeals for the Federal Circuit has held that the Takings Clause of the Fifth Amendment is "money-mandating." *See Schooner Harbor Ventures, Inc.* v. *United States*, 569 F.3d 1359, 1362 (Fed. Cir. 2009) ("The Tucker Act waives sovereign immunity and provides jurisdiction for certain types of claims, including . . . where there is a money-mandating provision on which the plaintiff may base its recovery. . . . In this case, that provision is the Fifth Amendment.") (citing *Fisher*, 402 F.3d at 1172; *Moden* v. *United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005)).   Therefore, "to the extent [Plaintiffs] have a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper." *Moden*, 404 F.3d at 1341.

The September 6, 2005 Amended Complaint alleges "a taking of property within the meaning of the Fifth Amendment to the Constitution of the United States for which compensation is due and owing," that properly invoked the jurisdiction of the United States Court of Federal Claims under 28 U.S.C. § 1491(a)(1).   Am. Compl. ¶¶ 1, 30-34.

### B.      The Statute of Limitations Does Not Bar The Court From Adjudicating The Takings Claims Alleged In The First Amended Complaint.

Section 2501, Title 28, of the United States Code states: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.   In *John R. Sand & Gravel Co.* v. *United States,* 552 U.S. 130 (2008), the United States Supreme Court held that 28 U.S.C. § 2501 is jurisdictional and cannot be waived or tolled based on equitable considerations:

> Some statutes of limitations . . . seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as . . . limiting the scope of a governmental waiver of sovereign immunity.   The Court has often read the time limits of these statutes as more absolute . . . .   [T]he Court has sometimes referred to the time limits in such statutes as 'jurisdictional.' This Court has long interpreted the court of claims limitations statute as setting forth this . . . more absolute, kind of limitations period.

*Id.* at 133-34.

The Government argues that the takings claims alleged in the September 6, 2005 Amended Complaint are barred by the six year statute of limitations, because the exclosures were constructed prior to the issuance of Plaintiffs' first grazing permit on November 27, 1989. Gov't Opp. And Reply at 20; Gov't Opp. And Reply Ex. I ¶¶ 3-4 ("9/12/08 Martinez Dec.") ("There are seven main exclosures located within the Sacramento Allotment.  The exclosures were built prior to 1989 when Sacramento Grazing Association was issued a term grazing permit.").  As a result, Plaintiffs knew or should have known that "their physical takings claim existed when they began grazing on the [Sacramento Grazing] Allotment in 1989." *Id.*

Plaintiffs respond that, prior to May 5, 1998, no constraints were placed on Plaintiffs' cattle having access to the Sacramento Grazing Allotment.  Pl. Reply at 16; *see also* 10/10/08 Goss Dec. ¶¶ 6-7 ("Although some of the USFS fenced locations may have been on the Allotment prior to 1998, they were never a barrier to SGA or its predecessors use of its vested water right for watering livestock.").  It was not until May 5, 1998, that USFS issued an Amendment to the AOP that "officially excluded [the exclosures from] livestock grazing activities."  8/15/08 Goss Dec. Ex. 8 (1998 AOP Amendment).  On November 23, 1999, when Plaintiffs renewed their grazing permit, "the exclosures were eliminated from the Allotment and livestock use was not permitted."  Pl. Reply at 16 (citing Gov't Ex. C at 6).  Therefore, even though the seven riparian exclosures at issue existed prior to May 5, 1998, the USFS action that fixed liability for a taking did not accrue until Plaintiffs' use of their vested range stock water rights within these exclosures was prohibited by the May 5, 1998 AOP Amendment.  Pl. Reply at 17-18.

The United States Court of Appeals for the Federal Circuit has held that "a claim first accrues *when all the events have occurred that fix the alleged liability* of the [G]overnment and entitle the claimant to institute an action. Therefore, a claim alleging a Fifth Amendment taking accrues *when the act that constitutes the taking occurs.*"  *Ingrum* v. *United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009) (emphasis added) (internal citations omitted); *see also Northwest La. Fish & Game Preserve Comm'n* v. *United States*, 446 F.3d 1285, 1289 (Fed. Cir. 2006) ("A taking occurs when governmental action deprives the owner of all or most of its property interest.") (internal citations omitted).

On May 5, 1998, the USFS amended the AOP for the Sacramento Allotment to exclude Plaintiffs from grazing cattle within seven riparian exclosures, where Plaintiffs had vested range stock water rights.  8/15/08 Goss Dec. Ex. 8 at 1 (1998 AOP Amendment).  Therefore, Plaintiffs' constitutional takings claim did not accrue until May 5, 1998, when the USFS explicitly prohibited Plaintiffs from using their vested range stock water rights within these exclosures. *See Walker II*, 69 Fed. Cl. at 233 (holding that the *Walker* Plaintiffs' constitutional takings claim did not accrue until they were denied access to use their alleged water rights).  Although some of these riparian exclosures may have existed within the Sacramento Allotment prior to May 5, 1998, USFS took no action until that date to prohibit Plaintiffs' use of their vested range stock water rights therein.  *See* 10/10/2008 Goss Dec. ¶ 7 ("In the time between when [Plaintiffs] first obtained [their] grazing permit in 1989 and when exclosures became a barrier to the use of water

in 1998, if the cattle needed water, [Plaintiffs were] allowed free access so the cattle could use the water."). In fact, it was not until September 8, 2000, that the USFS District Ranger enforced the May 5, 1998 Amendment to the 1998 AOP by reducing the number of SGA cattle that were permitted to graze on the Sacramento Allotment. Gov't App. Ex. C ¶ 6 (8/31/04 Martinez Dec.). Therefore, in the alternative, it could be argued that September 8, 2000 was the date "when *all* events have occurred to fix the alleged liability[.]" *Ingram*, 560 F.3d at 1314 (emphasis added).

For these reasons, the court has determined that Plaintiffs' takings claims, as set forth in the May 4, 2004 Complaint and reasserted in the September 6, 2005 Amended Complaint, are not barred by 28 U.S.C. § 2501.[9]   Gov't Opp. And Reply at 27-29.

### C.      Plaintiff Has Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (internal citations omitted).

The September 6, 2005 Amended Complaint alleges an injury in fact, that is traceable to Plaintiffs being denied use of their vested range stock water rights and has resulted in economic injury that can be determined in a specific amount sufficient to establish standing. *See* Am. Compl. ¶¶ 32-34 (alleging a taking of Plaintiffs' water rights and ranch).

## IV.    APPLICABLE STANDARDS OF REVIEW.

On a motion for summary judgment, the moving party must show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See Moden*, 404 F.3d at 1342 (Fed. Cir. 2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

---

[9] Since, Plaintiffs' taking claims concerning the Peñasco Exclosure did not accrue until 2001, there is no statute of limitations issue with respect to this claim. Likewise, Plaintiffs' taking claim regarding the February 1, 2005 closure of the Alamo Pasture to Plaintiffs' cattle also does not present a statute of limitations issue.

Factual disputes that are irrelevant or unnecessary will not be counted[.]"). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id*. at 247-48. To avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable finder of fact to return a verdict for that party. *Id*. at 248-50.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding the moving party must meet its burden "by 'showing' – that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case."); *see also Riley & Ephriam Constr. Co., Inc.* v. *United States*, 408 F.3d 1369, 1371 (Fed. Cir. 2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp.* v. *Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once a movant demonstrates the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.").

On a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Anderson*, 477 U.S. at 255 (holding that "all justifiable inferences be drawn on [the non-moving party's] favor."); *Casitas Mun. Water Dist.* v. *United States*, 543 F.3d 1276, 1283 (Fed. Cir. 2008) ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

## V.   DISCUSSION.

### A.   The Government's Motion For Summary Judgment.

#### 1.   Is Granted As To The United States Forest Services' Alleged Taking Of Plaintiffs' Alleged Right To Forage.

The First Amended Complaint alleges that Plaintiffs' right to forage on the Sacramento Allotment has been taken, because the USFS District Ranger has denied Plaintiffs' cattle the ability to graze within the riparian exclosures of the Sacramento Grazing Allotment. Am. Compl. ¶¶ 32C, E, 33A-E.

On June 21, 2007, the Supreme Court of New Mexico, however, held that state law does not recognize a limited forage right implicit in a vested water right. *See Walker III*, 162 P.3d at 884; *see also id*. at 888-95 (explaining that neither federal law, state statutory law, state case law, nor custom support an implicit possessory right attached to water rights). Since Plaintiffs have no property right to forage that is compensable under the Fifth Amendment, as a matter of law, the Government is entitled to summary judgment regarding the alleged taking of Plaintiffs' alleged right to forage.

**2.      Is Granted As To The United States Forest Services' Alleged Taking Of Plaintiffs' Grazing Permit No. 08-1250 And/Or Alleged Preference Grazing Right.**

The First Amended Complaint continues to allege a claim for compensation arising from the USFS's taking of Grazing Permit No. 08-1250 and/or preference grazing rights, pursuant to 43 C.F.R. § 4100.0-5.  Am. Compl. ¶¶ 33A-E, 34A-C, 35-38.

For the reasons discussed in the court's June 30, 2005 Memorandum Opinion and Order, as a matter of law, the Government is entitled to summary judgment regarding Plaintiffs' alleged taking of Grazing Permit No. 08-1250 and/or alleged preference grazing rights.  *See Sacramento Grazing I*, 66 Fed. Cl. at 216-17 (internal citations omitted) (explaining that a taking cannot exist without an underlying compensable property right).

**3.      Is Granted As To The United States Forest Services' Alleged Taking Of Plaintiffs' Alleged Right-Of-Way Over Federal Lands.**

The First Amended Complaint appears to allege that Plaintiffs have a right-of-way to move their cattle to water sources within the riparian exclosures of the Sacramento Allotment. Am. Compl. ¶¶ 24L, 25A(2), E-M, R, 27(c), 31.   Therefore, in the September 12, 2008 Opposition to Plaintiffs' August 15, 2008 Cross Motion for Summary Judgment and Reply, the Government argues that the "scope of Plaintiffs' alleged water rights [do not] include[:] "the right to bring cattle directly to water located on National Forest System lands to drink."  Gov't Opp. and Reply at 6.

Contrary to Plaintiffs' argument (Pl. Supp. Br. at 8-9), the New Mexico Supreme Court has held that the right to use water under state law does not include a right-of-way over federal lands.  *See Walker III*, 162 P.3d at 884; *see also id.* at 895-96 ("[A] right-of-way over private property for the use of a water right is limited to 'storage or conveyance' of the water. If an easement over private land is so limited under New Mexico law, an easement over public lands should not be interpreted more broadly.").   Since Plaintiffs have no right-of-way over federal lands that is compensable under the Fifth Amendment, as a matter of law, the court has determined that the Government is entitled to summary judgment regarding Plaintiffs' allegations regarding a right-of-way over federal lands.

**4.      Is Granted-In-Part And Denied-In-Part As To The United States Forest Services' Alleged Taking Of The Goss Ranch.**

The First Amended Complaint alleges that "[the USFS] has taken [P]laintiffs' Ranch in that [the USFS's] taking of the water, forage and [grazing] land[s] has deprived [P]laintiffs of all economically viable use of the Ranch and has deprived [P]laintiffs of their reasonable, investment-backed expectations."   Am. Compl. ¶¶ 33A-E; *see also* Gov't Ex. G (4/29/08 Pl. Resp. to Gov't Interrogatory 3).

To the extent that this claim is premised on Plaintiffs' alleged right to forage and/or taking of Grazing Permit No. 08-1250 and/or preference grazing rights, for the reasons discussed

herein, the Government is entitled to summary judgment as a matter of law.  To the extent that this claim arises from USFS' actions denying Plaintiffs' use of their vested range stock water rights, within the riparian exclosures of the Sacramento Allotment and the Alamo Pasture, a genuine issue of fact exists as to whether USFS's actions constitute a taking.  8/15/08 Goss Dec.; 8/15/08 Goss Dec. Ex. 1-33.

5.      **Is Denied As To The United States Forest Services' Alleged Taking Of Plaintiffs' Rights To Use Water In The Peñasco Exclosure.**

The First Amended Complaint includes allegations that the USFS has affected a taking of their use of water in the Peñasco Exclosure.  Am. Compl. ¶¶ 30-32.  For purposes of the Government's Motion for Summary Judgment, the Government has represented that it does not dispute that Plaintiffs hold valid water rights on the Sacramento Allotment, including the Peñasco Exclosure.  Gov't S.J. Mot. at 8; *see also* Gov't Opp. And Reply at 6, n.6.  The Government, however, argues that the USFS District Ranger's 2001 denial of Plaintiffs' request to pipe water from the Peñasco Exclosure, however, did not rise to a taking, since Plaintiffs are free to pursue other options to use or receive the benefit of waters of the Peñasco Exclosure.  Gov't S.J. Mot. at 15-16 (citing Gov't Ex. A ¶¶ 17-18 (4/28/08 Martinez Dec.)).

Plaintiffs, however, have proffered detailed affidavits, together with numerous supporting exhibits, that more than establish that there is a genuine issue as to whether the USFS's actions with respect to the Peñasco Exclosure amount to a taking.  8/15/08 Goss Dec. ¶¶ 14-32; 10/10/08 Goss Dec. ¶¶ 2-10.  Accordingly, as a matter of law, the Government is not entitled to summary judgment as to the USFS District Ranger's actions allegedly taking Plaintiffs' vested range stock water rights in the Peñasco Exclosure.

6.      **Is Denied As To The United States Forest Services' Alleged Taking Of Plaintiffs' Right To Use Water Within Federal Riparian Exclosures.**

The First Amended Complaint appears to allege that Plaintiffs have the right to move their water from or within federal lands.  Am. Compl. ¶¶ 25Q, 32.  The Government's September 12, 2008 Opposition, however, argues that the "scope of Plaintiffs' alleged water rights [does] not include . . . the right to unilaterally move water from one part of National Forest System lands to another part."  Gov't Opp. and Reply at 6.

The New Mexico Supreme Court has recognized that the right to use water may require water to be moved.  *See Walker III,* 162 P.3d at 896 (recognizing that "a right-of-way . . . for the use of a water right is limited to 'storage or conveyance' of the water," and that "at least in theory, [the *Walker* Plaintiffs] have the right to move their water to their cattle").  Therefore, an issue in this case is under what circumstances may the owner of vested water rights in New Mexico "move *their water* to *their cattle*."  *Id.*  The court reads Plaintiffs' "Implied Right of Access to Water Under New Mexico Law" argument as a component of the scope of Plaintiffs' right to "move their water to their cattle."  Pl. Supp. Br. at 7-15.  The Government's counterargument that Plaintiffs' right to use water does not include "a right to access by bringing cattle across public lands to particular water sources" is not relevant to this inquiry, but instead addresses the right-of-way on federal lands issue discussed above.  Gov't Supp. Br. at 8-11.  The

court is mindful that this is a question of state law, but the answer is dependent on the factual context, on which there are significant material facts at issue. For this reason, the Government is not entitled to summary judgment on this issue.

**B.    Plaintiff's Cross Motion For Summary Judgment.**

**1.    Is Granted In-Part, As Plaintiffs Have Established Ownership Of Certain Vested Range Stock Water Rights Within The Sacramento Allotment.**

The First Amended Complaint alleges that Plaintiffs own vested rights to water sources originating or found in the Sacramento Allotment and that the rights to those sources were "lawfully acquired" by their predecessors-in-interest or by Plaintiffs, when they acquired the Goss Ranch. Am. Compl. ¶ 10; *see also* Am. Compl. Ex. A (listing 135 water sources in which Plaintiffs claim rights). The First Amended Complaint further alleges that Plaintiffs' vested water rights were acquired "under rights confirmed by the United States Congress in the Mining Act of 1866."[10]   Am. Compl. ¶ 10.   These vested range stock water rights were "further recognized by the State of New Mexico in N.M. Stat. Ann. 19-3-13." Am. Compl. ¶ 10.

The Takings Clause of the Fifth Amendment of the United States Constitution mandates that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. In *Schooner Harbor Ventures, Inc.* v. *United States*, 569 F.3d 1359 (Fed. Cir. 2009), the United States Court of Appeals for the Federal Circuit held that a takings analysis is a two-step inquiry. *Id.* at 1362. In the first part of the inquiry, a federal trial court is required to determine whether the interest at issue is a legally protected property right. *Id.* at 1362; *see also Nw. La. Fish & Game Pres.* v. *United States*, 574 F.3d 1386, 1390 (Fed. Cir. 2009) ("The taking calculus first identifies the private party's property interest[.]"). The scope of a legally protected property right, however, is determined by "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law." *Schooner Harbor Ventures*, 569 F.3d at 1362 (internal citations and quotations omitted).

Under New Mexico law, the right to use water is a property right separate and severable from a right to land. *See Walker III*, 162 P.3d at 888-91. "The priority of a water right relates

---

[10] The Mining Act of 1866, in relevant part, states:

Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed.

43 U.S.C. § 661.

back from the date of first beneficial use to the date work commenced to bring about the beneficial use." *State of New Mexico, ex rel. Martinez* v. *Parker Townsend Ranch Company*, 887 P.2d 1254, 1256-57 (N.M. App. 1993), *aff'd on other grounds*, 887 P.2d 1247 (N.M. 1994); *see also Templeton* v. *Pecos Valley Artesian Conservancy District*, 332 P.2d 465, 471 (N.M. 1958) (holding that water rights holders are "entitled to the waters . . . that flowed . . . at the time of their appropriation."). To establish legal entitlement and provide notice to the public of asserted ownership of such water rights, New Mexico law allows "[a]ny person, firm or corporation claiming to be an owner of a water right which was vested prior to [March 19, 1907]" to file a Declaration of Ownership with the Office of the State Engineer. N.M. Stat. Ann. § 72-1-3. The Declaration of Ownership must state "the beneficial use to which said water has been applied, the date of first application to beneficial use, the continuity thereof, the location of the source of said water and if such water has been used for irrigation purposes, the description of the land upon which such water has been so used and the name of the owner thereof." *Id.* Once the Declaration of Ownership is certified and recorded in the Office of the State Engineer, as a matter of state law, it is "prima facie evidence of the truth of [its] contents." *Id.*

Between 1999 and 2003, Plaintiffs filed Declarations of Ownership with the Office of the State Engineer, pursuant to Section 72-1-3 ("Declaration of Ownership of Water Right Perfected Prior to March 19, 1907"), for certain water sources within the Sacramento Allotment. 8/15/08 Goss Dec. ¶ 4, Ex. 25; 10/10/08 Goss Dec. ¶ 11, Ex. 34. To establish legal ownership of rights to these water sources, Plaintiffs have proffered these Declarations and other evidence listing the date of first beneficial use for each source. Am. Compl. Ex. A; *see also* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Partially Dismiss the Complaint or, Alternatively, for Summary Judgment Ex. 7-65, *Sacramento Grazing Ass'n, et al.* v. *United States*, 04-786L, ECF No. 12 (Nov. 22, 2004) (including affidavits, bills of sale, and contracts evidencing the water rights conveyed with the Goss Ranch).

The following chart sets forth the riparian exclosures at issue, the eleven water sources therein to which Plaintiffs assert ownership rights under New Mexico law, and the record citations to Plaintiffs' Declarations of Ownership.

**COURT EXHIBIT C**

| Riparian Exclosures Established By The USFS Within The Sacramento Allotment | Water Sources Therein | Declaration of Ownership (Record Citation) |
|---|---|---|
| Upper Mauldin | West Mauldin | 8/15/08 Goss Dec. Ex. 25 at 43. |
| Lower Mauldin | Mauldin Springs | 8/15/08 Goss Dec. Ex. 25 at 77. |
| Hubbell Springs | 3 Hubble Springs | 8/15/08 Goss Dec. Ex. 25 at 75. |
| Western Riparian | Kingsbury Springs | N/A[11] |
| Bluff Springs | Bluff Springs Bluff North Springs Bluff Springs West Charles Spring | 8/15/08 Goss Dec. Ex. 25 at 28, 37, 45, 99. |
| Sacramento Lake | Sacramento Lake | 10/10/08 Goss Dec. Ex. 34. |
| Upper Peñasco | Peñasco Head Waters | 8/15/08 Goss Dec. Ex. 25 at 25. |
| Water Canyon | Water Canyon Spring | 8/15/08 Goss Dec. Ex. 25 at 35. |

---

[11] The court was unable to locate a supporting Declaration of Ownership for Kingsbury Springs in the record.

The following chart sets forth seven additional water sources within the Alamo Pasture, not located within a riparian exclosure on the Sacramento Allotment, to which Plaintiffs assert ownership rights under New Mexico law, and the record citations to Plaintiffs' Declaration of Ownership:

**COURT EXHIBIT D**

| Alamo Pasture Water Sources | Declaration of Ownership (Record Citation) |
|---|---|
| Upper Alamo #1 | 8/15/08 Goss Dec. Ex. 25 at 110. |
| Mud Springs | 8/15/08 Goss Dec. Ex. 25 at 113. |
| Caballero #1 | 8/15/08 Goss Dec. Ex. 25 at 149. |
| Caballero #2 | 8/15/08 Goss Dec. Ex. 25 at 107. |
| Caballero #3 | 8/15/08 Goss Dec. Ex. 25 at 125. |
| Wood Spring #1 | 8/15/08 Goss Dec. Ex. 25 at 131. |
| Wood Spring #2 | 8/15/08 Goss Dec. Ex. 25 at 134. |

The Government disputes that Plaintiffs have established ownership or usage rights in the water sources identified in COURT EXHIBIT C and COURT EXHIBIT D, because "there has been no state adjudication of Plaintiffs' purported water rights."[12]   Gov't S.J. Mot. at 8.   The Government, however, has proffered no evidence contradicting Plaintiffs' *prima facie* evidence regarding ownership of the water rights at issue, nor has the Government at any point initiated proceedings in a New Mexico state court challenging Plaintiffs' Declarations of Ownership.

Therefore, the court has determined that, as a matter of New Mexico law, Plaintiffs have established *prima facie* ownership of vested range stock water rights in the following water sources within the Sacramento Allotment: West Mauldin; Mauldin Springs; 3 Hubble Springs; Bluff Springs; Bluff North Springs; Bluff Springs West; Charles Spring; Sacramento Lake; Peñasco Head Waters; Water Canyon Spring; Upper Alamo #1; Mud Springs; Caballero #1, #2, and #3; and Wood Spring #1 and #2.  *See* N.M. Stat. Ann. § 72-1-3; *see also State ex rel.*

---

[12] This case is factually different from the *Walker* case, wherein water rights of the Mimbres River Stream System and Mimbres Under Ground Water Basin on the allotments of the Gila National Forest were fully and finally adjudicated by New Mexico courts.  *See Walker III*, 162 P.3d at 885 n.2 (citing *Mimbres Valley Irrigation Co.* v. *Salopeck*, D-619-CV-66006326 (6th Jud. D. Ct. Jan 14, 1993)).

*Martinez* v. *Lewis*, 882 P.2d 37, 40 (N.M. App. 1994) ("Section 72-1-3 merely provides that the declarations shall be *prima facie* evidence of the truth of their contents. . . . At most, admission of such declarations would satisfy Appellants' burden of going forward; it would satisfy Appellants' burden of proof only if not rebutted by the state.") (internal quotations omitted); *accord Anderson* v. *Liberty Lobby*, 477 U.S. 242, 248 ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (internal quotations omitted).

> **2.      Is Denied In-Part, Because Genuine Issues Of Material Fact Exist As To Whether Actions Of The United States Forest Service Have Affected A Taking Of Plaintiffs' Right To Use Their Vested Range Stock Water Rights Within The Sacramento Grazing Allotment.**

The First Amended Complaint alleges that the USFS has taken Plaintiffs' vested right to use range stock water in water sources within the Sacramento Grazing Allotment. Am. Compl. ¶¶ 24A-B, 25A(3), C, Q, 26A-B, 27A, 30-32; Am. Compl. Ex. A. Plaintiffs' Cross Motion for Summary Judgment argues that the USFS District Ranger's May 5, 1998 Amendment to the 1998 AOP for the Sacramento Allotment is the act that first prohibited Plaintiffs from use of their vested range stock water rights within the seven exclosures discussed above. Pl. Cross Mot. and Opp. at 21. Subsequently, Plaintiffs repeatedly have requested USFS to use their water within these exclosures, but every request has been denied. *Id.* at 22-33.

Since the court has identified the subject of the aforementioned claim as a legally protected property right, the analysis turns to "whether that property has been deprived or abridged sufficiently to qualify as 'taken.'" *Nw. La. Fish & Game Pres.*, 574 F.3d at 1390 (internal citations omitted). In making this determination, the court must ascertain whether the character of governmental action is a physical or regulatory taking. *Id.*

In *United States* v. *General Motors Corp.*, 323 U.S. 373 (1945), the United States Supreme Court observed that "courts have held that the deprivation of . . . [an] owner[,] rather than the accretion of a right . . . constitutes a taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking." *Id.* at 378. This category of takings has been characterized by the United States Supreme Court as a *per se* taking. *See Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("We conclude that a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve.").

Accordingly, it has long been held by our appellate court that a physical taking occurs if the Government denies an owner all access to a property interest. *See Foster* v. *United States*, 607 F.2d 943, 949-50 (Ct. Cl. 1979) ("[T]he Government's action here [is not] quite the 'normal' repeated action which . . . physically intrudes upon a plaintiff's property. Rather, the Government is in rightful possession of [the land at issue], but is totally denying plaintiffs access to [the mineral rights on the land] to which [plaintiffs] have a right.") (internal citations omitted); *see also Drakes Bay Land Co.* v. *United States*, 424 F.2d 574, 584-87 (Ct. Cl. 1970) (holding

that plaintiff's fee interest in land was taken where the Government's actions denied plaintiff all access to and use of their land). Therefore, "a physical takings analysis is appropriate where there is direct government appropriation or physical invasion of private property." *Casitas Mun. Water Dist.*, 556 F.3d at 1332 (internal quotation omitted).

On the other hand, "regulatory restrictions on the use of property do not constitute physical takings." *Seiber* v. *United States*, 364 F.3d 1356, 1366 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 873 (2004) (internal citations omitted). In a regulatory taking, the factors that a federal trial court must consider are "the economic impact of the regulation on the claimant, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Penn Central Transportation Co.* v. *New York*, 438 U.S. 104, 124-25 (1978) ("[The United States Supreme Court] has dismissed 'takings' challenges on the ground that, while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes.").

In this case, in addition to being denied use of their vested water rights to water sources within the riparian exclosures of the Sacramento Allotment, listed in COURT EXHIBIT C, Plaintiffs also contend that since the issuance of the July 28, 2004 Record of Decision, they have been prohibited from using their vested water rights to water sources located in the Alamo Pasture, listed in COURT EXHIBIT D. Pl. Cross Mot. and Opp. at 27-29. Although the USFS has allowed Plaintiffs limited use of these sources between November 1 and January 31 of each grazing season, Plaintiffs have been denied their water when it is most abundant, after the spring runoff. *Id*. To date, this prohibition remains in effect. *Id*. Moreover, Plaintiffs expect that they will never be granted permission by the USFS to use or transfer their vested range stock water out of the Alamo Pasture, because it would have an adverse effect on the habitats of the Sacramento Mountains Thistle and the Sacramento Mountains Prickly Poppy, which are located in the Alamo and Cabellero Canyons of the Sacramento Grazing Allotment and are protected by the Endangered Species Act, 16 U.S.C. § 1531, *et seq*. Pl. Cross Mot. and Opp. at 25-28.

The court has determined that the First Amended Complaint in this case alleges both physical and regulatory taking claims. Am. Compl. ¶¶ 31-34. The Government and Plaintiffs, however, have proffered affidavits that place material facts at issue regarding the relevant facts to both types of takings claims. Acknowledging that New Mexico law treats water rights as real property, our appellate court has held that a physical taking is found where the government "physically appropriated [or] denied meaningful access to [Plaintiffs'] water rights." *Washoe County* v. *United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003); *see also Casitas Mun. District*, 543 F.3d at 1296 (holding that the Government's diversion of water to protect an endangered species should be analyzed as a physical taking). Therefore, as to Plaintiffs' physical takings claims with respect to water sources within the exclosure to the Sacramento Allotment and other water sources in the Alamo Pasture, genuine issues of fact exist as to whether the USFS "reduced the amount of water accessible by [Plaintiffs or] denied all meaningful access to their water rights[.]" *Washoe County*, 319 F.3d at 1327; *compare* Gov't S.J. Mot at 16 (USFS "has not denied Plaintiffs all meaningful access to water within the Peñasco exclosure," because Plaintiffs may graze their cattle up to the exclosure fencing and are free to pursue alternative methods of watering their cattle that the USFS District Ranger may allow) (citing 4/28/08 Martinez Dec. ¶

15)[13] *with* 8/15/08 Goss Dec. ¶¶ 10-32 (rebutting the 4/28/08 Martinez Declaration and providing supporting exhibits).

Plaintiffs' regulatory takings claims are premised on two actions of the USFS: the May 5, 1998 Amendment to the 1998 AOP for the Sacramento Allotment and the July 28, 2004 Record Decision. To date, neither party has proffered any evidence regarding the economic impact of these regulatory actions on Plaintiffs and/or the Goss Ranch. *See Penn Central Transp.*, 438 U.S. at 124-25. Likewise, neither party has proffered evidence regarding whether and the extent to which these regulatory actions have impacted the reasonable investment-backed expectations of Plaintiffs and the Goss Ranch. *Id.* Nor has either party proffered direct evidence about the character of USFS's regulatory actions on Plaintiffs and/or the Goss Ranch. *Id.* Accordingly, neither party is entitled to summary judgment.

For these reasons, the court has determined that neither party is entitled to summary judgment with respect to the physical and regulatory taking claims alleged in the First Amended Complaint at ¶¶ 30-32, with respect to Plaintiffs' vested range stock water rights within the riparian exclosures on the Sacramento Allotment and in the Alamo Pasture. Likewise, neither party is entitled to summary judgment with respect to the regulatory taking claims alleged in the First Amended Complaint at ¶¶ 30, 33 regarding the same.

## VI.    CONCLUSION.

For the reasons discussed herein, the Government's April 29, 2008 Motion For Summary Judgment is granted-in-part and denied-in-part and Plaintiffs' August 15, 2008 Cross Motion For Summary Judgment is granted-in-part and denied-in-part.

The court will convene a telephone conference on December 1, 2010 at 3:00pm EST to discuss whether the court should issue an Order to Show Cause why Plaintiff should not voluntarily dismiss allegations regarding rights to water sources not located in the exclosures on the Sacramento Allotment, as set forth in COURT EXHIBIT C, or the Alamo Pasture, as set forth in COURT EXHIBIT D. In addition, the parties should be prepared to proffer a proposed schedule to address any remaining fact and expert discovery, and set a date for a trial and any pre-trial briefing required.

**IT IS SO ORDERED.**

   s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

---

[13] The 4/28/08 Martinez Dec. at ¶ 15 does not support this statement, as he testified as to suggesting one option, agreed to consider another option, and stated: "As far as I am aware, SGA did not pursue any of these options." 4/28/08 Martinez Dec. at ¶ 15.